# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

"**BARBARA**," *et al.*,

*Plaintiffs*,

v.

**DONALD J. TRUMP**, *et al.*,

*Defendants.*

Case No. 1:25-cv-244-JL-AJ

## DEFENDANTS' MEMORANDUM OF LAW
## IN OBJECTION TO PLAINTIFFS' MOTION
## FOR CLASS CERTIFICATION AND APPOINTMENT OF COUNSEL AND
## PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

I.    The Executive Order ...................................................................................................3

II.   This Litigation ...........................................................................................................4

STANDARD OF REVIEW ...................................................................................................6

ARGUMENT .......................................................................................................................7

I.    To the Extent that Plaintiffs Seek Provisional Class Certification and Immediate
Issuance of an Injunction, that Request Is Inappropriate. ..........................................7

II.   Plaintiffs Have Not Met the Requirements of Rule 23. ...............................................9

III.  This Court Should Not Certify a Nationwide Class. ..................................................16

IV.  This Court Should Not Issue a Preliminary Injunction..............................................18

V.   This Court Should Stay Any Preliminary Injunction Pending Appeal and A Bond
Should Be Required. ................................................................................................19

CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

<u>Cases</u>

*AARP v. Trump*,
    605 U.S. ---, 145 S. Ct. 1364 (2025)................................................................8, 9

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...........................................................................................7

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985)............................................................................13

*Bearden v. Honeywell Int'l Inc.*,
    720 F. Supp. 2d 932 (M.D. Tenn. 2010)..........................................................12

*Bova v. Cox Commc'ns, Inc.*,
    No. 7:01CV00090, 2001 WL 1654708 (W.D. Va. Dec. 12, 2001)....................17

*Bosque v. Wells Fargo Bank, N.A.*,
    762 F. Supp. 2d 342 (D. Mass. 2011) ................................................................9

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ...................................................................................*passim*

*Campbell v. First Am. Title Ins. Co.*,
    269 F.R.D. 68 (D. Me. 2010) .............................................................................9

*Clough v. Revenue Frontier, LLC*,
    No. 17-CV-411-PB, 2019 WL 2527300 (D.N.H. June 19, 2019)......................13

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .............................................................................................6

*DaSilva v. Border Transfer of MA, Inc.*,
    296 F. Supp. 3d 389 (D. Mass. 2017)...............................................................11

*Doe (1) v. Univ. of Kan. Hosp. Auth.*,
    No. 2:25-CV-02200-HLT-TJJ, 2025 WL 1634958 (D. Kan. June 9, 2025) ......14

*Elk v. Wilkins*,
    112 U.S. 94 (1884) ...........................................................................................18

*Fiorentine v. Sarton Puerto Rico, LLC*,
    No. CV 20-1491 (GAG-GLS), 2021 WL 2070535 (D.P.R. May 20, 2021) ........8

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) .........................................................................................19

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ...........................................................................................7

*Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*,
    No. 20-CV-453-LM, 2020 WL 2113642 (D.N.H. May 4, 2020)....................8, 9

*In re Ashley Madison Customer Data Sec. Breach Litig.*,
    2016 WL 1366616 (E.D. Mo. Apr. 6, 2016) ....................................................14

*Kolbe v. BAC Home Loans Servicing, LP*,
   738 F.3d 432 (1st Cir. 2013) ..........................................................................................8

*Lewis v. Casey*,
   518 U.S. 343 (1996) ......................................................................................................19

*McLaughlin Chiropractic Assoc's v. McKesson Corp.*,
   --- S. Ct. ---, 2025 WL 1716136 (U.S. June 20, 2025) ................................................15

*Mississippi v. Johnson*,
   71 U.S. 475 (1866) ........................................................................................................19

*N.H. Indonesian Cmty. Support v. Trump*,
   765 F. Supp. 3d 102 (D.N.H. 2025) .......................................................................... 5, 17

*Nken v. Holder*,
   556 U.S. 418 (2009) ......................................................................................................19

*Rapuano v. Trs. of Dartmouth Coll.*,
   334 F.R.D. 637 (D.N.H. 2020) ....................................................................................14

*Sherman v. Trinity Teen Sols., Inc.*,
   339 F.R.D. 203 (D. Wyo. 2021) ...................................................................................14

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) ........................................................................................................5

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ......................................................................................................15

*Trump v. CASA, Inc.*,
   --- S. Ct. ---, 2025 WL 1773631 (U.S. June 27, 2025) ...........................................*passim*

*United States v. Wong Kim Ark*,
   169 U.S. 649 (1898) ......................................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................*passim*

*Winter v. NRDC*,
   555 U.S. 7 (2008) ..........................................................................................................18

### Statutes

8 U.S.C. § 1401 ...................................................................................................... 1, 10, 18

### Rules

Fed. R. Civ. P. 23(a) ...............................................................................................*passim*

Fed. R. Civ. P. 23(b) ...............................................................................................*passim*

Fed. R. Civ. P 65(c) ........................................................................................................20

### Regulations

Exec. Order No. 14,159, Protecting the American People Against Invasion,
   90 Fed. Reg. 8443 (Jan. 20, 2025) .................................................................................3

Exec. Order No. 14,160, Protecting the Meaning and Valueof American Citizenship,
    90 Fed. Reg. 8449 (Jan. 20, 2025)................................................................................................1

Exec. Order No. 14,165, Securing Our Borders,
    90 Fed. Reg. 8467  (Jan. 20, 2025)..............................................................................................3

Proclamation No. 10,886, Declaring a National Emergency at the Southern Border of the U.S.,
    90 Fed. Reg. 8327  (Jan. 20, 2025)..............................................................................................3

<u>Other Authorities</u>

1 McLaughlin on Class Actions: Law and Practice at § 3:7 (17th ed. 2020) ............................8

2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed.) ...................................................8

Amy Swearer, Legal Mem. No. 250, *The Political Case for Confining Birthright Citizenship to Its Original
    Meaning*, Heritage Found. (2019) ..............................................................................................3

## INTRODUCTION

On the first day of his Administration, President Donald Trump signed an executive order ending the executive practice of extending American citizenship to persons who have not received that privilege from the Constitution or Congress. Exec. Order No. 14160, Protecting the Meaning and Value of American Citizenship, 90 Fed. Reg. 8449 (Jan. 20, 2025) ("Citizenship EO" or "EO"). *See generally* ECF No. 1 (hereinafter "Compl."). The Constitution's Citizenship Clause provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. The EO recognizes that the Constitution does not grant birthright citizenship to the children of aliens who are unlawfully present in the United States or the children of aliens whose presence is lawful but temporary. Prior misimpressions of the Citizenship Clause have created a perverse incentive for illegal immigration that has negatively impacted this country's sovereignty, national security, and economic stability. But the generation that enacted the Fourteenth Amendment did not fate the United States to such a reality. Instead, text, history, and precedent support what common sense compels: the Constitution does not harbor a windfall clause granting American citizenship to, *inter alia*, the children of those who have circumvented (or outright defied) federal immigration laws.

Plaintiffs—three noncitizens without lawful permanent resident status in the United States—seek to challenge the Executive Order addressing what it means to be "subject to the jurisdiction" of the United States. Specifically, Plaintiffs assert that the EO violates the Citizenship Clause and 8 U.S.C. § 1401, while bringing claims under the Administrative Procedure Act ("APA"). In their Motion for Class Certification and Appointment of Class Counsel and Request for Expedited Treatment, Plaintiffs "seek[] certification of a class of all current and future children who are or will be denied United States citizenship by [the EO] and their parents." Pls.' Mot. for Class Certification and Appointment of Class Couns., ECF No. 5 at 1 (hereinafter "Class Motion" or "Class Mot."). Plaintiffs elsewhere

1

argue "that the Court provisionally certify the class and immediately issue a classwide preliminary injunction." Mot. for Classwide Prelim. Inj. at 3, ECF No. 6 (hereinafter "PI Motion" or "PI Mot."). Neither request is appropriate.

At the outset, it is not entirely clear whether Plaintiffs seek final certification of a class or provisional certification of a class as their Class Motion "seeks certification of a class," Mot. at 1, but their PI Motion requests "that the Court provisionally certify the class." PI Mot. at 3. To the extent that it is the latter, Plaintiffs' request for provisional certification of the class to issue a nationwide, classwide preliminary injunction is improper at the threshold. A court must ensure that plaintiffs have complied with Federal Rule of Civil Procedure 23 before granting class relief, which may, *inter alia*, require class certification discovery. *See* Fed. R. Civ. P. 23(b)(2) (permitting certification when "final injunctive relief or corresponding declaratory relief is appropriate"). A court therefore should not issue classwide relief until it has satisfied itself that the requirements of Rule 23 are met. And here, Plaintiffs cannot meet the requirements of Rule 23 for either a provisional or final class. Specifically, Plaintiffs' differing immigration statuses create issues of whether Defendants have relief would be "appropriate respecting the class as a whole," whether "there are questions of law or fact common to the class," and whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)-(3), (b)(2).

In addition, Plaintiffs cannot show that the "representative parties will fairly and adequately protect the interests of the class," given that all three class representatives are proceeding pseudony-mously. Fed. R. Civ. P. 23(a)(4). Even if the Court determines that class certification is appropriate and that Plaintiffs have met the requirements of Rule 23, it should not certify a nationwide class action given the Supreme Court's admonition that "a federal court when asked to certify a nationwide class should take care to ensure . . . that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

Finally, even if the Court concludes that class certification is appropriate, the Court still should not issue a preliminary injunction for the reasons previously stated by Defendants in a related, prior lawsuit concerning the EO. *See* Defs.' Obj. to Pls.' Mot. for Prelim., Inj. ("Defs.' Obj."), *N.H. Indonesian Cmty. Support v. Trump*, 1:25-cv-38-JL-TSM, ECF No. 58 (D.N.H. Jan. 31, 2025). For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion for Class Certification and PI Motion be denied.

## BACKGROUND

### I.    The Executive Order

The Citizenship EO is an integral part of President Trump's broader effort to repair the United States' immigration system and to address the ongoing crisis at the southern border. *See, e.g.*, Exec. Order No. 14165, Securing Our Borders, 90 Fed. Reg. 8467 (Jan. 20, 2025); Proclamation No. 10886, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8327 (Jan. 20, 2025); Exec. Order No. 14159, Protecting the American People Against Invasion, 90 Fed. Reg. 8443 (Jan. 20, 2025) (Invasion EO). As the President has recognized, individuals unlawfully in this country "present significant threats to national security and public safety," Invasion EO, § 1, and the severity of these problems warrants a panoply of immigration measures. Some of these threats are related to the United States' prior, erroneous policy of recognizing near-universal birthright citizenship. For instance, "the nation's current policy of universally granting birthright citizenship to individuals who lack any meaningful ties to the United States provides substantial opportunities for abuse by motivated enemies." Amy Swearer, Legal Mem. No. 250, *The Political Case for Confining Birthright Citizenship to Its Original Meaning* at 8-11, Heritage Found. (2019).

The EO corrects the Executive Branch's prior misreading of the Citizenship Clause. It recognizes (in § 1) that the Constitution and the INA provide for citizenship for all persons who are born in the United States and subject to the jurisdiction thereof, and identifies two circumstances in which

a person born in the United States is not automatically extended the privilege of citizenship:

> (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

Section 2(a) of the EO directs the Executive Branch (1) not to issue documents recognizing U.S. citizenship to persons born in the United States under the conditions described in section 1, and (2) not to accept documents issued by state, local, or other governments purporting to recognize the U.S. citizenship of such persons. The EO specifies, however, that those directives "apply only to persons who are born within the United States after 30 days from the date of this order," which under the terms of the EO prior to the issuance of preliminary injunctions would have been February 19. Citizenship EO § 2(b). The Citizenship EO makes clear that its provisions do not "affect the entitlement of other individuals, including children of lawful permanent residents, to obtain documentation of their United States citizenship." *Id.* § 2(c).

The EO directs the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security to take "all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order" and not to "act, or forbear from acting, in any manner inconsistent with this order." Citizenship EO § 3(a). It further directs the heads of agencies to issue public guidance within 30 days (which again, absent preliminary injunctions issued against the EO, would have been February 19) "regarding this order's implementation with respect to their operations and activities." *Id.* § 3(b).

## II.    This Litigation

The EO at issue in Plaintiffs' lawsuit was challenged in various courts immediately following its promulgation, including in a lawsuit previously brought in this Court by various organizational

plaintiffs. *See generally N.H. Indonesian Cmty. Support v. Trump*, 1:25-cv-38-JL-TSM (D.N.H.). While some courts presiding over challenges to the EO subsequently issued nationwide or "universal injunctions," this Court notably did not. Instead, it limited "defendants from enforcing the Executive Order in any manner with respect to the plaintiffs, and with respect to any individual or entity in any other matter or instance within the jurisdiction of this court, during the pendency of this litigation." *N.H. Indonesian Cmty. Support v. Trump*, 765 F. Supp. 3d 102, 112 (D.N.H. 2025), *appeal filed*, No. 25-1348 (1st Cir., Apr. 11, 2025).

As to the nationwide preliminary injunctions that were issued against the EO, the Government filed three emergency applications in the Supreme Court of the United States seeking to partially stay the nationwide scope of those injunctions. *Trump v. CASA, Inc.*, --- S. Ct. ---, 2025 WL 1773631, at *4 (U.S. June 27, 2025). On June 27, 2025, the Supreme Court held that the "universal injunctions" against the EO were not proper because "federal courts lack authority to issue them." *Id.* at *13. The Supreme Court, however, declined to decide what "narrower relief [was] appropriate," holding that "[t]he lower courts should determine whether a narrower injunction is appropriate" and "leav[ing] it to them to consider these and any related arguments." *Id.* at *12. The Court accordingly directed that "[t]he lower courts shall move expeditiously to ensure that, with respect to each plaintiff, the injunctions comport with this rule and otherwise comply with principles of equity." *Id.* at *15. The Supreme Court further held that "[section] 2 of the Executive Order"—the operative part of the EO—"shall not take effect until 30 days after the date of this opinion." *Id.*

In discussing why universal injunctions were inappropriate, the Supreme Court noted that they "circumvent[ed] Rule 23's procedural protections and allow[ed] 'courts to create *de facto* class actions at will.'" *Id.* at *10 (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011)). However, the Supreme Court stressed "Rule 23's limits on class actions," despite suggesting nationwide class actions might permit nationwide injunctive relief. *Id.* Notably, Justice Alito's concurrence emphasized that "district

courts should not view [the Supreme Court]'s decision as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23. . . . [o]therwise, the universal injunction w[ould] return from the grave under the guise of 'nationwide class relief,'" *id.* at \*18 (Alito, J., concurring).

Immediately following the Supreme Court's ruling, Plaintiffs filed this lawsuit. *See generally* Compl. The named Plaintiffs are three noncitizens without lawful permanent resident ("LPR") status who are expecting to have children or have had children since February with other noncitizens who are not LPRs. *Id.* ¶¶ 12-14. Thus, these individuals allege that under the terms of the EO, their born or to-be-born children "will be denied U.S. citizenship at birth," and bring claims challenging the EO's lawfulness under the Citizenship Clause of the Fourteenth Amendment and federal immigration law. *Id.* ¶¶ 12, 73-84. Each named Plaintiff is proceeding pseudonymously. *Id.* ¶ 12 n.1; *see also* ECF No. 32. As relevant herein, the named Plaintiffs seek to represent a proposed class of:

> All current and future persons who are born on or after February 20, 2025, where (1) that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) that person's mother's presence in the United States was lawful but temporary, and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, as well as the parents (including expectant parents) of those persons.

Compl. ¶ 42.

As relief, Plaintiffs seek nationwide injunctive relief to have the Court "[d]eclare that the Executive Order is unconstitutional and unlawful in its entirety" and "[p]reliminarily and permanently enjoin Defendants from enforcing the Executive Order." *Id.* p. 16. Coupled with their Complaint, Plaintiffs filed their Class Motion and their Motion for Classwide Preliminary Injunction.

## STANDARD OF REVIEW

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Yamasaki*, 442 U.S. at 700-701; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (same). To fall within this exception, a plaintiff "must affirmatively demonstrate

his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard." *Id.* Indeed, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

To meet this "affirmative" burden of compliance with Rule 23, Plaintiffs must demonstrate the existence of each and every element required by Rule 23(a) that: (1) there are sufficiently numerous parties ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the named plaintiff are typical of those of the class ("typicality"); and (4) the named plaintiff will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160. The proposed class must also "satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores*, 564 U.S. at 345. Plaintiffs here assert that their class should proceed under Rule 23(b)(2), which permits class action litigation where "the party opposing the class has acted … on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also* Class Mot. at 3.

## ARGUMENT

### I.  To the Extent that Plaintiffs Seek Provisional Class Certification and Immediate Issuance of an Injunction, that Request Is Inappropriate.

Under Rule 23(b)(2): "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that *final* injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). Thus, the Rule contemplates that injunctive relief is generally appropriate only *after* a court has assured itself that the class action can be certified and that the relief granted to 23(b)(2) class is "final injunctive relief." That course of events is sensible

given that, "[t]o determine whether the action may proceed as a class action, some discovery must be procured to ascertain whether the requirements of Rule 23 are met" and "in most cases discovery into issues relevant to class certification is warranted and appropriate." *Fiorentine v. Sarton Puerto Rico, LLC*, No. CV 20-1491 (GAG-GLS), 2021 WL 2070535, at *2 (D.P.R. May 20, 2021) (quoting 1 McLaughlin on Class Actions: Law and Practice at § 3:7 (17th ed. 2020)); *see Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 468 (1st Cir. 2013) ("In most instances, courts will not grant or deny class certification without discovery.") (citation omitted)). In other words, in the normal course of events: plaintiffs bring a putative Rule 23(b)(2) class action; plaintiffs must make a showing that the class action meets the requirements of Rule 23(a) and 23(b)(2).

Plaintiffs' PI Motion—although not their Class Motion—seeks to short-circuit that normal course of events and have the Court "provisionally certify the class and immediately issue a classwide preliminary injunction." PI Mot. at 3. That request is inappropriate here. While courts have provisionally certified classes to allow parties to obtain "a form of preliminary and emergency relief," those circumstances are distinct from this case. *Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, No. 20-CV-453-LM, 2020 WL 2113642, at *1 (D.N.H. May 4, 2020). Plaintiffs' cited cases all involved instances where immigration detainees in habeas cases alleged an imminent risk of harm to their health in the *sui generis* context of the COVID-19 virus and sought emergency relief in order to be released from immigration detention. *See* PI Mot. at 3. And while the Supreme Court recently authorized temporary relief for a putative class, it did so only in particularly exigent circumstances—specifically, a habeas case where the putative class was at risk of imminent deportation and irreparable harm, which do not exist in the instant case. *AARP v. Trump*, 605 U.S. ---, 145 S. Ct. 1364, 1369 (2025).[1] Specifically, in

---

[1] The Supreme Court in *AARP* cited a treatise that noted that "although (b)(2) certification requires a request for final injunctive relief, a court may issue a classwide preliminary injunction in a putative class action suit prior to a ruling on the class certification motion or in conjunction with it." 2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed.). But the Supreme Court merely cited that treatise as a source of authority; it did not purport to hold that Rule 23(b)(2) *always* permits preliminary injunctive

*AARP*, the Court noted that issuing "temporary injunctive relief to the putative class" was necessary "in order to preserve [its] jurisdiction pending appeal." *Id.* By contrast, in other non-habeas civil cases in which the court did not risk losing jurisdiction, courts have rejected awarding preliminary injunctive relief before the class is fully certified. *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 356 (D. Mass. 2011) ("issuing a preliminary injunction that would apply to the entire putative class would be premature"). The Court should follow the same path here.

Furthermore, even if provisional class certification and immediate classwide relief is available, it does not excuse Plaintiffs from their affirmative burden to show that the requirements of Rule 23 have been met. *Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 71 (D. Me. 2010) ("It is Plaintiffs' burden to establish a basis for certification."). As one of Plaintiffs' own cited cases notes: "'Provisional' certification does not lower the bar with respect to the Rule 23(a) and (b) standards; the court must conduct a rigorous inquiry and satisfy itself that the putative class meets those requirements." *Gomes*, 2020 WL 2113642, at *2. As discussed further herein, Plaintiffs have not met those standards.

## II. Plaintiffs Have Not Met the Requirements of Rule 23.

Plaintiffs have not met the requirements of Rule 23 in any event, whether they seek provisional or final certification, because they have failed to demonstrate appropriateness of relief respecting the class as a whole, commonality, typicality, and adequacy of representation.

First, the varying factual circumstances of members of Plaintiffs' desired class defeat their attempt to satisfy Rule 23(b)(2) and to demonstrate commonality and typicality. Under Rule 23(b)(2), Plaintiffs must show that Defendants have "acted or refused to act on grounds that apply generally to

---

relief for a putative class. For the reasons explained above, the Supreme Court's reasoning in *AARP* applies in analogous exigent circumstances—that is, where the court risks losing jurisdiction absent preliminary relief because of some imminent risk of irreparable harm. That sort of immediately urgent, irreparable harm is not present in the current case. And in any event, Defendants submit that the plain text of Rule 23(b)(2) and the rigorous requirements to show class certification—requirements that often require lengthy discovery and extensive factfinding—evince that provisional class actions should not be commonplace.

the class, so that . . . relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). Under Rule 23(a), meanwhile, Plaintiffs must affirmatively demonstrate that "there are questions or law or fact common to the class," and that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(2)-(3). These requirements operate in part to ensure that Defendants may offer all defenses available as to each and every class member.

But here, members of Plaintiffs' proposed class are differently situated in ways that may be relevant if Defendants do not prevail on their first-line argument. Specifically, Defendants argue that no person covered by the Executive Order is "subject to the jurisdiction" of the United States for purposes of the Fourteenth Amendment and 8 U.S.C. § 1401. *See* Defs.' Obj. at 12-22, *N.H. Indonesian Cmty.*, 1:25-cv-38-JL-TSM, ECF No. 58-1 (D.N.H. Jan. 31, 2025). That is because the words "subject to the jurisdiction thereof" refer to an individual's domicile, and, Defendants contend, individuals covered by the Executive Order are not domiciled in the United States. *Id.* at 8-12. But if a court were to accept Defendants' first premise (that birthright citizenship depends on domicile) and not their second (that individuals covered by the Executive Order are *categorically* not domiciled in the United States), then whether different class members are entitled to relief depends upon individualized factual determinations—and attendant legal analysis—regarding their domiciles. On appeal in the First Circuit, the plaintiffs in *New Hampshire Indonesian Community Support* have advanced this as an alternative argument. Appellees' Br. 33, *New Hampshire Indonesian Community Support v. Trump*, 25-1348 (1st Cir. filed June 9, 2025) ("[E]ven if there were some additional, atextual requirement of domicile, most undocumented families are long-term residents."). Those divergent factual and legal issues make clear that this is not a case in which the challenged policy "can be enjoined or declared unlawful only as to

all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted). Put another way, the relief that Plaintiffs seek is not "indivisible," *id.*—it can be parceled out to different class members based on their particular circumstances in the form of party-specific injunctions.[2] Those variations within the proposed class also undermine Plaintiffs' assertion of commonality. *See DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 398 (D. Mass. 2017) (noting different legal inquiries as to members of a putative class will defeat commonality).

Similarly, those divergent issues of fact and law illustrate why the named class representatives are not "typical" of the class as a whole. Plaintiffs seek to certify a class of:

> All current and future persons who are born on or after February 20, 2025, where (1) that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) that person's mother's presence in the United States was lawful but temporary, and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, as well as the parents (including expectant parents) of those persons.

Class Mot. at 1. But the named representatives are not "typical" of a class that varies substantially both as to legal presence and factors regarding domicile. As pled, one plaintiff has a pending asylum application; another is present in the United States on a student visa; and another fails to articulate his immigration status. *See* Compl. ¶¶ 12-14. All three allege that they have strong connections to residency in the United States. Decl. of Barbara ¶ 6, ECF No. 5-9; *see also* Decl. of Susan ¶ 6, ECF No. 5-10; Decl. of Mark ¶ 6, ECF No. 5-11. Those representatives are not "typical" of a class that includes

---

[2] To understand the distinction, take an example (setting aside numerosity or other 23(a) concerns that might arise). Say one resident of a residential neighborhood had begun playing music at an extremely loud volume in the middle of the night. If a neighbor sued, seeking an injunction barring the resident from playing music over a certain decibel after 10 p.m., he might be able to proceed under Rule 23(b)(2) on behalf of a class of neighbors. That is because the injunction he seeks is indivisible—the music-playing resident cannot reduce the volume only as to the plaintiff neighbor, and the "conduct is such that it can be enjoined … only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. By contrast, if the offending neighbor had instead been shooting laser beams into several neighbors' front windows, a court could award relief only to the plaintiff neighbor. In that instance, if the plaintiff neighbor wished to proceed in a class action, he would have to meet the requirements of Rule 23(b)(1) or 23(b)(3).

parents who entered the country unlawfully a few months ago, parents who entered the country un-lawfully twenty years ago, parents who are present in the United States on a tourist visa for a planned one-week stay for the purpose of giving birth (e.g., birth tourists), parents who are present in the United States on a tourist visa for a planned one-week stay and gave birth prematurely and have no intent to ever return to the United States, parents who have been present in the United States on a student visa for a decade, children of all of those groups, and many others. Plaintiffs even seek to represent the interests of parents and children who have left the United States and have no desire to ever seek any of the privileges of American citizenship from Defendants.

For the same reasons, discovery is warranted before this Court certifies a class. Plaintiffs sub-mit dozens of pages of declarations on their *attorneys'* qualifications to litigate the case. But the record on the three plaintiffs' qualifications to represent a class of enormous size and on a matter of signifi-cant consequence consists of just three pseudonymous declarations, each 14 paragraphs and formula-ically drafted. ECF Nos. 5-9, 5-10, 5-11. Defendants should be permitted to test the veracity of these template declarations and probe the class representatives' immigration statuses, how long they have been present in the United States, and facts related to their demonstrated intention to stay and make the United States their lawful home—all factors that could be relevant to a domicile inquiry—in order to assess whether they satisfy the typicality and other requirements. They also should be permitted discovery as to the ways in which they intend to utilize the benefits of American citizenship. *See, e.g.,* *Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010) ("[A] district court should defer decision on class certification issues and allow discovery if the existing record is inadequate for resolving the relevant issues.") (cleaned up).

In addition, Plaintiffs have not met the adequacy prong of Rule 23(a)(4) for the reasons set forth above and because all three class representatives seek to proceed pseudonymously. Compl. ¶ 12

n.1.[3] The adequacy requirement of Rule 23 is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement has two prongs. First, a plaintiff must demonstrate 'that the interests of the representative party will not conflict with the interests of any of the class members.'" *Clough v. Revenue Frontier, LLC*, No. 17-CV-411-PB, 2019 WL 2527300, at *4 (D.N.H. June 19, 2019) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)). And "[s]econd, a plaintiff must show that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Id.* at *4.

The same concerns regarding commonality and typicality likewise defeat the named representatives' adequacy at the first prong. That is because the named representatives will necessarily have an interest in making only arguments that cover them—and, as explained above, the varying factual and legal arguments regarding domicile could present divergent legal theories across the class. Moreover, the striking thinness of the record on which Plaintiffs seek to proceed highlights their inadequacy as representatives. For example, they have sued the Department of Agriculture because it administers the Supplemental Nutrition Assistance Program ("SNAP"). Compl. ¶ 20. But *none* of the Plaintiffs allege that they or their children have or will utilize the SNAP program. Plaintiffs have sued the Centers for Medicare and Medicaid Services because it administers Medicaid. *Id.* ¶ 22. Again, *none* of the Plaintiffs say that they have or will participate in that program either. Plaintiffs have not even established a prima facie case for their claims against the Defendants; they certainly have not carried their burden to show they are adequate representatives for the class's potential claims against these agencies.

---

[3] At the Court's June 30, 2025 status conference, Defendants' counsel noted that Defendants did not object at the time to Plaintiffs proceeding pseudonymously, but that Defendants did have concerns about pseudonymity in the class action context and reserved their right to obtain the identities of the Plaintiffs or to raise objections at a later time. Defendants do so now, consistent with Defendants' prior representations that Plaintiffs' decision to proceed pseudonymously may impact this Court's assessment of class certification. *See* Tr. of June 30, 2025 Hrg. 3:17-19 ("I will note that in particular because th[is] is [a] class action, there's, of course, the possibility that the adequacy of the putative class representative may become an issue[.]").

Also as to the first prong, courts have expressed "concerns about the prospect of a pseudon-ymous plaintiff acting as a class representative." *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 649 (D.N.H. 2020). This is because of "the important role class representatives play as the public face of the class action" and because "[p]utative class members have an interest in knowing the identities of all class representatives so that they may assess whether the representatives adequately represent them." *Id.* Pseudonymity thus makes it "unclear how [p]laintiffs [can] satisfy their burden to show adequacy when they are unknown or how they would evaluate potential conflicts with other class members." *Doe (1) v. Univ. of Kansas Hosp. Auth.*, No. 2:25-CV-02200-HLT-TJJ, 2025 WL 1634958, at *4 (D. Kan. June 9, 2025); *see also Sherman v. Trinity Teen Sols., Inc.*, 339 F.R.D. 203, 205-06 (D. Wyo. 2021) (denying motion to proceed under pseudonym and finding that the plaintiff's role as the class representative weighs in favor of an open proceeding); *In re Ashley Madison Customer Data Sec. Breach Litig.*, 2016 WL 1366616, at *4-5 (E.D. Mo. Apr. 6, 2016) (ruling that plaintiffs could not proceed pseudonymously as class representatives because the class members and public had interest in know-ing who was guiding and directing the litigation).

Here, all three class representatives seek to proceed pseudonymously, presenting exactly those concerns—and underscoring that Plaintiffs have failed to meet their burden to affirmatively demon-strate adequacy. Because the named Plaintiffs are proceeding without revealing their identities, mem-bers of the class will not be able to evaluate whether the named class representatives actually represent the class's interests. While Plaintiffs assert in their Memorandum that "[t]he proposed class represent-atives have alleged the same injuries, arising from the same Executive Order," Mem. in Supp. of Pls.' Mot. for Class Certification and Appointment of Class Counsel at 9, ECF No. 5-1, it is not possible for the class members to assess that in a void and Plaintiffs have offered no mechanism for class members to ensure that their representatives adequately represent them. While Plaintiffs have set out a proposal for Defendants to see the names of the class representatives pursuant to a protective order,

there is no comparable proposal for the class members to ascertain the identities of the class representatives. *See* ECF No. 32 at 2 (setting out initially that only the filer may see the named Plaintiffs' names). Absent any such mechanism, the choice of named Plaintiffs to proceed pseudonymously defeats their assertion of adequate representation and should preclude class certification.

Moreover, Plaintiffs err in asking this Court to certify a class that includes "current *and future* persons" who are covered by the Executive Order. Class Mot. at 1 (emphasis added). A person may maintain a suit in federal court, whether as an individual or as a class member, only if he has standing and has the legal capacity to sue. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021). But "future persons"—*i.e.*, persons who have not yet been conceived—lack either standing or capacity to sue. *See id.* at 424 ("[U]nder Article III, a federal court may resolve only 'a real controversy with real impact *on real persons*.'") (emphasis added; citation omitted)). A judicial order resolving the rights of "parties that did not exist" yet at the time of the decision would raise "significant questions under the Due Process Clause." *McLaughlin Chiropractic Assoc's v. McKesson Corp.*, --- S. Ct. ---, 2025 WL 1716136, at *8 n.5 (U.S. June 20, 2025). The interests of a person who does not yet exist also cannot be "fairly and adequately protect[ed]," Fed. R. Civ. P. 23(a)(4), given the person's inability to monitor or participate in the litigation.

Relatedly, the entire exercise of considering the certification of a class is premature because the scope of the Supreme Court's *CASA* stay has not been set yet by the lower courts. The Supreme Court directed that "[t]he lower courts shall move expeditiously to ensure that, with respect to each plaintiff, the injunctions comport with [*CASA*'s] rule and otherwise comply with principle of equity." 2025 WL 1773631, at *15. Earlier today, the First Circuit partially remanded *New Jersey v. Trump*'s nationwide injunction for "the District Court to consider the bearing, if any, of [the] guidance in *CASA* on the scope of the preliminary injunction." Order, *New Jersey v. Trump*, No. 25-1170 (1st Cir.

July 3, 2025). But because that has not happened yet, Plaintiffs cannot show whether existing injunctions cover themselves and the proposed class.

Proceeding on Plaintiffs' motion would break with Judge Coughenour's handling of a similar request in the Western District of Washington. In another development earlier today, Judge Coughenour recognized the need for *CASA* remand litigation to proceed before considering a different set of individual plaintiffs' request to lift a stay and certify a class. *Washington v. Trump*, No. 2:25-cv-127, ECF No. 141 (W.D. Wash. July 3, 2025). Citing the Ninth Circuit's ongoing consideration of the scope of *CASA*'s stay, he held "it would be premature for this Court to lift its stay" and consider the motion for class certification. *Id.* at 3. "[M]aintaining the stay would also promote judicial efficiency, judicial comity, and the overall effort to simplify the issues." *Id.* at 3. Here too, this Court should allow the "expeditious[]" injunction-scope review that the Supreme Court has ordered, *CASA*, 2025 WL 1773631, at *15, to proceed before considering the certification of a class.

## III.    This Court Should Not Certify a Nationwide Class.

Should the Court conclude that class certification is appropriate, it should not issue a nationwide class action in any event and must carefully tailor the class. The Supreme Court has previously cautioned against the certification of nationwide class actions. *Yamasaki*, 442 U.S. at 702. And more recently, *CASA* recognized that Rule 23's predecessor, the equitable bill of peace, "did not "resolve a question of legal interpretation for the entire realm." 2025 WL 1773631, at *9. Relatedly, several Justices cautioned against reflexively certifying nationwide class injunctions so to provide "nationwide class relief" that would be an end-run around the now forbidden universal injunction. *Id.* at *18 (Alito, J., concurring). "[D]istrict courts should not view [*CASA*] as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23." *Id.* "Putting the kibosh on universal injunctions does nothing to disrupt Rule 23's requirements." *Id.* Furthermore, this Court itself recognized

the need to limit relief only as necessary when it previously declined to issue a universal injunction in a prior challenge to the EO. *See N.H. Indonesian Cmty. Support*, 765 F. Supp. 3d at 112.

This Court should heed that caution here. Despite seeking nationwide class relief in the wake of *CASA*, Plaintiffs offer no argument why nationwide relief is necessary. At most, the Court may certify a class limited to this judicial district. *See, e.g.*, *Bova v. Cox Commc'ns, Inc.*, No. 7:01CV00090, 2001 WL 1654708, at *4 (W.D. Va. Dec. 12, 2001) (limiting the class action to the Western District of Virginia). Congress exercised its power to create lower courts by devising a system under which most issues are resolved within 12 geography-based circuit courts of appeals. It is a feature of this system that district judges within each circuit can reach different opinions on the same question of law before the circuit rules. And even once a circuit rules, the issue can continue to percolate within other circuits until the matter is taken up by the Supreme Court. Congress recognized the need for nationwide uniformity on some questions of law; the U.S. Court of Appeals for the Federal Circuit, for example, serves that purpose for some questions. But Congress decided against giving those courts jurisdiction over the subject of this suit, instead preferring a system under which different circuits may opine on particular legal questions and leave uniform resolution of abstract legal questions to the Supreme Court.

Providing universal relief here would disrupt litigation pending across the United States presenting the precise legal question presented here and potentially create conflicts with the decisions of putative class members to bring their suits elsewhere and the ability of those courts to address them. *See Yamasaki*, 442 U.S. at 702 ("[A] federal court when asked to certify a nationwide class should take care to ensure … that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts."); *see id.* at 689 (describing a certified class excluding other suits). This Court should not grant Plaintiffs' request to upend the last five months of litigation. At a minimum, these considerations demonstrate that the class should be limited to this judicial district.

And if the Court concludes that Plaintiffs can obtain provisional class certification, the Court still should not certify a nationwide class without a showing from Plaintiffs of why this nationwide scope is necessary.

## IV.   This Court Should Not Issue a Preliminary Injunction.

Finally, even if this Court were to certify a nationwide class, it should not issue a preliminary injunction. As discussed in depth by Defendants in *New Hampshire Indonesian Community Support v. Trump*, 1:25-cv-38-JL-TSM (D.N.H.), preliminary injunctive relief should not issue independent and apart from any class certification issues. *See* Defs.' Obj., *N.H. Indonesian Cmty.*, 1:25-cv-38-JL-TSM, ECF Nos. 58, 58-1 (D.N.H. Jan. 31, 2025). This Court is undoubtedly familiar with those prior arguments, which Defendants incorporate by reference here, but to repeat: Plaintiffs have not shown a likelihood of success on the merits because the EO comports with the meaning of the Citizenship Clause as illustrated by the Supreme Court's decision in *Elk v. Wilkins*, 112 U.S. 94 (1884), and its emphasis on domicile in *United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898). Further, 8 U.S.C. § 1401(a) merely codified the exact scope of the Citizenship Clause. Moreover, the balance of equities favors Defendants because Plaintiffs' harms are hypothetical, and an injunction would intrude into the Executive Branch's authority over immigration and the status of aliens. As a result, Plaintiffs have not shown an entitlement to a preliminary injunction under the factors set out in *Winter v. NRDC*, 555 U.S. 7 (2008). There also are multiple party-specific defects in Plaintiffs' motion. Plaintiff Barbara is not entitled to emergency injunctive relief. She does not allege that any of her children are subject to the EO and her unborn child is not expected until October—months from the deadline she gave the Court to rule. None of the Plaintiffs establish their standing to sue the State, Agriculture, or Centers for Medicare and Medicaid Services Defendants. Their declarations give no reason why relief, much less emergency injunctive relief is needed against them. They do not, for example, allege that any of the Plaintiffs or their children will seek passports, SNAP benefits, or Medicare or Medicaid benefits

18

while this litigation is pending. A plaintiff's remedy "must of course be limited to the inadequacy that produced the injury in fact," and "[t]his is no less true with respect to class actions than with respect to other suits." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). As for the DHS Defendants, Plaintiffs' declarations express concern their children will become immigration enforcement targets, but Plaintiffs' allegations are premature. As *CASA* recognized, federal government agencies like DHS will spend the first 30 days after *CASA* "develop[ing] and issu[ing] public guidance regarding the order's implementation." 2025 WL 1773631, at *4. That process should be allowed to proceed before Plaintiffs litigate on supposed DHS implementation plans. Nor can Plaintiffs obtain a preliminary injunction against the President. A federal court "has no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (quoting *Mississippi v. Johnson*, 71 U.S. 475, 500 (1866)).

## V. This Court Should Stay Any Preliminary Injunction Pending Appeal and A Bond Should Be Required.

If this Court enters a preliminary injunction, it should stay that order pending any appeal authorized by the Solicitor General. The stay factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). For the reasons explained above and in the brief Defendants filed in *New Hampshire Indonesian Community Support*, the Government is likely to prevail on the merits, Plaintiffs cannot demonstrate irreparable injury, and the remaining equitable factors favor the Government.

The Supreme Court has already partially stayed three nationwide preliminary injunctions in the context of this executive order, recognizing the problem of court orders remedying alleged injuries of non-plaintiffs. *CASA*, 2025 WL 1773631, at *15. Any class-wide relief granting a preliminary injunction to non-plaintiffs would likewise warrant a stay pending appeal. At a minimum, Defendants

request an administrative stay of at least seven days to permit emergency appellate litigation from this Court's denial of Defendants' motion of a stay pending appeal.

Finally, if the Court enters a preliminary injunction, Defendants are entitled to a bond pursuant to Fed. R. Civ. P 65(c). Under that rule, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The proposed preliminary injunction seeks to require Defendants to extend federal benefits to persons deemed by Defendants to lack an entitlement to them. The cost to the United States would be substantial, and this should be reflected in the bond accompanying a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification and Plaintiffs' Motion for Classwide Preliminary Injunction.


DATED: July 3, 2025                    Respectfully submitted,

                                       BRETT A. SHUMATE
                                       Assistant Attorney General
                                       Civil Division

                                       ERIC J. HAMILTON
                                       Deputy Assistant Attorney General

                                       ALEXANDER K. HAAS
                                       Branch Director

                                       BRAD P. ROSENBERG
                                       Special Counsel

                                       /s/ Yuri S. Fuchs
                                       YURI S. FUCHS (CA Bar No. 300379)
                                       Trial Attorney
                                       U.S. Department of Justice

Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 398-3869
Facsimile: (202) 616-8460
yuri.s.fuchs@usdoj.gov

*Attorneys for Defendants*