# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW JERSEY, et al.,

      Plaintiffs,

                    v.

DONALD J. TRUMP, in his official capacity as President
   of the United States, et al.,

      Defendants.

No. 1:25-cv-10139-LTS

## DEFENDANTS' MEMORANDUM IN RESPONSE TO
## THIS COURT'S JULY 2, 2025 ORDER

# TABLE OF CONTENTS

INTRODUCTION........................................................................................................................1

ARGUMENT..............................................................................................................................2

I.    The Supreme Court Issued a Stay that Remains In Place. ..........................................3

II.   Defendants Need Not Write Their Own Injunction. ...................................................3

III.  The Preliminary Injunction is Overbroad. .................................................................5

      A.    States Lack Standing to Assert Rights on Behalf of Third Parties...........................5

      B.    The Injunction Is Broader Than Necessary to Provide the States Complete Relief. ...........7

      C.    Even If a Narrow Injunction Left Unremedied Some Residual Injury, Universal Relief That Imposes Substantial Burdens on the Defendants Would Still Be an Abuse of Discretion...........................................................................................................10

CONCLUSION ........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Biden,*
  31 F.4th 469 (6th Cir. 2022) ................................................................................................9

*Becky's Broncos, LLC v. Town of Nantucket,*
  138 F.4th 73 (1st Cir. 2025) ...............................................................................................4

*DISH Network Serv. L.L.C. v. Laducer,*
  725 F.3d 877 (8th Cir. 2013) ..............................................................................................8

*Freedom Holds., Inc. v. Spitzer,*
  408 F.3d 112 (2d Cir. 2005) .............................................................................................10

*Haaland v. Brackeen,*
  599 U.S. 255 (2022) ............................................................................................................6

*Kaiser v. Blue Cross of Cal.,*
  347 F.3d 1107 (9th Cir. 2003) ............................................................................................8

*Kinney-Coastal Oil Co. v. Kieffer,*
  277 U. S. 488 (1928) ...........................................................................................................7

*Koster v. (Am.) Lumbermens Mut. Cas. Co.,*
  330 U.S. 518 (1947) ..........................................................................................................11

*Trump v. CASA, Inc.,*
  606 U.S. __, 2025 WL 1773631 (U.S. June 27, 2025) ...............................................*passim*

*United States v. Texas,*
  599 U.S. 670 (2023) ............................................................................................................9

*United States v. Zenon,*
  711 F.2d 476 (1st Cir. 1983) ..............................................................................................4

*We The Patriots USA, Inc. v. Hochul,*
  17 F.4th 266 (2d Cir. 2021) ................................................................................................8

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ................................................................................................................4

**Other Authorities**

S. Bray & P. Miller, Getting into Equity, 97 Notre Dame L. Rev. 1763, 1797 (2002) ...............6

## INTRODUCTION

The Supreme Court recently granted Defendants' application for a partial stay of this Court's preliminary injunction "to the extent that the injunctio[n] [is] broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. __, 2025 WL 1773631 at * 15 (U.S. June 27, 2025). In so doing, the Court directed that "lower courts shall move expeditiously to ensure that, with respect to each plaintiff, the injunctions comport with this rule and otherwise comply with principles of equity." *Id.* The Court also ordered that "[t]he injunctions are . . . stayed to the extent that they prohibit executive agencies from developing and issuing public guidance about the Executive's plans to implement the Executive Order." *Id.*

As applied in the context of the preliminary injunction issued by this Court, the Supreme Court left two issues to resolve: *first*, whether a universal injunction issued in favor of the States and other governmental entities (hereinafter, the "States") comports with the principles of equity the Supreme Court identified, and *second*, whether the States' lawsuit is consistent with third-party standing principles. The Supreme Court "decline[d] to take up these arguments in the first instance" and "le[ft] it to" the "lower courts" to decide. *Id.* at * 12.

On June 30, the States filed a letter with this Court requesting a briefing schedule regarding the application of the Supreme Court's decision. *See* Letter from Philip D. Murphy to Judge Leo T. Sorokin (June 30, 2025), ECF 185. Specifically, the States proposed a July 8 deadline for Defendants "to submit briefing and declarations on alternative forms of relief for remedying the States' injuries," with the States to file their brief one week thereafter. *Id.* at 2. Defendants indicated that they opposed the briefing schedule submitted by Plaintiffs, *see id.*, but before Defendants could file a response, this Court entered an order on July 2 largely adopting Plaintiffs' schedule but permitting Defendants to file a reply. *See* Order, ECF 186. The next day, the United States Court of Appeals for the First Circuit denied a motion made by Defendants-Appellants in that court to set a briefing

1

schedule to apply the Supreme Court's stay in *CASA* and instead remanded to this Court for "the limited purpose of enabling the District Court to consider the bearing, if any, of [the Supreme Court's] guidance in *CASA* on the scope of the preliminary injunction . . . and to act accordingly." Order at 3, ECF 188.

## ARGUMENT

As a threshold matter, Defendants raise two procedural issues. *First*, the First Circuit misapprehended the stay entered by the Supreme Court in *CASA*. Specifically, while the First Circuit noted that there is no stay motion currently pending before it, the Supreme Court was clear that it "granted" a partial stay to the extent the preliminary injunctions issued by this and other courts "are broader than necessary to provide complete relief to each plaintiff with standing to sue." *CASA*, 2025 WL 1773631 at *15. There is therefore a stay in effect, the scope of which the Supreme Court required the lower courts to resolve. *Second*, the briefing schedule proposed by the States and adopted by this Court flips the burden of proof: In light of the Supreme Court's grant of Defendants' stay, it is the States' burden, in the first instance, to demonstrate why this Court's preliminary injunction is necessary to remedy their injuries without being overly broad. Defendants do not have the obligation to prove the negative. Thus, nothing requires Defendants to affirmatively seek further relief for the *CASA* stay to apply, but to the extent this Court disagrees, Defendants request that this Court construe this filing as a motion to modify the preliminary injunction or as a motion to stay the preliminary injunction in part.

On the merits, this Court should narrow the preliminary injunction it has entered. Specifically, (1) third-party standing principles bar relief in the States' suit to the extent those injuries are premised on the injuries of individual residents; (2) a narrower injunction tailored to the States' purported financial injuries would provide complete relief; and (3) even if a narrower injunction provided slightly less than complete relief, any residual injury to the States cannot justify a universal

injunction. *Id.* at \*12 (noting that a "stronger . . . story" is needed for a "broader and deeper . . . remedy" (quotation omitted)).

## I.    The Supreme Court Issued a Stay that Remains In Place.

In its July 3, 2025 order remanding this case, the First Circuit opined that a stay is no longer in place despite the Supreme Court's clear position to the contrary. ECF 188. In that order, the First Circuit reasoned "[t]here is no motion, however, pending before this court for a stay pending appeal of the preliminary injunction on appeal in No. 25-1170, which injunction the defendants-appellants appear to agree is not stayed at present." *Id.* at 3. Defendants do not agree. The First Circuit is correct that there is no pending motion for stay but that is because *a stay is now in place. CASA*, 2025 WL 1773631, at \*15. In *CASA*, not only did the Supreme Court find the universal injunction issued by this Court unlawful, but it *granted* Defendants' stay pending the lower courts' expeditious review of the overly broad injunctions. *Id.* Specifically,

> [t]he Government's applications to partially stay the preliminary injunctions are granted, but only to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue. The lower courts shall move expeditiously to ensure that, with respect to each plaintiff, the injunctions comport with this rule and otherwise comply with principles of equity. The injunctions are also stayed to the extent that they prohibit executive agencies from developing and issuing public guidance about the Executive's plans to implement the Executive Order. Consistent with the Solicitor General's representation, §2 of the Executive Order shall not take effect until 30 days after the date of this opinion.

*Id.* (emphasis added). Accordingly, a stay remains in place pending this Court's determination of the proper scope of its injunction.

## II.    Defendants Need Not Write Their Own Injunction.

The briefing schedule proposed by Plaintiffs and adopted by this Court improperly shifts the burden of proof on injury and remedy from plaintiffs to defendants. Specifically, Defendants are being required in the first instance to "submit briefing and declarations on alternative forms of relief for remedying the States' injuries," with the States providing their response afterwards. ECF 185 at

2. The States appear to believe that they start with a presumption of universal relief and that Defendants bear the burden of proving that some narrower remedy is sufficient. *Id.* That theory finds no purchase in *CASA* or any other decision: The States bear the burden to establish their entitlement to an injunction, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), and as the Supreme Court just made clear, the requirement that a court issue relief tailored to the injured party before it is a fundamental limitation on the court's power to act, *CASA*, 2025 WL 1773631, at *13. The States are also wrong in suggesting that they may "submit . . . declarations," ECF 185 at 2, five months after this Court entered a preliminary injunction to litigate that remedy's scope. Because *CASA* limits the preliminary injunction to "each plaintiff with standing to sue," 2025 WL 1773631, at *15, any preliminary injunction must be limited to the extent the declarations the States submitted with their motion for a preliminary injunction establish their standing to sue.

This course of action also conflicts with long-standing First Circuit precedent that defendants "need not 'write' the injunction themselves." *United States v. Zenon*, 711 F.2d 476, 478 (1st Cir. 1983). Indeed, it is axiomatic that "[t]he party seeking the preliminary injunction bears the burden of establishing that the[] [preliminary injunction] factors weigh in its favor." *Becky's Broncos, LLC v. Town of Nantucket*, 138 F.4th 73, 77 (1st Cir. 2025). Moreover, as the Supreme Court has recently reiterated, that relief cannot be any broader than necessary and should comply with principles of equity. *CASA*, 2025 WL 1773631, at *15. Accordingly, the States have the burden of proof; they cannot begin (as the briefing schedule proposed by the States and adopted by this Court contemplates) with the presumption of universal, nationwide (or really any) injunctive relief and *then* have the parties work backwards because a defendant does not know in advance what injuries the court will find. Defendants cannot be expected to propose a specific injunction tailored to those not-yet-determined injuries because in a case like this one, with multiple plaintiffs and multiple

theories of injuries, Defendants would need to propose a laundry list of appropriate injunctions for every possible combination.

Thus, Defendants submit this brief in response to the Court's order while maintaining that Plaintiffs bear the burden to establish the scope of an appropriate preliminary injunction. Defendants should not be required to demonstrate, in the first instance, why this Court's injunction is too broad to remedy the States' alleged injuries, before the States have put on any evidence of their injuries in the context of the Supreme Court's decision in *CASA*.

## III. The Preliminary Injunction is Overbroad.

On the merits, the injunction previously entered by this Court is clearly overbroad and inappropriate. That was true before *CASA* and is confirmed by the Supreme Court's decision. For the avoidance of doubt, Defendants continue to rely on all the arguments they made in opposing Plaintiffs' motion for a preliminary injunction, Defs.' Mot. of L. in Opp'n to Pls.' Mots. Prelim. Inj., ECF 92, and incorporate those arguments here by reference. And because Plaintiffs bear the burden, Defendants reserve the right to present additional arguments in opposing whatever scope Plaintiffs might suggest for the preliminary injunction.

### A. States Lack Standing to Assert Rights on Behalf of Third Parties.

The Supreme Court did "not address" whether "the States lack third-party standing," *CASA, Inc.*, 2025 WL 1773631, at *2 n.2, but stayed the injunction to the extent the States did lack standing, *id.* at *15, and "le[ft] it to" "lower courts" "to consider these and any related arguments," *id.* at *12. *CASA* makes clear that the States' standing is crucial to the availability and scope of injunctive relief. The Court squarely rejected the States argument that their standing is irrelevant: Equitable relief is available only to remedy the injuries of "plaintiffs with standing to sue." *Id.* at *15.

The equitable relief that would be available to the States underscores why they are not proper plaintiffs. Fundamentally, this suit is about the non-citizenship of nonparties. But the States cannot assert the rights of nonparties or seek relief tailored to any person's citizenship rights. *See Haaland v. Brackeen*, 599 U.S. 255, 295 (2022) (explaining that States cannot bring *parens patriae* suits against the federal government). A court may craft injunctive relief focused only on the States' injuries—the reimbursement-related injuries discussed below. *CASA*, 2025 WL 1773631, at *16. In a suit by the proper plaintiffs—the individuals whose alleged citizenship rights are affected by the Executive Order—a court in equity can provide a more natural remedy: "prohibiting enforcement of the Executive Order against" that person. *Id.* at *11.

The mismatch between the rights asserted and the remedy sought by the States further underscores why the States cannot properly assert the rights of third parties. A directly affected party needs relief only for themselves, but indirectly affected parties—like the States here—can often assert that they require relief for every affected party in order to have relief for themselves. That inverts the general principles of equity: rather than requiring a "stronger" story of harm for "broader and deeper" relief, *id.* at *12 (quoting S. Bray & P. Miller, Getting into Equity, 97 Notre Dame L. Rev. 1763, 1797 (2002), disregard of third-party standing principles would allow parties only indirectly affected to leverage weaker harm into broader relief. Nothing in either principles of equity or third-party standing doctrine supports that result. *Cf. id.* at *18 (Alito, J., concurring) ("Left unchecked, the practice of reflexive state third-party standing will undermine today's decision as a practical matter."). Accordingly, any injunctive relief requested on behalf of third parties, here individual noncitizens, should be denied.

**B.    The Injunction Is Broader Than Necessary to Provide the States Complete Relief.**

A court sitting in equity can "administer complete relief *between the parties*." *Id.* at *11 (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)). Accordingly, "complete relief *to each plaintiff with standing to sue*" is the outer limit of the equitable relief that a court can provide. *Id.* at *15. To assess what sort of injunction is necessary to provide "complete relief," a court necessarily focuses on the plaintiff's injury and standing. *Id.* at *11. Thus, as the Supreme Court explained, an individual who asserts harm from the Executive Order receives "complete relief" from an order "prohibiting enforcement" as to them; "[e]xtending the injunction to cover all other similarly situated individuals would not render *her* relief any more complete." *Id.*

As noted above, the States have no abstract interest in the citizenship status of any particular individual and cannot predicate their suit on such an interest. Instead, the States assert fundamentally monetary harms: "financial injuries and the administrative burdens flowing from citizen-dependent benefits programs." *Id.* at *12; *see also* Mem. of L. in Supp. of Pls.' Mot. For Prelim. Inj., ECF 5 at 8 (asserting standing based on States' "proprietary harms" and "fiscal injuries"). Specifically, the States contend that they suffer financial injuries due to loss of various funding for expenses involving "federal health funds and concomitant state healthcare expenses," special needs youth, foster care, adoption, guardianship, and child welfare assistance; loss of SSA reimbursements under the Enumeration at Birth ("EAB") program and major operational disruptions and administrative burdens across agencies and facilities. ECF 5 at 8-9. Those harms, the States contend, flow from Defendants' recognition that persons subject to the Executive Order are noncitizens. For example, under Medicaid or the Children's Health Insurance Program ("CHIP"), the States assert that the federal government would reimburse "between 50 and 75 percent of expenditure[s]" on children who are U.S. citizens or with a qualifying immigration status.

Conversely, the States argue that if a child is treated as a noncitizen the States will have to "bear the full cost" of the healthcare provided under Medicaid or CHIP.  ECF 1 ¶ 123.

The States are not entitled to a preliminary injunction on any financial injuries, because they have not established that those injuries are irreparable. "Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013); *see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294-95 (2d Cir. 2021). The States have not explained how they would be unable to adjudicate their claims in separate proceedings when they seek reimbursement or whether there are any available administrative processes to recover federal monies to which the states claim entitlement after the conclusion of this litigation. *Cf. Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1115-16 (9th Cir. 2003) (finding that a party asserting a claim for Medicare reimbursement would not be irreparably harmed by exhausting claims through an administrative review process).

But even if the Court disagreed, a preliminary injunction should at most require Defendants to continue to reimburse Plaintiffs for services provided to persons covered by the Executive Order as though they were citizens. Nothing about that relief would require extending the injunction to individuals who are not, and may never be, present in any of the plaintiff States, and for whom the plaintiff States will never seek reimbursement under any of the federal programs they identify. Nor would it require Defendants to treat persons covered by the Executive Order as citizens for other persons. The States' monetary injuries would be completely remedied by relief tailored to those monetary injuries; ordering relief that has no effect on the States' asserted monetary harms "would not render *[the States']* relief any more complete." *CASA*, 2025 WL 1773631, at *11.

The States fare no better in asserting that universal relief is necessary because they face administrative burdens created by the Executive Order. *See generally* ECF 1, ¶¶ 186-201. To start, these are downstream injuries of the type that the Supreme Court has recognized make standing

"more attenuated." *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023). "[I]n our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending." *Id.* But even if these alleged—and hypothetical—injuries warranted injunctive relief, they would be fully remedied by an injunction requiring the federal government to allow the Plaintiff States to continue to treat individuals born in the United States but covered by the Executive Order as citizens for purposes of these programs.[1]

Finally, the States cannot resist a narrower injunction by asserting that it would be difficult for Defendants to administer narrower relief. As *CASA* makes clear, the relevant inquiry is focused on remedying the plaintiff's injury; that injury sets the outer bounds of the relief the Court may properly order. 2025 WL 1773631, at *12. That the government may sometimes comply with a party-specific injunction in a manner that goes beyond the relief ordered and incidentally affords relief to some nonparties—for example, for administrability reasons—does not alter the court's power under the Judiciary Act to grant equitable relief. *See id.* at *17 (Thomas, J., concurring) ("[T]he Court today readily dispatches with the individual and associational respondents' position that they require a universal injunction, notwithstanding their argument that a 'plaintiff-specific injunction' would be difficult to administer."); *Arizona v. Biden*, 31 F.4th 469, 485 (6th Cir. 2022)

---

[1] Other alleged harms related to the States' current methods of verifying eligibility likewise do not require sweeping relief. The States' contention that they will be unable to receive Title IV-E funding absent enjoining the Order and recognizing the citizenship of children subject to the Order fails to recognize or even consider that the States could continue to treat birth certificates issued by other state agencies as sufficient basis for eligibility for Title IV-E. An injunction permitting the States to continue treating individuals born in the United States as eligible for those programs would thus not alter the States' administrative burdens in any meaningful way, and likewise does not require that relief run to non-party individuals in other States who have never, and may never, set foot in a plaintiff State, much less seek benefits through a federal program under which the State receives reimbursements.

(Sutton, J., concurring) (observing that potential compliance issues are "initially the National Government's problem, not ours").

## C. Even If a Narrow Injunction Left Unremedied Some Residual Injury, Universal Relief That Imposes Substantial Burdens on the Defendants Would Still Be an Abuse of Discretion.

Even if the States could identify some residual injury not addressed by an injunction requiring Defendants to allow the plaintiff States to continue to treat individuals born in the United States but covered by the Executive Order as citizens for purposes of these programs, any such residual injury could not justify extending the injunction universally. As the Supreme Court explained in *CASA*, "to say that a court can award complete relief is not to say that it *should* do so. Complete relief is not a guarantee—it is the maximum a court can provide." *CASA*, 2025 WL 1773631, at *12. Thus, "'the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be.'" *Id.* (quoting Bray & Miller, *supra*, at 1797); *accord id.* at *16 (Thomas, J., concurring) ("In some cases, traditional equitable limits will require courts and plaintiffs to make do with less than complete relief.").

As these principles illustrate, even if an injunction tailored to the States left unaddressed some small, residual injury, or left the States to assume some marginal administrative burden, those relatively minor impacts on the States could not justify expanding the injunction here to cover everyone in the nation. Not only would that present all of the problems with universal relief that the Supreme Court identified in *CASA* for trifling gains to the plaintiff States, but it would ignore that other states object to the relief ordered here. *See generally* Tenn. Amicus Br., State of Tenn. Unopposed Mot. For Leave to File Amicus Br. In Supp. of Defs. ECF 97. And minor administrative burdens are a particularly weak basis for such sweeping relief, as "ordinary compliance costs are typically insufficient to constitute irreparable harm" in the first place. *Freedom Holds., Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005); *cf. CASA*, 2025 WL 1773631, at *17 (Thomas,

J., concurring) (explaining that associational plaintiffs' "burden of having 'to identify and disclose to the government' their membership" did not justify a universal injunction). Nor would it be inequitable to expect the States to take relatively minor steps to facilitate their own relief. *Cf. Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947) ("he who seeks equity must do equity").

## CONCLUSION

This Court should "expeditiously" clarify the Supreme Court's stay by holding that the States lack standing to assert the rights of third parties and that, in any event, the scope of the injunction is broader than necessary to provide relief and fails to comport with traditional principles of equity.

Dated: July 8, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

LEAH B. FOLEY
United States Attorney

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

*s/ Kathleen C. Jacobs*
R. CHARLIE MERRITT
YURI S. FUCHS
KATHLEEN C. JACOBS
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-598-7615
Fax: 202-616-8460
Email: Kathleen.C.Jacobs@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF.

Dated: July 8, 2025

/s/ *Kathleen C. Jacobs*
Kathleen C. Jacobs