UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>"Barbara," et al.</u>

v.

Civil No. 25-cv-244-JL-AJ
Opinion No. 2025 DNH 079P

<u>Donald J. Trump, President of the United
States, in his official capacity, et al.</u>

### <u>ORDER GRANTING PRELIMINARY INJUNCTION
AND
PROVISIONAL CLASS CERTIFICATION</u>

This order grants a preliminary injunction and provisionally certifies a class of

petitioners.

Pseudonymous petitioners "Barbara," "Sarah," by her guardian, parent, and next

friend "Susan," and "Matthew," by his guardian, parent, and next friend "Mark," bring

this class action suit asking this court to enjoin the enforcement of an executive order that

would exclude certain groups from United States citizenship status.[1]  They sue the

President, the Secretary and Department of Homeland Security, the Secretary and

Department of State, the Secretary and Department of Agriculture, and the Administrator

of and Centers for Medicare and Medicaid Services (the persons in their official

capacities).[2]  The petitioners allege that a recent executive order involving birthright

citizenship violates the Fourteenth Amendment of the United States Constitution, the

---

[1] *See* Compl. (doc. no. 1).
[2] *Id.* at ¶¶ 15-23.

1

Immigration and Nationality Act, and the Administrative Procedure Act. *See* U.S. Const. amend. XIV, § 1; Immigration and Nationality Act, 8 U.S.C. § 1401; Administrative Procedure Act, 5 U.S.C. § 706(B).  The court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 as this action arises under the Constitution and laws of the United States.

After reviewing the parties' submissions and holding requested oral argument, the court provisionally certifies a class of petitioners[3] and grants the preliminary injunction.

## I.    <u>Procedural background</u>

On January 20th, 2025, the President issued Executive Order No. 14160, titled "Protecting the Meaning and Value of American Citizenship."[4] It provides that the Fourteenth Amendment of the Constitution excludes from birthright citizenship "persons who were born in the United States but not 'subject to the jurisdiction thereof.'"[5] It orders that, beginning February 19th, 2025, "no department or agency of the United States government shall issue documents recognizing United States citizenship, or accept documents issued by State, local, or other governments or authorities purporting to recognize United States citizenship, to persons" in two circumstances:

> "(1) when that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States was lawful but temporary, and the

---

[3] As the court discusses *infra* § III.b., the court certifies a narrower class than that proposed by the petitioners.
[4] Protecting the Meaning and Value of American Citizenship Executive Order No. 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025).
[5] *Id.*

person's father was not a United States citizen or lawful permanent resident at the time of said person's birth."[6]

This court and three others preliminarily enjoined the respondents[7] from enforcing the Executive Order in four separate suits.[8] This court enjoined enforcement "with respect to the petitioners, and with respect to any individual or entity in any other matter or instance within the jurisdiction of this court," during the pendency of the litigation.[9] *New Hampshire Indonesian Cmty. Support*, 765 F. Supp. 3d 102, 112 (D.N.H. 2025). The three other courts issued universal preliminary injunctions, which the Supreme Court held were "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2025 WL 1773631, at *15 (U.S. June 27, 2025). The Supreme Court ordered lower courts to ensure that their injunctions comport with the ruling, stayed the injunctions "to the extent that they prohibit executive agencies from developing and issuing public guidance" regarding the Executive Order, and ordered that § 2 of the Executive Order would not take effect until 30 days after the date of the opinion, or July 27, 2025.[10] *Id.* The Court did not rule on the merits of the injunctions.

---

[6] *Id.*

[7] All of the four suits name the same respondents named in this litigation.

[8] See *New Hampshire Indonesian Cmty. Support v. Trump*, 765 F. Supp. 3d 102, 112 (D.N.H. 2025); *CASA, Inc. v. Trump*, 763 F. Supp. 3d 723, 746 (D. Md. 2025); *State v. Trump*, 765 F. Supp. 3d 1142, 1154 (W.D. Wash. 2025); *Doe v. Trump*, 766 F. Supp. 3d 266, 290 (D. Mass. 2025) (Sorokin, J.).

[9] Respondents' appeal is now pending before the First Circuit Court of Appeals.

[10] The respondents made no argument orally or in writing that this court's consideration of or issuance of orders on these motions violates the stay imposed in *CASA*.

Within hours of the ruling, the petitioners initiated this class action seeking declaratory and injunctive relief, moving immediately for "certification of a class of all current and future children who are or will be denied United States citizenship by [the] Executive Order…, and their parents" and requesting a one-week briefing schedule.[11] The petitioners seek provisional class certification to allow for a class-wide preliminary injunction prohibiting enforcement of the order during the pendency of the litigation.[12]

## II.  <u>Class representative petitioners</u>

The class representative petitioners—Barbara, Sarah, Susan, Matthew, and Mark—bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and a nationwide class of all other persons similarly situated.

Petitioner "Barbara" is a is a citizen of Honduras.[13]  She currently resides in New Hampshire with her husband and three minor children.[14] Her asylum application is pending with the United States Citizenship and Immigration Services, and she has resided in the United States since 2024.[15]  Her husband, the father of her children, is not a U.S.-citizen or lawful permanent resident.[16] They are expecting their fourth child in October

---

[11] Pet'rs'.' Mot. Class Cert. (doc. no. 5) at 1.  Respondents requested a longer timeline but, in apparent recognition of the realities implicated by the Supreme Court's 30-day stay, offered no objection to the court's limited extension to the petitioners' proposal.
[12] Compl. (doc. no. 1) at 16.
[13] Decl. Barbara (doc no. 5-9) at ¶ 2.
[14] *Id.* ¶¶ 2, 4.
[15] *Id.* ¶¶ 3, 5.
[16] *Id.* ¶ 9.

2025.[17]  Barbara plans to seek for her child Supplemental Nutrition Assistance Program (SNAP), Medicaid, and other benefits for which citizens are eligible.[18]

Petitioner "Sarah" is the daughter of petitioner "Susan," a citizen of Taiwan.[19] Susan and Sarah reside in Utah.[20]  Susan has lived in the U.S. for 12 years.[21] She is currently in the United States on a student visa and is in the process of applying for lawful permanent resident status based on an approved employment-based visa.[22]  Her husband, the father of her children, is not a U.S.-citizen or lawful permanent resident.[23] Susan gave birth to Sarah in Utah in April 2025,[24] and applied for a United States passport for the child.[25]  She has three other children, all of whom are U.S. citizens.[26]

Petitioner "Matthew" is the son of petitioner "Mark," a citizen of Brazil.[27] Mark resides in Florida.[28]  He has lived in the United States for the past five years,[29] and is in the process of applying for lawful permanent status.[30]  Matthew, Mark's first child, was

---

[17] *Id.* ¶ 7.

[18] Suppl. Decl. Barbara (doc. no. 57-1) at 2.  The respondents requested at oral argument that the court strike the petitioners' supplemental declarations.  The court declines to do so.  *See* L.R. 7.1(a)(1).

[19] Decl. Susan (doc. no. 5-10) at ¶ 2.

[20] *Id.*

[21] *Id.* ¶¶ 3, 5.

[22] *Id.* ¶¶ 5, 6.

[23] *Id.* ¶ 9.

[24] *Id.* ¶ 7.

[25] Suppl. Decl. of Susan (doc. no. 57-2) at 2.

[26] Decl. of Susan (doc. no. 5-10) ¶ 4.

[27] Decl. Mark (doc. no. 5-11) at ¶ 2.

[28] *Id.*

[29] *Id.* ¶ 3.

[30] *Id.* ¶ 6.

born in Florida in March 2025,[31] and has received a U.S. passport.[32]  Mark's wife does

not have lawful status in the United States.[33]

> The class representative petitioners seek to represent the following proposed class:
> "All current and future persons who are born on or after February 20, 2025,
> where (1) that person's mother was unlawfully present in the United States
> and the person's father was not a United States citizen or lawful permanent
> resident at the time of said person's birth, or (2) that person's mother's
> presence in the United States was lawful but temporary, and the person's
> father was not a United States citizen or lawful permanent resident at the
> time of said person's birth, as well as the parents (including expectant
> parents) of those persons."[34]

The petitioners request that the court provisionally certify the class and immediately issue

a class-wide preliminary injunction.[35]  The respondents object to both class certification

and the preliminary injunction.

## III.  <u>Class certification</u>

The court grants provisional class certification, but to a narrower class than that

proposed by petitioners.  The certified class includes only those persons to whom the

Executive Order denies citizenship.  It does not include their parents.

### a.  Applicable standard

The petitioners have moved for certification under Fed. R. Civ. P. 23(b)(2).  Rule

23(b) certification is permissible only if: "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3)

---

[31] *Id.* ¶ 7.
[32] Suppl. Decl.Mark (doc. no. 57-3) at 2.
[33] Decl. Mark (doc. no. 5-11) at ¶ 9.
[34] Pet'rs' Mem. Mot. Class Cert. (doc. no. 5-1) at 3.
[35] Pet'rs' Mot. Prelim. Inj. (doc. no. 6) at 4.

the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011).  The petitioners seek to certify a class under Fed. R. Civ. P. 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Both the burden and quantum of required proof under this standard are familiar. The burden here rests with the petitioners.  The required quantum of evidence is proof by a preponderance.  "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." Wal-Mart, 564 U.S. at 350.  "It is sufficient if each disputed requirement has been proven by a preponderance of evidence." In re Nexium Antitrust Litig., 777 F.3d 9, 27 (1st Cir. 2015) (cleaned up).  "'Provisional' certification does not lower the bar with respect to the Rule 23(a) and (b) standards; the court must conduct a rigorous inquiry and satisfy itself that the putative class meets those requirements." Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec., No. 20-CV-453-LM, 2020 WL 2113642, at *2 (D.N.H. May 4, 2020) (McCafferty, C.J.).

"Courts routinely grant provisional class certification for purposes of entering injunctive relief." Idaho Org. of Res. Councils v. Labrador, No. 1:25-CV-00178-AKB, 2025 WL 1237305, at *15 (D. Idaho Apr. 29, 2025) (citing Meyer v. Portfolio Recovery

*Assocs., LLC*, 707 F.3d 1036, 1041-43 (9th Cir. 2012); *Padres Unidos de Tulsa v. Drummond*, No. CIV-24-511-J, 2025 WL 1444433, at *12 (W.D. Okla. May 20, 2025) (collecting cases); *see also CASA*, No. 24A884, 2025 WL 1773631, at *19 ("[P]laintiffs who challenge the legality of a new federal statute or executive action and request preliminary injunctive relief may sometimes seek to proceed by class action under [Rule] 23(b)(2) and ask a court to award preliminary classwide relief that may, for example, be statewide, regionwide, or even nationwide.") (Kavanaugh, J. concurring).  The court does so here, and may later modify or amend the order granting class certification.  Fed. R. Civ. P. 23(c)(1)(C).

### b. Class definition

The court grants provisional class certification but declines to adopt the class definition proposed by petitioners.  As petitioners point out,[36] federal courts have discretion to modify a class definition.  *See, e.g. Campbell v. First Am. Title Ins. Co.,* 269 F.R.D. 68, 74 (D. Me. 2010) (Singal, J.) (citing *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 250-51 (W.D. Pa. 2008)) (revising class definition); *Wagner v. Taylor*, 836 F.2d 578, 589–90 (D.C. Cir. 1987) (noting a court's "broad discretion to redefine and reshape the proposed class to the point that it qualifies for certification under Rule 23"); 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1759 (4th ed. 2025) ("[I]f plaintiff's definition of the class is found to be unacceptable, the court may ... redefine the class to bring it within the scope of Rule 23 ...."); *Refugee &*

---

[36] Pet'rs' Reply (doc. no. 57) at 9 n.8.

*Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. CV 25-306 (RDM), 2025 WL 1825431, at *46 (D.D.C. July 2, 2025) (Moss, J.) (noting the court's authority to alter a class definition).  Petitioners have not demonstrated by a preponderance of the evidence that the class should include "the parents (including expectant parents)" of the children denied birthright citizenship by the Executive Order.  Doubtless the parents of such children would suffer harms following from the denial of United States citizenship to their children, including, but likely not limited to, those detailed in the complaint.[37]  But the harms to the parents of children denied citizenship are (a) not the subject of the specific claims in the complaint, which refer to the Executive Order's denial of citizenship to children,[38] and (b) would not necessarily meet Rule 23(a)'s requirements for commonality and typicality, as the enumerated harms are factually and legally diverse.  Certifying a class of children without their parents eliminates those potential commonality and typicality issues while still allowing complete relief for the claims as stated in the complaint.  This approach is particularly suitable where, as here, the petitioners have requested both preliminary injunctive relief, full briefing, oral argument, and a ruling in an approximately one-week timeframe.[39]

    Narrowing the class also sharpens the court's focus on the specific injury for which relief is claimed in Counts 1, 2, 3, and 4: the denial of the children's constitutional

---

[37] *See* Compl. (doc. no. 1) at 11-14.

[38] *Id*. at 14-15.

[39] Pet'rs' Mot. Class Cert. (doc. no. 5) at 1 (filing on June 27, 2025, ruling requested by July 7, 2025).

right to United States citizenship.[40]  This is a cognizable injury applicable to all members of the certified class: if a child is denied citizenship because of the Executive Order, he or she will suffer the same injury as all other children subject to it.  Although other harms may follow from the denial of citizenship, they are not the subject of the claims or requested relief.

The court therefore provisionally certifies and focuses its analysis on the following, narrower, class:

> "All current and future persons who are born on or after February 20, 2025, where (1) that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) that person's mother's presence in the United States was lawful but temporary, and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth."[41]

### c. Numerosity

To satisfy this first requirement of class certification, Rule 23 requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a). "[T]he party seeking certification need not establish a precise number of putative class members."  *Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, 561 F. Supp. 3d 93, 99 (D.N.H. 2021) (McCafferty, C.J.). "[G]enerally[,] if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."

---

[40] *See id.*

[41] The court informed the parties at oral argument that it would narrow the class to exclude parents.  Both parties agreed that the court had authority to *sua sponte* narrow the class.

*Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

The petitioners argue that the number of children denied American citizenship satisfies the numerosity requirement, and the respondents do not dispute this assertion. The court agrees with the petitioners. The petitioners cite credible evidence estimating that the Executive Order would deny citizenship to thousands of children. *See Repealing Birthright Citizenship Would Significantly Increase the Size of the U.S. Unauthorized Population*, Migration Policy Inst. (May 2025), https://www.migrationpolicy.org/news/birthright-citizenship-repeal-projections.

Respondents object to the inclusion of "future persons" in the class, arguing that "'future persons'—*i.e.*, persons who have not yet been conceived—lack either standing or capacity to sue."[42] As petitioners note, the fact that a policy will continue to harm future class members is relevant to numerosity.[43]

Including future class members is no bar to class certification. Although the future class member children in this case have yet to be born, as soon as they are born, they will join the class and their claims will be ripe. *See A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 838 (9th Cir. 2022) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010) (abrogation on other grounds recognized by *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)) ("The

---

[42] Resp'ts' Mem. Obj. (doc. no 56-1) at 20.
[43] Pet'rs' Reply (doc. no. 57) at 9 (citing *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass.), *enforcement granted*, 64 F. Supp. 3d 271 (D. Mass. 2014)).

inclusion of future class members in a class is not itself unusual or objectionable," because "[w]hen the future persons referenced become members of the class, their claims will necessarily be ripe."); *Refugee & Immigrant Ctr. for Educ. & Legal Servs*, No. CV 25-306 (RDM), 2025 WL 1825431, at *46 (certifying a class "consisting of all individuals who are or will be subject to the Proclamation and/or its implementation and who are now or will be present in the United States").  In other cases involving children, the fact that some of the potential future class members had not yet been born was not a bar to certification.  *See, e.g., M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 271 (5th Cir. 2018) (upholding class certification that included "all children now, or in the future" in the state's conservatorship program); *Hawaii State Dep't of Educ.*, 30 F.4th at 838 (Rule 23(a) requirements met where class included "all present and future [] female students" who participated or sought to participate in athletics).

Finally, more children will continuously populate the class as they are born, and, where "an influx of future members will continue to populate the class ... at indeterminate points in the future, joinder becomes not merely impracticable but effectively impossible." *Gomes*, 561 F. Supp. 3d at 99 (citations and quotation marks omitted); *see also Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass.), enforcement granted, 64 F. Supp. 3d 271 (D. Mass. 2014) (Ponsor, J.) (citing William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3.15 (5th ed. 2013) ("Unforeseen members will join the class at indeterminate points in the future, making joinder *impossible.*") (emphasis in original).

12

The petitioners satisfy the numerosity requirement.

### d. Commonality

To certify a class, the court must also find "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  One common question suffices.  *Wal-Mart*, 564 U.S. at 359.  The proposed class must have a "common contention" that "is capable of classwide resolution."  *Id.* at 350.  In other words, the "determination of [the contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a permissive application."  *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008) (citations and quotation marks omitted). "[T]he focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is on whether the defendant's conduct was common as to all of the class members."  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (citations and quotation marks omitted).  "[C]ommon answers typically come in the form of a particular and sufficiently well-defined set of allegedly illegal policies or practices that work similar harm on the class plaintiffs."  *Parent/Prof'l. Advocacy League v. City of Springfield*, 934 F.3d 13, 28 (1st Cir. 2019) (citation modified).

The petitioners argue that the putative class members share legal questions about the constitutionality and lawfulness of the Executive Order.  Each class member, they contend, will suffer the common injury of denial of citizenship and would receive the same relief: an injunction declaring the Executive Order unlawful and unenforceable.

The court agrees.  Petitioners raise several common questions of law, including whether the Executive Order violates the Constitution and § 1401 and whether the respondents have violated the Administrative Procedure Act.  Additionally, the petitioners argue that the proposed class members share a common factual connection—the denial of citizenship and its associated benefits.  Finally, petitioners contend that if the court decides in their favor on the merits, they will receive the same relief (an injunction) for the same injury (denial of citizenship).  *See, e.g.*, *Id.* at 29 (regarding commonality in class action relating to special education, "plaintiffs can satisfy Rule 23(a)'s commonality requirement by identifying a uniformly applied, official policy of the school district, or an unofficial yet well-defined practice, that drives the alleged violation"); *Van Meter v. Harvey*, 272 F.R.D. 274, 282 (D. Me. 2011) (Woodcock, J.) (finding commonality in class of Maine residents eligible or enrolled in health care program where "questions of [state department of health's] course of conduct are common to all class members, namely its alleged failure to evaluate and provide services to the proposed class members according to federal standards[, because] those factual questions implicate a common set of federal statutes.").  Petitioners have shown that a class action in this instance will "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original) (citation omitted).

The respondents argue that divergent factual issues related to parents' domiciles at the time of the children's birth undermine the class's commonality.  Reasserting their argument from *New Hampshire Indonesian Cmty. Support* that the phrase "subject to the jurisdiction" of the United States refers, in the Fourteenth Amendment and § 1401, to a

14

person's domicile at the time of his or her birth, the respondents contend that a person's domicile may determine whether that person is entitled to citizenship under the Executive Order, leading to potentially different outcomes among members of the putative class depending on their domicile.[44]  The argument fails here.  This court, like others, rejected the argument that the phrase "subject to the jurisdiction thereof" involves domicile.  *See United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898); *New Hampshire Indonesian Cmty. Support*, 765 F. Supp. 3d at 110; *see also CASA, Inc. v. Trump*, 763 F. Supp. 3d 723, 739 (D. Md. 2025) (holding the same); *State v. Trump*, 765 F. Supp. 3d 1142, 1150 (W.D. Wash. 2025) (same); *Doe v. Trump*, 766 F. Supp. 3d 266, 272 (D. Mass. 2025) (Sorokin, J.) (same).  So domicile has no bearing on the common facts or law relevant to resolution of the suit.[45]  *See Parent/Prof'l. Advoc. League*, 934 F.3d at 28.  The petitioners in the court's narrow class satisfy the commonality requirement.

---

[44] The court notes that the concept of "domicile" does not meaningfully align with the classes of people singled out by the Executive Order.  For instance, all the petitioners could likely show domicile in the United States: they all allege that they live—some for more than 20 years—and intend to stay in the United States.  But all of them have or will have children that would be affected by the Executive Order.  Thus, the concept of domicile is underinclusive of the groups of people delineated in the Executive Order.

[45] Because domicile and immigration status (outside of the exceptions enumerated in *Wong Kim Ark*, which are not at issue here) have no bearing on the common facts or law relevant to resolution of the suit, discovery on "the class representatives' immigration statuses, how long they have been present in the United States, and facts related to their demonstrated intention to stay and make the United States their lawful home" is not necessary.  *See* Resp'ts' Mem. Obj. at 17.  Similarly, because the claims and relief requested are limited specifically to the denial of United States citizenship, discovery about "the ways in which [petitioners] intend to utilize the benefits of American citizenship" is not warranted.  *Id.*

e.  **Typicality**

Next, petitioners must show "typicality," or that their claims or defenses are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To be typical, the representative petitioners' claims must "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." *Garcia-Rubiera*, 570 F.3d at 460 (citation modified); *see also Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162 (D. Mass. 2019) (Saris, J.) ("Typicality requires that the class representative's 'injuries arise from the same events or course of conduct as do the injuries of the class,' but his claims need not be 'identical to those of absent class members.'") (citation omitted).

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 349 n. 5. Typicality is established when the claims of the named plaintiffs and the class "involve the same conduct by the defendant . . . regardless of factual differences." *Hawkins ex rel. Hawkins v. Comm'r of N.H. Dep't of Health & Human Servs.*, No. CIV. 99-143-JD, 2004 WL 166722, at *3 (D.N.H. Jan. 23, 2004) (DiClerico, J.) (quoting *Johnson v. HBO Film Mgt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)). "For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 69 (D. Mass. 2005) (Young, J.) (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984)). "Even though there may be some differences between [the class representative] and the putative class members, what

16

matters is that they are bound together by a common legal theory." *Ouadani*, 405 F.
Supp. 3d at 163 (finding typicality where company applied its independent contractor
policy to named plaintiff and other members of the putative class in the same way); *see
also Gomes*, No. 20-CV-453-LM, 2020 WL 2113642 (D.N.H. May 4, 2020) (McCafferty,
C.J.) (finding typicality where petitioners' claims "[arose] from the same course of
conduct: respondents' facility-wide actions or inactions," and were all "based on the legal
theory that respondents have violated their Fifth Amendment Due Process rights.").

Petitioners claim that the named representatives' claims are "obviously typical" of
the claims of the proposed class,[46] while the respondents argue that, as with commonality,
individualized determinations about the class members' domiciles undermine the claims'
typicality.

The court agrees with the petitioners with respect to the claims of the class as
limited by the court. As in *Ouadani*, and *Gomes*, the putative class members' injuries
would be the same—namely, denial of citizenship—and would "involve the same
conduct by the defendant[s],"—namely, enforcement of the Executive Order. *See
Hawkins ex rel. Hawkins*, 2004 WL 166722, at *3. This is true even if some factual
differences may exist between the class members (for instance, their parents' domicile or
length of residence in the United States) because the respondents' conduct and the
petitioners' injuries would be the same in all cases. *Id.* As with commonality, because
domicile and "legal presence,"[47] outside of the exceptions enumerated in *Wong Kim Ark,*

---

[46] Pet'rs' Mem. Mot. Class Cert. (doc. no. 5-1) at 9.
[47] Resp'ts' Mem. Obj., (doc. no. 56-1) at 16.

17

169 U.S. at 693, have no bearing on whether a child should receive United States

citizenship under the Fourteenth Amendment or § 1401,[48] factual differences in the

parents' domiciles or legal presence do not bear on the typicality of the children's claims.

The typicality requirement is met here.

### f.  Adequacy of representation

Finally, Rule 23(a)(4) requires that the "representative parties will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This subsection

has two requirements: (1) "that the interests of the representative party will not conflict

with the interests of any of the class members"; and (2) that chosen counsel "is qualified,

experienced and able to vigorously conduct the proposed litigation." *Clough v. Revenue*

*Frontier, LLC*, No. 17-CV-411-PB, 2019 WL 2527300 at *4 (D.N.H. June 19, 2019)

(Barbadoro, J.) (cleaned up).

The court has not identified any conflicting or potentially conflicting interests

between representatives of the proposed class and those of the unnamed class members.

Respondents make two arguments against the adequacy of the proposed class: first, that

differences in the parents' domiciles may lead petitioners to focus only on arguments that

cover their factual and legal situation; and second, that the petitioners' decision to

proceed pseudonymously undermines the ability of putative class members to assess the

class representatives' adequacy or potentially conflicting interests.[49]

---

[48] *See supra* § III.d.; *see also New Hampshire Indonesian Cmty. Support,* 765 F. Supp. 3d at 110.

[49] Respondents make a third argument related to potential claims against certain respondents,
including the Department of Agriculture and the Centers for Medicare and Medicaid Services.
Resp'ts' Mem. Obj. (doc. no. 56-1) at 18.  In response, petitioners provided supplemental

As to the first argument, the court has rejected the contention that the domiciles of class-member children's parents matter for the purposes of the claims raised in the case.[50] The respondents do not raise any other potential conflicts that could exist between members of the putative class and the class representatives.

As to the second argument, courts have recognized that litigation can proceed pseudonymously in "exceptional cases." *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 70 (1st Cir. 2022) (quotation marks omitted). In this case, the court found that the "totality of the circumstances" favored allowing the petitioners to proceed pseudonymously for the reasons stated in their motion.[51] *See id.* And although in Rule 23(b)(3) cases, where class members may opt out, "[p]utative class members have an interest in knowing the identities of all class representatives so that they may assess

---

declarations about their intent to apply for benefits administered by those respondents, like passports, Medicaid or SNAP benefits. *See* Suppl. Decl. Barbara (doc. no 57-1); Suppl. Decl. Susan (doc. no. 57-2); Suppl. Decl. Mark (doc. no. 57-3). The court views these arguments as better suited to a motion to dismiss, rather than a discussion of the adequacy of representation in a class action. The court notes that petitioners have not made any specific requests for relief regarding SNAP benefits, passports, or otherwise. Although these forms of relief may follow from the relief requested, they are not specifically at issue here. *See* Compl. (doc. no 1) at 14-16.
[50] *See supra* § III.d.
[51] Pet'rs' Mot. Proceed Pseudonymously (doc. no. 7) (granted, without objection, on June 30, 2025). At the conference on June 30, 2025, the respondents agreed to the petitioners' motion, while "reserv[ing] their right to obtain the identities of the Plaintiffs or to raise objections at a later time" with respect to class certification. Resp'ts' Mem. Obj. (doc. no. 56-1) at 18 n.3. In their objection to class certification they ambiguously state that they "do so now." *Id.* To the extent the respondents' statement makes a request to disclose the identities of the petitioner, it violates L.R. 7.1(a)(1), with which their local counsel is presumably familiar, which prohibits combining multiple motions seeking separate and distinct relief into a single filing. To the extent the respondents are merely objecting to the decision to allow the class representatives to proceed pseudonymously, the court would be willing to order disclosure of the class representatives to putative class members under a protective order, should the respondents make such a motion and the court finds that such disclosure is warranted.

whether the representatives adequately represent them and whether they wish to participate in the action," *see Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 649 (D.N.H. 2020) (McCafferty, C.J.), this is a (b)(2) class.  Here the putative class members have no way to opt in or out of the class, and thus less need for information about class representatives.  No party has identified a way in which the class representatives *could* have conflicts with other class members, other than on factual differences in domicile.  The petitioners have alleged facts sufficient to show that they are members of the class they seek to represent.[52]  As one court observed, "in putative class actions raising constitutional challenges, the public interest is not being able to identify any one Plaintiff, but in being able to follow the case to determine how the constitutional issues are resolved."  *Doe v. City of Apple Valley*, No. 20-CV-499 (PJS/DTS), 2020 WL 1061442, at *3 (D. Minn. Mar. 5, 2020) (cleaned up).

Turning to the second factor of the adequacy inquiry, the court is convinced that proposed class counsel, lawyers from the ACLU Immigrants' Rights Project, the ACLUs of New Hampshire, Maine, and Massachusetts, the Asian Law Caucus, the NAACP Legal Defense and Educational Fund, and the Democracy Defenders Fund have sufficient experience and qualifications to serve as class counsel.  The petitioners satisfy the adequacy requirement.

---

[52] *See* Decl. Barbara (doc. no. 5-9); Decl. Susan (doc. no. 5-10); Decl. Mark (doc. no. 5-11).

**g.  23(b)(2) certification**

In addition to meeting the requirements of Rule 23(a), class actions must fall into one of the three categories established under Rule 23(b).  Petitioners seek certification under Rule 23(b)(2), which allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[53] "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360 (emphasis in original).

Petitioners argue that the class meets Rule 23(b)(2)'s requirement because the respondents have engaged in unlawful behavior towards the entire class and they seek a single injunction and declaratory injunction that would provide classwide relief.[54] Respondents, quoting *Wal-Mart*, 564 U.S. at 360 ("[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the

---

[53] "Rule 23(b)(2) authorizes certification of a class solely for the purpose of *final* injunctive or declaratory relief. Hence, a case seeking only a provisional remedy like a preliminary injunction cannot be certified under Rule 23(b)(2) on that basis alone. This is rarely a problem for proponents of class certification, however, as a class seeking preliminary injunctive relief will typically seek to have that relief embodied in a final injunction as well. Moreover, although (b)(2) certification requires a request for final injunctive relief, a court may issue a classwide preliminary injunction in a putative class action suit prior to a ruling on the class certification motion or in conjunction with it." 2 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 4:30 (6th ed., June 2025 Update).

[54] Pet'rs' Mem. Mot. Class Cert. (doc. no. 5-1) at 11.

conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them"), argue that the petitioners do not meet the requirements for a (b)(2) class because the relief is not truly *indivisible* in the way that, for instance, prohibiting a person from playing loud music provides indivisible relief to all of his neighbors: a court *could not* order different relief to different neighbors at the same time.[55] This is particularly true, the respondents argue, if a court were to find that domicile is relevant to the application of the Executive Order or the merits of the claims, because a court could decide to provide relief to some class members and not others based on domicile.[56]

But the discussion in *Wal-Mart* itself contradicts the respondents' argument. Quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997), the Supreme Court noted that "'[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture," and explained that "the Rule reflects a series of decisions involving challenges to racial segregation— conduct that was remedied by a single classwide order." *Wal-Mart*, 564 U.S. at 361. The

---

[55] Resp'ts' Mem. Obj. (doc. no. 56-1) at 16. At oral argument, the respondents also argued for the first time, and without providing authority, that because the executive branch has yet to fully develop its guidance on implementing the Executive Order, the behavior petitioners seek to enjoin is not sufficiently uniform with respect to the putative class. That argument was not raised with respect to (b)(2) certification in the briefs and thus has been waived. *See Garcia–Ayala v. Parenterals, Inc.*, 212 F.3d 638, 645 (1st Cir. 2000) (failure to brief an argument constitutes waiver despite attempt to raise the argument at oral argument); *United States v. Leoner-Aguirre*, 939 F.3d 310, 319 (1st Cir. 2019), *cert. denied*, No. 19-6820, 2020 WL 129919 (U.S. Jan. 13, 2020) (deeming such new arguments waived); *Frese v. MacDonald*, No. 18-CV-1180-JL, 2020 WL 13003802, at *5 (D.N.H. Feb. 14, 2020) (Not "sufficient to raise an argument for the first time at oral argument.").
[56] *Id.*

Court goes on to explain that "the relief sought must perforce affect the entire class at once." *Id.* at 362. That is the case where, as here, the petitioners seek "a single injunction or declaratory judgment [that] would provide relief to each member of the class." *Id.* at 360. The petitioners request the same, un-individualized remedy: a declaratory judgment that the Executive Order "is unconstitutional and unlawful in its entirety," and a single injunction prohibiting its enforcement.[57] This requested relief aligns with the mandatory nature of the (b)(2) class because it does not require, or allow, class members to opt in or out of enforcement.

Because enforcement of the Executive Order would likely constitute unlawful behavior towards the entire class as limited by the court, *see infra* § IV(b), and because a single injunction and declaratory judgment would provide complete relief to every member of the class, the class fits comfortably into the Rule 23(b)(2) category. *See Reid,* 297 F.R.D. at 193 (finding a class fit "firmly in the (b)(2) category" where "Defendants have acted, or refused to act, on grounds generally applicable to all members of the class," "members of the class have all been treated identically," and "seek[] a single injunction or a single declaratory judgment").

### h. Catchall arguments on class certification

The respondents make several catchall arguments against class certification at this early stage in the litigation.[58] The court rejects these generalized contentions in favor of the petitioners' suggested course of action.

---

[57] Compl. (doc. no. 1) at 16.
[58] Resp'ts' Mem. Obj. (doc. no. 56-1) at Parts I, III.

**Provisional class certification.**  First, the respondents object to the "appropriateness" of seeking provisional class certification and injunctive relief.[59] Respondents argue that courts should only grant provisional certification to classes whose members require "a form of preliminary and emergency relief," under exigent circumstances.  The circumstances in this case, they contend, differ.  Petitioners emphasize that courts routinely grant certification alongside a preliminary junction in many kinds of cases, not just litigation related to imminent deportation or COVID-19.

The court finds petitioners' arguments more persuasive, both with respect to the court's ability to certify classes provisionally for the purpose of injunctive relief, and the petitioners' cited authority for the court's exercise of this ability.  *See*, *e.g.*, *Gomes*, 2020 WL 2113642, at *4; *Meyer*, 707 F.3d at 1041-43.[60]  Moreover, the court may continue to revise the class certification order until final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C).

Further, this court has no hesitation determining this situation warrants emergency injunctive relief and class certification.  The respondents' proposed course of action would reverse a nationally known and recognized government policy in place for over a century and affect thousands of families.  Injunctive relief here would only maintain the status quo during the litigation and, at most, delay the policy's implementation.  While the respondents attempt to claim that all the petitioners' cited cases provide more exigent circumstances than described here, this court disagrees.  As the petitioners claimed in

---

[59] *See id.* at 7.

[60] The Supreme Court has also indicated that courts can issue temporary injunctive relief to a putative class.  *See A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025).

*New Hampshire Indonesian Cmty. Support*, the denial of citizenship status at birth can have immediate, irreversible effects.

The respondents also argue that provisional certification does not lower the bar for class certification.  The court agrees.  But the petitioners have provided sufficient factual and legal support for class certification.

**Premature certification.**  Second, the respondents argue that certifying the class would be premature because other lower courts have not yet narrowed the scope of their nationwide injunctions, as ordered by the Supreme Court in *CASA*.  They argue that this court should withhold any potential injunction until the review of the other injunctions occurs.  Otherwise, the respondents contend, the petitioners cannot show whether the existing injunctions already provide relief to the putative class and representatives.  Petitioners contend that the putative class has no assurances that the existing injunctions will protect them once the lower courts have narrowed the nationwide injunctions.

The court agrees with petitioners with regard to certification, but, for reasons stated *infra* Part VI, stays the injunction.

> "[I]n the wake of a major new federal statute or executive action, different district courts may enter a slew of preliminary rulings on the legality of that statute or executive action.  Or alternatively, perhaps a district court (or courts) will grant or deny the functional equivalent of a universal injunction—for example, by granting or denying a preliminary injunction to a putative nationwide class under Rule 23(b)(2)…[T]he courts of appeals in turn will undoubtedly be called upon to promptly grant or deny temporary stays or temporary injunctions in many cases…. [I]n cases where classwide or set-aside relief has been awarded, the losing side in the lower courts will likewise regularly come to this Court if the matter is sufficiently important.  When a stay or injunction application arrives [to the Supreme Court], this Court should not and cannot hide in the tall grass. When we receive such an application, we must grant or deny. And when we do—that

is, when this Court makes a decision on the interim legal status of a major
new federal statute or executive action—that decision will often constitute a
form of precedent (*de jure* or *de facto*) that provides guidance throughout
the United States during the years-long interim period until a final decision
on the merits."

*CASA*, 2025 WL 1773631 at *21–22 (Kavanaugh, J., concurring).  Respondents'

arguments do not persuade.

**Nationwide class.**  Similarly, the respondents also contend that a nationwide class

is not "appropriate," citing warnings in *CASA* against nationwide classes as an "end-run

around" universal injunctions.[61]  Respondents cite the importance of letting issues

"percolate" within other circuits and district courts and claim that nationwide relief here

would disrupt other litigation across the United States.[62]  They argue that providing a

nationwide injunction would "create conflicts with the decisions of putative class

members to bring their suits elsewhere and the ability of those courts to address them"

and that, at most, this court can certify a class in the District of New Hampshire.[63]

Meanwhile, petitioners argue that the grant of certification does not affect other litigation,

and therefore, courts can "percolate" the merits after the injunction.  They contend that

the respondents' conduct warrants a nationwide class, and limiting the order

geographically would be arbitrary.

Again, petitioners' argument prevails.  At no point in the briefs do the petitioners

request a "nationwide class."  Petitioners request class certification for a harm that most

---

[61] Resp'ts' Mem. Obj. (doc. no. 56-1) at 21.
[62] *Id.* at 22.
[63] *Id.*

likely affects class members residing in other states.  So long as this court adheres to the

requirements of Rule 23, this court does not hesitate to certify a class that may include

members in all fifty states.  *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)

("Nothing in Rule 23…limits the geographical scope of a class action that is brought in

conformity with that Rule."); *Trump v. CASA, Inc*., No. 24A884, 2025 WL 1773631, at

\*18 (U.S. June 27, 2025) (Alito, J., concurring) ("Putting the kibosh on universal

injunctions does nothing to disrupt Rule 23's requirements…Rule 23 may permit the

certification of nationwide classes in some discrete scenarios. But district courts should

not view today's decision as an invitation to certify nationwide classes without

scrupulous adherence to the rigors of Rule 23."*); see also id.* at \*19 (Kavanaugh, J.,

concurring) ("in the wake of the Court's decision, plaintiffs who challenge the legality of

a new federal statute or executive action and request preliminary injunctive relief may

sometimes seek to proceed by class action under [Rule] 23(b)(2) and ask a court to award

preliminary classwide relief that may [be]…nationwide.").

　　　This court has rigorously applied Rule 23, carefully considering all of the

respondents' arguments.  Respondents have made a generalized objection to the

appropriateness of nationwide class actions, which are ubiquitous in federal court.

Further, the respondents have failed to identify any conflicts between putative class

members and current class members.  *See* Newberg and Rubenstein on Class Actions S

10:33 (6th ed.) ("[N]either the filing of a class action nor even the grant of a class

certification motion has any formal effect on litigation elsewhere…the only sure method

of coordination is a final judgment in a class suit: such a judgment, and only such a

judgment, precludes all other lawsuits."); *Yamasaki*, 442 U.S. at 703 ("It often will be preferable to allow several courts to pass on a given class claim in order to gain the benefit of adjudication by different courts in different factual contexts. For this reason, a federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts.").

**Discovery.**  Respondents argue that the court should order more discovery before granting class certification.  The argument fails.  As discussed *supra* note 46, respondents fail to identify any discovery that would have a meaningful impact on any issue surrounding certification.  Petitioners correctly point out that the respondents' arguments regarding domicile are most likely irrelevant for class certification; that the court may permit discovery after it protects the status quo with a preliminary injunction; and that the court may reconsider class certification up until final judgment.  Finally, "discovery may be unnecessary because the 'claims for relief rest on readily available and undisputed facts or raise only issues of law (such as a challenge to the legality of a statute or regulation.'"  Newberg and Rubenstein, *supra,* § 7:15 (citations omitted).

The court provisionally certifies the narrowed, children-only class for the purpose of granting injunctive relief.

## IV. <u>Preliminary injunction</u>

The petitioners have requested a preliminary injunction precluding the respondents from enforcing President Trump's Executive Order against the class during the pendency

of this litigation.  Because the petitioners have established entitlement to a preliminary injunction, the court grants the requested relief to the modified class.  Petitioners and respondents stipulated to incorporate by reference their prior briefing before this court in *New Hampshire Indonesian Cmty. Support*.[64]

### a. Applicable legal standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Again, the requisite burden and quantum of proof are familiar.  "The plaintiff has the burden at the preliminary injunction stage to establish entitlement to relief by a fair preponderance of the evidence." *Devaney v. Kilmartin*, No. CA 13-510L, 2014 WL 877764, at *5 (D.R.I. Mar. 5, 2014) (Lagueux, J.).  *But see Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023) (quotation marks omitted) ("[A]lthough the party seeking the injunction need not demonstrate likelihood of success by a preponderance of the evidence, that party must nevertheless make a strong showing that reveals how it proposes to prove its case. Similarly, a mere possibility of irreparable harm will not suffice.").

---

[64] *See New Hampshire Indonesian Cmty. Support*, 1:25-cv-00038-JL-TSM, Pls. Mot. for Prelim. Inj. (doc. no. 24); Defs. Obj. (doc. no. 58); Pls. Reply (doc. no. 64).

**b. Likelihood of success on the merits**

"The movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020).  The petitioners argue that they have a strong likelihood of success on the merits of their constitutional and statutory challenges to the Executive Order based on Supreme Court precedent interpreting the Fourteenth Amendment in *Wong Kim Ark* and the ordinary meaning of § 1401 at the time of its enactment.  The respondents contend that the Executive Order is constitutional because the language "subject to the jurisdiction thereof" in the Fourteenth Amendment interpretively turns on an individual's domicile, rather than place of birth.  Therefore, they contend, those affected by the Executive Order are not entitled to birthright citizenship because "citizenship flows from lawful domicile," and children whose parents are not lawful permanent residents fall outside the Citizenship Clause.[65]

Petitioners will likely succeed in claiming that the Executive Order violates the Fourteenth Amendment[66] and § 1401.[67]  This court finds, as it did in *New Hampshire Indonesian Cmty. Support*, that the Executive Order likely "contradicts the text of the Fourteenth Amendment and the century-old untouched precedent that interprets it." 765 F. Supp. 3d at 109.  Further, the "Executive Order also likely violates § 1401, which

---

[65] Defs. Obj., 1:25-cv-00038-JL-TSM, (doc. no. 58) at 11.
[66] "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."  Const. XIV. § 1.
[67] "The following shall be nationals and citizens of the United States at birth…a person born in the United States, and subject to the jurisdiction thereof."  8 U.S.C. § 1401.

codified the pertinent language from the Fourteenth Amendment." *Id.* at 110. The three

other district courts assessing the constitutionality of the Executive Order also found that

the plaintiffs would likely succeed. *See Doe v. Trump*, 766 F. Supp. 3d at 285 (finding

that plaintiffs are "exceedingly likely to prevail on the merits of their constitutional and

statutory claims"); *State v. Trump*, 765 F. Supp. 3d at 1152 (finding likelihood of success

on the merits because government's arguments do not have "text or precedent to support

its interpretation of the Citizenship Clause [and] rehash[] losing arguments from over a

century ago"); *CASA, Inc. v. Trump*, 763 F. Supp. 3d at 743 (finding a strong likelihood of

success on the merits because "[t]he Executive Order flouts the plain language of the

Fourteenth Amendment to the United States Constitution, conflicts with binding Supreme

Court precedent, and runs counter to our nation's 250-year history of citizenship by

birth.").

     The respondents do not identify additional arguments in favor of their

interpretation of the Citizenship Clause. This court, along with the other courts to

address the merits of this issue, agrees with the petitioners. The Executive Order likely

violates the Fourteenth Amendment of the Constitution and 8 U.S.C. § 1401.

### c. **Irreparable harm**

     "Irreparable injury in the preliminary injunction context means an injury that

cannot adequately be compensated for either by a later-issued permanent injunction, after

a full adjudication on the merits, or by a later-issued damages remedy." *Rio Grande*

*Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005) (quotation marks

omitted). The petitioners argue that the denial of citizenship to newborns would cause

irreparable harm stemming from the denial of citizenship and its associated benefits to the newborns in the class. The respondents reiterate their arguments from *New Hampshire Indonesian Cmty. Support* that the petitioners can only speculate about the hypothetical future harms (for instance, Barbara's child is not expected until October, and she does not know that her child will be an immigration enforcement target). Further, they contend that the petitioners have not demonstrated standing to sue particular respondents, such as the Department of State, Department of Agriculture, or Centers for Medicare and Medicaid;[68] and that the court has no jurisdiction to enjoin the President. Finally, respondents state that the Supreme Court in *CASA* mandated a 30-day window during which DHS must develop and issue public guidance about the Executive Order's implementation, so irreparable harm will not occur.

The court agrees with the petitioners. The putative class would suffer irreparable harm without a preliminary injunction enjoining the Executive Order. As the court stated in *New Hampshire Indonesian Cmty. Support*, "the denial of citizenship status to newborns, even temporarily, constitutes irreparable harm. The denial of citizenship to the plaintffs' members' children would render the children either undocumented noncitizens or stateless entirely….The children would risk deportation to countries they have never visited." 765 F. Supp. 3d at 111*; see also Doe v. Trump*, 766 F. Supp. 3d at 285 ("The loss of birthright citizenship—even if temporary, and later restored at the conclusion of litigation—has cascading effects that would cut across a young child's life (and the life of

---

[68] Petitioners submitted additional declarations making allegations specific to these respondents. *See supra* note 50.

that child's family), very likely leaving permanent scars."); *State v. Trump*, 765 F. Supp. 3d at 1153 ("The constitutional infringement and the specter of deportation are sufficiently irreparable for the purposes of a preliminary injunction."); *CASA Inc., v. Trump*, 763 F.Supp.3d at 744 ("The denial of the precious right to citizenship for any period of time will cause [petitioners] irreparable harm.").

Respondents' arguments about irreparable harm remain unconvincing to the court, which has no difficulty concluding that the rapid adoption by executive order, without legislation and the attending national debate, of a new government policy of highly questionable constitutionality that would deny citizenship to many thousands of individuals previously granted citizenship under an indisputably longstanding policy, constitutes irreparable harm, and that all class representatives could suffer irreparable harm absent an injunction. To the extent that the respondents challenge the petitioners' standing as to certain respondents, the court will not address these arguments at this time. A motion to dismiss certain respondents from the case, rather than an objection to a preliminary injunction, better suits these arguments. *See supra* note 50. Finally, because the court stays the injunction pending appeal, *see infra* Part VI, respondents' arguments about non-imminent and hypothetical harms do not persuade.

The court finds that the petitioners have shown that they are likely to suffer irreparable harm in the absence of preliminary relief.

### d. Equities and public interest

Finally, the court considers the equitable and public interests involved, which "'merge when the Government is the opposing party.'" *Doe v. Trump*, 766 F. Supp. 3d at

278 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  The petitioners cite the

destabilizing effects of the loss of citizenship and the ease of maintaining the status quo.

The respondents do not appear to add any arguments to their briefing in *New Hampshire*

*Indonesian Cmty. Support*.

      These merged factors favor preliminary injunctive relief.  As this court stated in

*New Hampshire Indonesian Cmty. Support*:

> "A continuation of the status quo during the pendency of this litigation will
> only shortly prolong the longstanding practice and policy of the United
> States government, while imposition of the Executive Order would impact
> the plaintiffs and similarly situated individuals and families in numerous
> ways, some of which—in the context of balancing equities and the public
> interest—are unnecessarily destabilizing and disruptive."

765 F. Supp. 3d at 111–12.  The other three district courts considering similar cases have

agreed.  *See Doe v. Trump*, 766 F. Supp. 3d at 286 ("It is difficult to imagine a

government or public interest that could outweigh the harms established by the plaintiffs

here."); *State v. Trump*, 765 F.Supp.3d at 1153 ("First, constitutional violations weigh

heavily in favor of an injunction.  Second, the Government has no legitimate interest in

enforcing an Order that is likely unconstitutional and beyond its authority. Third, the rule

of law is secured by a strong public interest that the laws…are not imperiled by executive

fiat") (cleaned up); *CASA, Inc. v. Trump*, 763 F.Supp.3d at 745 ("The balance of the

equities and the public interest strongly weigh in favor of a preliminary injunction that

maintains the status quo during litigation.").

      These final factors in the preliminary injunction analysis favor the petitioners.

Because they prevail as to all factors, the court grants the preliminary injunction.

## V.  **Bond requirement**

The court requires a nominal bond of $1.  "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  Petitioners ask the court to exercise its discretion to require a nominal bond of $1, due to the public interest addressed in this action.  Respondents argue that the court should require a substantial bond because of the potential costs of continuing to provide federal benefits to the children who the Executive Order would exclude from citizenship.  Here, where it is the government's sudden action, rapidly changing a longstanding policy, and not any conduct by the petitioners, that has created the litigation conditions that require petitioners to seek injunctive relief to preserve the long-established citizenship rights of children born in this country, and where respondents have not demonstrated any potential loss but instead demand security for an amount that they would save if no relief were granted, a nominal bond of $1 is appropriate.  *See Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 1000 (1st Cir. 1982) (collecting cases), *rev'd on other grounds*, 467 U.S. 526 (1984); *see also Int'l Assoc. of Machinists & Aerospace Workers v. E. Airlines*, 925 F.2d 6, 9 (1st Cir. 1991) ("[T]here is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond."); *Ambila v. Joyce*, No. 2:25-CV-00267-NT, 2025 WL 1534852, at *7 (D. Me. May 28, 2025) (Woodcock, J.)

(concluding that a nominal bond is appropriate where a substantial bond requirement would significantly affect the petitioner's exercise of due process); *Liu v. Noem*, No. 25-CV-133-SE, 2025 WL 1233892, at *12 (D.N.H. Apr. 29, 2025) (Elliott, J.) (waiving the bond requirement where the defendants did not request a specific amount or explain any costs they will incur by complying with the preliminary injunction); *Schiff v. U.S. Off. of Pers. Mgmt.*, No. CV 25-10595-LTS, 2025 WL 1481997, at *13 (D. Mass. May 23, 2025) (Sorokin, J.) (Security is unnecessary "where the plaintiffs seek to vindicate an important constitutional and federal statutory right, and the injunction will not expose the defendants to financial loss."); *Khalil v. Trump*, No. 25-cv-01963 (MEF)(MAH), 2025 WL 1649197, at *7 (D.N.J. June 11, 2025) (requiring a nominal bond of $1); *A.S.R. v. Trump*, No. 3:25-cv-00113, --- F.Supp.3d ----, 2025 WL 1649197, at *7 (W.D. Pa. May 13, 2025) (requiring a nominal bond of $1).

## VI.    <u>Conclusion and stay</u>

As this court observed in its earlier case regarding birthright citizenship, the "ultimate lawfulness of the Executive Order will surely be determined by the Supreme Court. This is as it should be." *New Hampshire Indonesian Cmty. Support*, 765 F.Supp.3d at 112; *see also CASA,* No. 24A884, 2025 WL 1773631 at *14 n.18 (citations omitted) ("The dissent worries that the Citizenship Clause challenge will never reach this Court, because if the plaintiffs continue to prevail, they will have no reason to petition for certiorari. . . . But at oral argument, the Solicitor General acknowledged that challenges to the Executive Order are pending in multiple circuits, and when asked directly 'When you lose one of those, do you intend to seek cert?', the Solicitor General responded, 'yes

absolutely.' And while the dissent speculates that the Government would disregard an unfavorable opinion from this Court, the Solicitor General represented that the Government will respect both the judgments and the opinions of this Court.").

The petitioners initiated this litigation with a request that the court issue orders on its preliminary injunction and class certification motions within one week in order to facilitate expeditious appeals for resolution before the Supreme Court's 30-day deadline. *Id.* at *15; *see also* doc. nos. 5, 6. After convening an immediate conference with the cooperative and highly professional counsel from both sides, a 10-day schedule was adopted, which concludes today with this order. In preliminary deference to the Supreme Court's stay, *id.*, and in order to facilitate the expeditious appellate review of this court's orders,[69] this court's preliminary injunction is STAYED for seven days pending the appeal that both parties expressly contemplate.

Nothing in this order should be construed as conflicting with the Supreme Court's ruling in *CASA,* including its specific holding allowing executive agencies to develop and issue public guidance about the Executive's plans to implement the Executive Order. *Id.*

Based on the above analysis, the court GRANTS the petitioners' motion for class certification (doc. no. 5). The following class is provisionally CERTIFIED:

> All current and future persons who are born on or after February 20, 2025, where (1) that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) that person's mother's presence in the United States was lawful but temporary, and the person's

---

[69] Staying the preliminary injunction order will eliminate the need for the Court of Appeals to separately litigate a motion to stay that order, because expeditious handling of the appeal before *CASA*'s 30-day deadline will likely moot this court's stay one way or the other.

father was not a United States citizen or lawful permanent resident at the time of said person's birth.

Sarah, by her guardian, parent, and next friend Susan; and Matthew, by his guardian, parent, and next friend Mark, are APPOINTED as representatives of the class. Petitioners' counsel from the ACLU Immigrants' Rights Project; the ACLUs of New Hampshire, Maine, and Massachusetts; the Asian Law Caucus; the NAACP Legal Defense and Educational Fund; and the Democracy Defenders Fund are APPOINTED as class counsel.

The court GRANTS the petitioners' motion for a preliminary injunction (doc. no. 6) as to the certified class.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

Dated: July 10, 2025

cc: Counsel of Record