**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

---

"BARBARA," *et al.*,

        *Plaintiffs*,

        v.

DONALD J. TRUMP, *et al.*,

        *Defendants*.

Case No. 1:25-cv-244-JL-AJ

---

**MOTION TO CLARIFY THE PRELIMINARY INJUNCTION OR, IN THE
ALTERNATIVE, TO MODIFY, OR TO ISSUE NEW PRELIMINARY INJUNCTION**

This case has always been, and remains, about the President's effort to fashion new exceptions to birthright citizenship. The Supreme Court confirmed that there are no additional exceptions beyond those recognized in *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), and the Fourteenth Amendment is not subject to executive (or legislative) revision. President Trump's continued resistance to that principle calls for this Court's renewed intervention.

Defending the first birthright executive order, "Protecting the Meaning and Value of American Citizenship," 90 Fed. Reg. 8449 (2025) ("EO1"), in the U.S. Supreme Court, the government noted that the "Court has identified several categories of persons who do not become citizens by birth here"—such as the well-established exception for children of Ambassadors—and argued that additional categories should be carved out of the Fourteenth Amendment's birthright-citizenship guarantee, namely "children of temporarily or unlawfully present" noncitizens. Br. for the Pet'rs 14, *Trump v. Barbara*, No. 25-365 (U.S. Jan. 20, 2026). The Court emphatically rejected that argument. It reaffirmed the holding of *Wong Kim Ark*—that "the Citizenship Clause . . . granted citizenship to nearly all children born in the United States," save only "the 'children of ambassadors' and other representatives of foreign sovereigns" along with Native American Tribal members. *Barbara*, 146 S. Ct. at 2452-53. Thus, the Clause "guarantee[s] citizenship to all children born in the United States and subject to its power." *Id*. at 2453.

That should have been the end of this issue. But on August 6, after the Supreme Court's mandate issued, President Trump signed a new executive order. *See Continuing to Protect the Meaning and Value of American Citizenship*, The White House (Aug. 6, 2026), https://www.whitehouse.gov/presidential-actions/2026/08/continuing-to-protect-the-meaning-and-value-of-american-citizenship/ ("EO2"). Despite the Supreme Court's clear direction, the

1

President continues to claim for himself the power to "identif[y] . . . categories of children" whose citizenship he intends to deny. *Id*. § 1.

This new Order violates the Court's existing preliminary injunction, as it purports to strip birthright citizenship from members of the provisionally certified class despite the Supreme Court's recent decision. To avoid any doubt in this regard, the Court should underscore that the government may not strip away class members' citizenship through *any* executive orders or other similarly flawed assertions of Executive power over birthright citizenship. Accordingly, Plaintiffs respectfully request that the Court now clarify that its preliminary injunction currently forbids any denial or infringement of class members' constitutionally guaranteed citizenship or, in the alternative, modify its injunction or issue a new preliminary injunction to explicitly so provide.[1]

**BACKGROUND**

The Court is familiar with the general background of this case, so Plaintiffs will highlight only certain aspects relevant to this motion.

This Court considered the first challenge to the original birthright citizenship executive order, *New Hampshire Indonesian Community Support v. Trump*, No. 25-cv-38 (D.N.H.), and issued a preliminary injunction in that suit. The parties here relied on their prior merits briefing in that case. *See, e.g.*, Dkt. No. 56-1 (Defendants incorporating their prior arguments by reference).

In *NHICS*, Defendants were quite clear that, in their view, the President may identify and exclude from citizenship categories of individuals beyond those set forth in *Wong Kim Ark*:

> The Supreme Court has identified multiple categories of persons who, despite birth in the United States, are not constitutionally entitled to citizenship because they are not subject to the jurisdiction of the United States: children of foreign sovereigns or their diplomats, children of alien enemies in hostile occupation, children born on foreign public ships, and certain children of members of Indian tribes. *United*

---

[1] On August 10, 2026, undersigned counsel conferred by email with counsel for Defendants regarding this motion. As of the time of this filing, counsel for Defendants have not yet indicated a position.

2

*States v. Wong Kim Ark*, 169 U.S. 649, 682, 693 (1898).  The Citizenship EO recognizes an additional category of persons not subject to the jurisdiction of the United States: children born in the United States of illegal aliens or temporary visitors.

*NHICS,* Dkt. No. 58-1, at 8.  This Court rejected that contention, explaining that "[t]he Supreme Court in *United States v. Wong Kim Ark* enumerated specific exceptions to the constitutional grant of birthright citizenship" and "[t]he categories of people affected by the Executive Order do not fit into those exceptions." *NHICS,* Dkt. No. 79, at 6-7.

On appeal in *NHICS,* the government reiterated the same argument in almost identical terms.  Br. for Appellants 11-12, *NHICS*, No. 25-1348 (1st Cir. May 27, 2025).  The Court of Appeals likewise rejected it, holding that both *Wong Kim Ark*, and the subsequent enactment of § 1401, enshrined the rule that "the words in the Fourteenth Amendment to the Constitution, 'and subject to the jurisdiction thereof,' were meant to except three exclusive groups: the 'children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and *the single additional exception* of children of members of the Indian tribes owing direct allegiance to their several tribes.'" *Doe v. Trump*, 157 F.4th 36, 61 (1st Cir. 2025) (citation modified); *see id*. at 66; *New Hampshire Indonesian Cmty. Support v. Trump*, 157 F.4th 29, 34-35 (1st Cir. 2025) (applying *Doe*).

When the Supreme Court granted certiorari before judgment in this case, Defendants continued to press the same theory: that while the Supreme Court had previously "identified several categories of persons who do not become citizens by birth here," the President was free to announce other such categories.  Br. for the Pet'rs, *supra*, at 14.  The Court—like this Court and the court of appeals—directly rejected that view, holding that "the status of citizenship" was "fixed by the place of nativity, irrespective of parentage," with limited, narrow exceptions. *Barbara*, 146 S. Ct. at 2451.  The Court confirmed that the Citizenship Clause's requirement that children be

born "subject to the jurisdiction" of the United States "refer[ed] to the power of the United States to govern those within its territory." *Id.* at 2450. The Court reaffirmed *Wong Kim Ark*'s holding that the Clause excluded only "those recognized as exempt 'from the jurisdiction of this country'— the 'children of ambassadors' and other representatives of foreign sovereigns, as well as those born in the 'alien nations' of Indian tribes." *Id*. at 2452. "*All* others were citizens at birth . . . ." *Id*. (emphasis added); *see id*. at 2453 ("We see no reason to depart from that view today.").

Justice Kavanaugh's separate opinion explained that "*Wong Kim Ark* interpreted the Fourteenth Amendment's 'subject to the jurisdiction' language to provide a general right of birthright citizenship with four disparate exceptions—for 'children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory' and 'children of members of the Indian tribes.'" *Id.* at 2470 (Kavanaugh, J., concurring in the judgment in part and dissenting in part). "Importantly, *Wong Kim Ark* indicated that the four exceptions were a closed set—meaning that there can be no additional exceptions recognized based on subsequent circumstances or developments." *Id*. (citation omitted). He further noted that "the decision has consistently been read that way, including by plaintiffs and the Court today." *Id*. He would have ruled for the Plaintiffs on statutory grounds because "the statute has long been interpreted to adopt *Wong Kim Ark*'s general rule of birthright citizenship, subject to the exceptions identified in that case." *Id*. at 2470. But on the constitutional question, he disagreed with "*Wong Kim Ark*'s treatment of the exceptions as a 'closed set.'" *Id*. at 2472. His dissenting opinion on that point spoke only for himself.

On August 6, 2026, after the Court's mandate, the President issued the new Order, EO2. Purporting to exercise "authority vested in me as President by the Constitution and the laws of the United States of America," the Order "identifies, non-exhaustively, and prescribes action

4

concerning certain categories of children of aliens who," the President opined, "do not fall within the rule of birthright citizenship as announced by the Supreme Court." EO2 § 1. It directs executive agencies not to recognize the citizenship of individuals "when neither parent of that person is a citizen" and who fall into one of the following categories:

a) "either parent of that person is an alien enemy, defined to include" a member of certain designated terrorist organizations;
b) "either parent of that person is a foreign government employee," including not only ambassadors but various other employees of foreign governments or international organizations;
c) "either parent of that person engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship";
d) "the person is born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute."

*Id.* § 2. Agency heads are directed to "take all appropriate measures" to implement the Order, and are directed to issue public guidance within 30 days. *Id.* § 3.

The new Order does not explain its relationship to the original birthright citizenship order. It does not, for example, rescind and replace that order, which appears to remain in effect (that is, enforceable but for the injunctions issued by this and other Courts). Notably, the new Order appears to lack several key limitations present in the original order. For example, the original order specified that it would "apply only to persons who are born within the United States after 30 days from the date of this order." EO1 § 2(b). The new Order contains no such language. Likewise, the original order expressly stated that it would not impair the citizenship of "children of lawful permanent residents." EO1 § 2(c). Again, the new Order says nothing like that. Indeed, standing alone the new Order would appear to apply to people who have lived their entire lives as citizens, potentially going back generations; to children of permanent residents; and even to naturalized citizens (for example a naturalized citizen whose parent was employed by an embassy).

5

**LEGAL STANDARD**

"As part of its responsibility to administer the injunction, the Court may clarify . . . the injunction's language." *Brown v. Bussone*, 754 F. Supp. 2d 163, 166 (D. Mass. 2010). A preliminary injunction also "may be revised at any time before the entry of a judgment," Fed. R. Civ. P. 54(b). *See Brown v. Plata*, 563 U.S. 493, 542 (2011); *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977). The decision to clarify or modify is committed to the Court's "sound judicial discretion." *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961). Clarification or modification of a preliminary injunction may be warranted by a change in circumstances. *Cf. Rosie D. by John D. v. Baker*, 958 F.3d 51, 56 (1st Cir. 2020). The court considers the same factors it evaluates in determining whether a preliminary injunction is warranted: likelihood of success on the merits, irreparable injury, and the balance of equities. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984); *Handel's Enters., Inc. v. Schulenburg*, 431 F. Supp. 3d 946, 961 (N.D. Ohio 2020).

**ARGUMENT**

**I.    THE CIRCUMSTANCES JUSTIFY THE REQUESTED CLARIFICATION OR MODIFICATION.**

Plaintiffs seek the following clarification or modification of the Court's previously entered preliminary injunction, Dkt. No. 64, which enjoins Defendants "from enforcing [EO1]":

> That Defendants are "enjoined and restrained from taking any actions to deny or infringe on the citizenship of class members, except for those born to a foreign diplomatic officer identified in the State Department 'Blue List.' *See* 8 C.F.R. § 101.3 (2025)."

The circumstances amply justify this clarification or modification. Since this Court's decision, the Supreme Court ruled in the class's favor on the meaning of the Citizenship Clause. But rather than accept that judgment, President Trump is continuing his efforts to carve new

6

exceptions out of the Clause by executive fiat, thus threatening the citizenship of class members. The Court should bar any further efforts to deny class members' citizenship for reasons beyond those laid out in *Wong Kim Ark* and *Barbara*.

As set forth above, the constitutional rule is clear and the Supreme Court just reaffirmed it. The Clause guarantees citizenship "to nearly all children born in the United States." *Barbara*, 146 S. Ct. at 2453. The only exceptions are those drawn from common law—for "children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory," and "the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes." *Wong Kim Ark*, 169 U.S. at 693. Given legal changes (namely the provision of citizenship to all Native American children by statute) and practical changes (namely the lack of any hostile occupation of U.S. territory by foreign governments), the only relevant exception today is that for children born to foreign ministers.

As Justice Kavanaugh underscored, under *Wong Kim Ark* and *Barbara* the exceptions are "a closed set." *Barbara*, 146 S. Ct. at 2470 (Kavanaugh, J.). "All others [a]re citizens at birth . . . ." *Id*. at 2452 (majority opinion). The President's continuing effort to "identif[y]" exceptions from the Citizenship Clause *beyond* those laid out in *Wong Kim Ark* is therefore fundamentally flawed. EO2 § 1. There are no such additional exceptions.

Under these circumstances, the Plaintiff class is entitled to relief protecting them from these and any future efforts the Administration may undertake to strip away their citizenship, grounded in its repudiated theory of Executive authority to fashion new constitutional exceptions. Indeed, the court "has the continuing duty and responsibility to assess the efficacy and consequences of its order" and "must remain open to a showing or demonstration . . . that the injunction should be

7

altered to ensure that the rights and interests of the parties are given all due and necessary protection." *Brown*, 563 U.S. at 542-43.

Faced with the Supreme Court's rejection of his effort to rewrite the Citizenship Clause, the President has apparently decided to keep trying. But "an injunction is not a game of whack-a-mole where the Court must repeatedly issue new injunctions to address the Defendants' post-injunction craftiness." *United States of Am. v. Robinson*, 83 F.4th 868, 885 (11th Cir. 2023) (citation modified); *see Iglesias v. Fed. Bureau of Prisons*, 598 F. Supp. 3d 689, 693-94 (S.D. Ill. 2022) ("it appeared the last of BOP's moles had been 'whacked.' Then another one 'popped-up'"). Accordingly, "courts have responded to this problem" of defendants seeking "to skirt the line of permissible conduct" "by issuing broad injunctions" against a more general set of violations of plaintiffs' rights. *Colors+ v. Colors+ Counseling, LLC*, 782 F. Supp. 3d 579, 639 (N.D. Ohio 2025) (finding it "appropriate to enjoin Defendants from using any similar but slightly altered version" of trademark) (citation modified). The Court should either clarify its injunction already provides such general relief, or modify the injunction to unmistakably do so.

## II.    THE REQUESTED MODIFICATION OR INJUNCTION IS WARRANTED.

If the Court concludes that the existing injunction's language does not already provide the requested relief, the factors the Court considers for either a modification or, in the alternative, for a new preliminary injunction, are plainly satisfied. Indeed, this Court has already found that the class has satisfied the preliminary injunction factors. Dkt. No. 65, at 28-34. And since then, the Supreme Court has affirmed the injunction on the merits, and the First Circuit has affirmed this

Court's parallel injunction in *NHICS* (except insofar as the President himself was enjoined, 157 F.4th at 35).

The government may argue that the class is not entitled to the requested modification or injunction because there are categories of individuals described in EO2 for whom the President can legally deny citizenship. As an initial matter, that entire concept is misplaced; as explained above, the Supreme Court has been clear that the exceptions to the Citizenship Clause come from the Clause and the Court—not from the President. More fundamentally, to the extent that EO2 seeks (like EO1) to deny citizenship to class members, it does so illegally and so cannot be a barrier to the requested injunction.

1. Consider the category set forth in EO2 § 2(b), children of "a foreign government employee." The children of ambassadors, of course, are already excluded from birthright citizenship under *Wong Kim Ark* and *Barbara*. *See* 8 C.F.R. § 101.3(a) (noting child is not a citizen if born to a "foreign diplomatic officer," meaning "a person listed in the State Department Diplomatic List, also known as the Blue List," including "ambassadors, ministers," and certain other specified individuals). So that aspect of EO2 does no legal work.

But the remaining sub-categories of Section 2(b) are squarely contrary to Supreme Court precedent. *See id.* § 101.3(b) (children of other "foreign government officials or employees" are citizens). *Barbara* reaffirmed that the reason the children of ambassadors are not "subject to the jurisdiction of the United States" is that the country has "impliedly waived [its] jurisdiction" over those individuals, affording them full diplomatic immunity "to preserve its relationship with a foreign sovereign." 146 S. Ct. at 2450. The families of such diplomats are entitled to immunity, like the diplomats themselves. *See Moncada v. Rubio*, 153 F.4th 733, 739 (9th Cir. 2025); *Carrera v. Carrera*, 174 F.2d 496, 498 (D.C. Cir. 1949); *In re Look Tin Sing*, 21 F. 905, 906 (C.C.D. Cal.

9

1884) (Field, J.). Thus a child born to an ambassador is not born "subject to the jurisdiction of the United States."

But the Court has been clear that not all governmental employees enjoy such immunity. Thus *Wong Kim Ark* specifically explained, for example, that "consuls, as such, and unless expressly invested with a diplomatic character in addition to their ordinary powers, are not . . . entitled by the law of nations to the privileges and immunities of ambassadors or public ministers, but are subject to the jurisdiction, civil and criminal, of the courts of the country in which they reside." 169 U.S. at 678-79; *Moncada*, 153 F.4th at 739 (other officials, like consuls, "are subject to the local law in the same manner with other foreign residents owing a temporary allegiance to the state") (quoting *Coppell v. Hall*, 74 U.S. 542, 553 (1869)). Thus, while consuls enjoy limited immunity for certain official acts, *Moncada*, 153 F.4th at 739, neither they nor their families enjoy "full diplomatic immunity." *Id*. at 737; *see Barbara*, 146 S. Ct. at 2507 (Thomas, J., dissenting) ("diplomatic immunity extends to only a narrow set of diplomatic officials, not to all foreign representatives" (citation altered)).

The new Order purports to exclude the children of various categories of employees of foreign governments who are *not* ambassadors or otherwise entitled to full diplomatic immunity. It excludes children of "persons employed by a foreign embassy or consulate who are nationals of that foreign country"—including maintenance, janitorial, and groundskeeping staff. EO2 § 2(b)(ii). It also excludes children of "persons employed by a foreign government in an official capacity," regardless of nationality; while "official capacity" is not defined, it clearly reaches beyond those with full diplomatic immunity. EO2 § 2(b)(iii). Likewise, the Order targets children of "persons employed by an international organization that possess international-organization immunity"—regardless of whether the *child* possesses any immunity. EO2 § 2(b)(iv).

10

This is all inconsistent with *Barbara* and *Wong Kim Ark*. The relevant exception here is for "foreign ministers," *Barbara*, 146 S. Ct. at 2450 (quoting *Schooner Exchange*, 11 U.S. at 138-39), not for any foreign national employed by a foreign government. This category thus provides no basis to deny the requested injunction.

2. The next category, that of children of supposed "alien enem[ies]," EO2 § 2(a), is also straightforwardly foreclosed. There is no such exception from birthright citizenship and the President cannot defeat the requested relief by inventing one.

As the Supreme Court has explained, the closest exception to the Citizenship Clause is for a child born to "an alien enemy *in hostile occupation* of the place where the child was born." *Wong Kim Ark*, 169 U.S. at 658 (emphasis added); *see id*. at 693 ("enemies within and during a hostile occupation of part of our territory"); *id*. at 657 (same); *id*. at 665 (same); *id*. at 682 (same); *id*. at 688 (same). That "hostile occupation" condition is the *reason* for this exception. In the case of "conquest and military occupation," "[t]he sovereignty of the [nation] over the [occupied] territory was, of course, suspended, and the laws of the [nation] could no longer be rightfully enforced" in it. *United States v. Rice*, 17 U.S. 246, 254 (1819). As such, the occupied town would be "deemed a foreign port," and "the inhabitants" "passed under a temporary allegiance to the [occupying] government, and were bound by such laws, and such only, as it chose to recognise and impose." *Id*.; *see Wong Kim Ark*, 169 U.S. at 683 (extensively discussing *Rice*). Given this "extraterritorial fiction," a child born to enemies *in occupied territory* was not "born 'under the protection of' the United States," and so not subject to its jurisdiction. *Barbara*, 146 S. Ct. at 2449.

But the new Order is in no way limited to occupied territory. That makes sense, of course. There is no such occupied territory, nor is there likely to be; the British occupation of U.S. cities

11

in the War of 1812 (as described in *Rice*) is a distant memory.  That may well be why this exception did not even warrant explicit discussion in *Barbara*.

Even beyond the lack of any "hostile occupation," the new Order's Section 2(a) is not even limited to "alien enemies."  As used in *Wong Kim Ark*, the term "alien enemy" is a legal term of art.  *See, e.g.*, *Johnson v. Eisentrager*, 339 U.S. 763, 769 n.2 (1950) (explaining that "an alien enemy is the subject of a *foreign state at war* with the United States" and collecting sources) (emphasis added).  But groups may be on the Administration's list of designated terrorist organizations without their members in fact being "alien enemies" in that sense because the United States is not at war with their nations.  The term of art in *Wong Kim Ark* is not a license to fashion a new, open-ended exception to the Citizenship Clause for any person the President deems an "alien enemy."

Indeed, the danger of that asserted authority is heightened because the scope of the purported exception is so unclear.  The Order says that "alien enemy" is "defined to *include*" members of certain groups designated as terrorist organizations by the Administration.  EO2 § 2(a) (emphasis added).  But "include" does not mean "limited to."  And this Administration has already demonstrated a willingness to use extremely loose and unfounded criteria to designate individuals as "alien enemies" purportedly under the Alien Enemies Act.  *See* Perla Trevizo, et al., *Now That They're Free*, ProPublica (July 30, 2025), https://www.propublica.org/article/venezuelan-men-cecot-interviews-trump (describing the role of ordinary tattoos in the Administration's designations under the Act).  That demonstrated track record is all the more reason to protect the class from this unlawful Order.

Even if the President had limited the Order to only subjects of foreign states at war with the United States, an exception for such "alien enemies" not in hostile occupation would be flatly

inconsistent with *Wong Kim Ark*, § 1401, and longstanding historical practice. Thousands of people of Japanese descent were interned during World War II as alien enemies, and many of them had children while in custody *as* enemies. *See generally* Amicus Br. of Prof. Eric. L. Muller, *Trump v. Barbara*, No. 25-365 (U.S. Feb. 26, 2026). Those children were universally understood to be citizens and lived their lives as full citizens of this country. *See id*. at 11 (discussing one case of a child born in an internment camp who later held top security clearance in the Navy). The citizenship of various such children was presented to Congress contemporaneously with the reenactment of § 1401 in 1952. *See* Amicus Br. of Citizenship Law Scholars 27-28, *Trump v. Barbara*, No. 25-365 (U.S. Feb. 18, 2026) (describing 1952 congressional resolution approving order which had suspended deportation of Japanese parents based on hardship to their "child [who] is a citizen of the United States by birth"). This history both further refutes the idea that there is a constitutional exception for children of supposed "enemy aliens" outside of occupied territory, and strongly confirms that the *statute* does not contain any such exception either. *See Doe*, 157 F.4th at 63 (examining the "broad understanding of birthright citizenship that was prevailing . . . in 1952" in affirming injunction of the first order on statutory as well as constitutional grounds).

3. Finally, the new purported exception for those children whose parent "engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship," likewise cannot justify denying the requested relief. EO2 § 2(c).

Again, there is no such exception in *Wong Kim Ark*, and it is not part of the "closed set" confirmed by *Barbara*. 146 S. Ct. at 2470 (Kavanaugh, J.). The government sought to push alarmist ideas about so-called birth tourism in its briefing and argument at the Supreme Court. *See* Br. for the Pet'rs, *supra*, at 9. The Court was unpersuaded, and instead reaffirmed *Wong Kim Ark*'s

13

analysis: The children of those "exempt 'from the jurisdiction of this country'" were carved out of the Clause, and "[a]ll others were citizens at birth."  146 S. Ct. at 2452.  That leaves no space for the new purported exception.   After all, even if an individual "engaged in a commercial transaction" or "committed fraud," EO2 § 2(c), they remain "subject to [the] power" of the government, including any criminal or civil enforcement, as of course do their children, *Barbara*, 146 S. Ct. at 2453.

This unlawful new proposed exception is even more troubling because of how vague it is. Many a mother might be found to have "engage[d] in a commercial transaction to ensure that" she "is present in the United States . . . to give birth."  EO2 § 2(c)(i).  Plaintiff Barbara, for example, bought a bus ticket in her effort to come to the United States; she of course sought to be "present in the United States," and understandably hoped any future children she had would enjoy the rights and opportunities afforded to U.S. citizens.  *See* Declaration of Barbara ¶¶ 4-6, Ex. A.  The new Order's inquiry calls for an examination of parents' actions and intentions, a "question that" may be "of great difficulty to decide" in particular cases.  *Barbara*, 146 S. Ct. at 2455 (discussing complexities of determining domicile in rejecting asserted exception).  The government's vague new exception would thus set it up as the arbiter of which children *deserve* citizenship based on its assessment of their parents' particular circumstances—an intolerable outcome under the Clause and statute.  *Afroyim v. Rusk*, 387 U.S. 253, 263 (1967) (purpose of Clause was "to put citizenship beyond the power of any governmental unit to destroy").[2]

---

[2] The fourth category in the new Order applies to those "born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute."  EO2 § 2(d).  In most territories, citizenship is provided by statute and so the Order appears to be inapplicable by its terms.  There is an existing legal dispute about whether American Samoa, which is not covered by such a statute, is "within the United States for purposes of the Fourteenth Amendment."  *Compare Fitisemanu v. United States*, 1 F.4th 862, 872 (10th Cir. 2021), *with id*. at 884-98 (Bacharach, J., dissenting).  That distinct question concerning the territorial scope of the Citizenship Clause is beyond the scope of this case.

\*     \*     \*

Birthright citizenship "is no light trifle to be jeopardized" in such a cavalier manner. *Id*. at 267-68. "The very nature of our free government" refutes the notion that those "temporarily in office can deprive another group of citizens of their citizenship." *Id*. at 268. If the President issues 100 orders seeking to create new exceptions to the sacred guarantee of the Citizenship Clause, all 100 will be equally illegal. And nothing requires this Court to countenance the continued assault on this foundational constitutional principle or issue an endless string of EO-specific injunctions. *Cf. McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192-93 (1949). The Court should make clear that Defendants may not take away class members' birthright under the auspices of these or any other executive actions.

## CONCLUSION

The Court should GRANT the motion to clarify the preliminary injunction or, in the alternative, modify or issue a new preliminary injunction.

15

Dated: August 11, 2026

Respectfully submitted,

*/s/ SangYeob Kim*

SangYeob Kim (N.H. Bar No. 266657)
Gilles R. Bissonnette (N.H. Bar No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
Chelsea Eddy (N.H. Bar No. 276248)
Caroline Meade (N.H. Bar No. 281341)
Maria Savarese (N.H. Bar No. 273285)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
T: (603) 333-2081
sangyeob@aclu-nh.org
gilles@aclu-nh.org
henry@aclu-nh.org
chelsea@aclu-nh.org
caroline@aclu-nh.org
maria@aclu-nh.org

Elizabeth Caldwell*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector St., FL 5, New York, NY 10006
(212) 217-1690
bcaldwell@naacpldf.org

Morgan Humphrey*
Mide Odunsi*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 249-2193
mhumphrey@naacpldf.org
modunsi@naacpldf.org

Carol Garvan (N.H. Bar No. 21304)
Zachary L. Heiden*
Max Brooks**
AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION

*/s/ Cody Wofsy*

Cody Wofsy*
Hannah Steinberg*
Stephen Kang*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
hsteinberg@aclu.org
skang@aclu.org

Grace Choi*
Noor Zafar*
Lee Gelernt*
Omar Jadwat*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
gchoi@aclu.org
nzafar@aclu.org
ojadwat@aclu.org
lgelernt@aclu.org

Lucia Goin**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
915 15th Street NW
Washington, DC 20005
T: (332) 529-3732
lgoin@aclu.org

Norm Eisen*
Tianna Mays*
Taryn Wilgus Null*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, #15180
Washington, DC 20003
T: (202) 594-9958
norman@democracydefenders.org
tianna@democracydefenders.org

16

P.O. Box 7860
Portland, ME 04112
T: (207) 619-8687
cgarvan@aclumaine.org
heiden@aclumaine.org
mbrooks@aclumaine.org

Adriana Lafaille*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza Suite 850
Boston, MA 02108
T: (617) 482-3170
alafaille@aclum.org

taryn@democracydefenders.org

Kimberly Wei Leung*
Winifred Kao*
ASIAN LAW CAUCUS
55 Columbus Ave
San Francisco, CA 94111
T: (415) 896-1701
kimberlyl@asianlawcaucus.org
winifredk@asianlawcaucus.org

*Counsel for Plaintiffs*
*\*Admitted pro hac vice*
*\*\*Pro hac vice forthcoming*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| "BARBARA," *et al.*, | Case No. 1:25-cv-244-JL-AJ |
| *Plaintiffs*, | |
| v. | |
| DONALD J. TRUMP, *et al.*, | |
| *Defendants*. | |

## [PROPOSED] ORDER

Pursuant to Federal Rule of Civil Procedure 65(a), this court orders that the U.S. Department of Homeland Security; the Secretary of the Department of Homeland Security, in their official capacity; the U.S. Department of State; the Secretary of the U.S. Department of State, in their official capacity; the U.S. Department of Agriculture; the Secretary of the U.S. Department of Agriculture, in their official capacity; the Centers for Medicare and Medicaid Services; and the Administrator for the Centers for Medicare and Medicaid Services, in their official capacity are enjoined and restrained from taking any actions to deny or infringe on the citizenship of class members, except for those born to a foreign diplomatic officer identified in the State Department "Blue List."  S*ee* 8 C.F.R. § 101.3 (2025).

DATE: 

_____

Hon. Joseph N. Laplante
U.S. District Judge