**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| "BARBARA," *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-00244-JL-AJ |

**DEFENDANTS' MEMORANDUM OF LAW IN OBJECTION TO PLAINTIFFS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO MODIFY, OR TO ISSUE NEW PRELIMINARY INJUNCTION**

**INTRODUCTION**

This case began over a year ago as a challenge to Executive Order 14,160, titled "Protecting the Meaning and Value of American Citizenship," 90 Fed. Reg. 8449 (Jan. 20, 2025) ("2025 Executive Order"). That Executive Order directed agencies not to treat future children of temporarily present aliens and illegal aliens as U.S. citizens. And everything about this lawsuit—brought by five named Plaintiffs representing a putative class of such children—has been targeted at that Executive Order. Each named Plaintiff fell within the Executive Order's terms as either a temporarily present or illegal alien, or a child of the same. Each claim for relief in the Complaint accused "[t]he Executive Order" of violating the Fourteenth Amendment, the Immigration and Nationality Act ("INA"), or the Administrative Procedure Act ("APA"). Compl. ¶¶ 76, 80, 82, 84. And when this Court ultimately granted a classwide preliminary injunction, it "enjoined and restrained" Defendants "from enforcing the Executive Order 'Protecting the Meaning and Value of American Citizenship.'" ECF No. 64. Defendants appealed up to the Supreme Court, which held—reviewing the 2025 Executive Order—that "children born of parents unlawfully or temporarily present in the United States," without more, are "citizens at birth." *Trump v. Barbara*, 609 U.S. ---, 146 S. Ct. 2438, 2450 (2026).

Earlier this month, the President signed a new executive order, titled "Continuing to Protect the Meaning and Value of American Citizenship." Executive Order 14,418, 91 Fed. Reg. 51991 (Aug. 6, 2026) ("2026 Executive Order"). Unlike the earlier executive order, the 2026 Executive Order is not based solely on whether the parents were unlawfully or temporarily present at the time of birth. Rather, it is based on much narrower categories. The 2026 Executive Order directs agencies not to treat as citizens (1) children of "alien enem[ies]," (2) children of "foreign government employee[s]," (3) children of parents who had engaged in "commercial" or "fraudulent" transactions to obtain birthright citizenship for the given child, and (4) children born in territories or territorial waters of the United States where citizenship is not conferred by Federal statute.

In short, the 2026 Executive Order is a different order based on a different legal theory that identifies different populations. It does not affect the operation of the 2025 Executive Order, which remains the only order that appears in Plaintiffs' complaint. Nonetheless, in an attempt to make the new executive order a part of this case, Plaintiffs launch a smorgasbord of new requests to this Court in its motion to clarify, modify, or add to its preliminary injunction.

This Court should reject that invitation. Plaintiffs' primary claim is that this Court has somehow *already* enjoined the new executive order, arguing that it "violates the Court's existing preliminary injunction." Mot. to Clarify the Prelim. Inj. or, in the Alt., to Modify, or to Issue New Prelim, Inj. ECF No. 80 (Mot.) at 2. This Court's preliminary injunction does no such thing: an even cursory look at the Court's injunction makes clear that it "enjoined and restrained" the enforcement of "the Executive Order 'Protecting the Meaning and Value of American Citizenship.'" ECF No. 64. And that makes obvious sense: the Court could provide injunctive relief only as to issues *actually* before it. Whether children of illegal or temporarily present aliens can obtain birthright citizenship was such an issue; whether children of alien enemies could do so was not.

Plaintiffs' alternative request reveals their true goal: a "new preliminary injunction." Mot. 8. And they spend the majority of their briefing arguing that the new Executive Order is inconsistent with *Barbara* and should be preliminarily enjoined for that reason alone. But there is no shortcut to receiving the extraordinary relief of a preliminary injunction. To enter a *new* classwide preliminary injunction, this Court must consider the factors set out in *Winter v. NRDC, Inc.*, 557 U.S. 7 (2008), anew.

Those factors overwhelmingly disfavor Plaintiffs. As to likelihood of success, Plaintiffs' prospects are dim when their complaint *does not even challenge* the new Executive Order. Plaintiffs also lack standing to challenge the 2026 Executive Order: Not one allegation in the record indicates that any named Plaintiff—let alone any class member—is an alien enemy, a foreign employee, or a birth

tourist. And even if *some* class members could fall into any of those categories, Plaintiffs have not even attempted to show that the putative class could satisfy Rule 23's requirements as to the *new* Executive Order.

Those threshold issues confirm that this new request is a poor fit for this case, these Plaintiffs, and this class. But even if this Court were to reach the merits of the new Executive Order, Plaintiffs fail to show that it runs afoul of *Barbara* or any other precedent. The new Executive Order is based on different legal arguments that were not presented in *Barbara*. *Barbara* said that "any child for whom no extraterritorial fiction applied" was "made a citizen" on account of his "natural 'allegiance'" to the Nation. 146 S. Ct. at 2449. That holding, the exceptions *Barbara* recognized, and the common law *Barbara* incorporated, defies bright line rules, and forecloses Plaintiffs' premature attempt to render judgment on any possible implementation of the new Executive Order touching on the subject.

Plaintiffs also cannot demonstrate irreparable harm. They cannot demonstrate harm at all, because they have not alleged that the new Executive Order affects them. And even if they could hypothesize some downstream effect on some of their class members, there is no imminent harm justifying a preliminary injunction. The 2026 Executive Order will have no practical effect on anyone until agencies issue guidance for implementing it. They have not yet done so.

This Court should deny Plaintiffs' motion in full.

## BACKGROUND

On January 20, 2025, President Trump signed Executive Order 14,160. That Executive Order set out an interpretation of the Fourteenth Amendment's mandate that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV. It explained that the Fourteenth Amendment "has never been interpreted to extend citizenship universally to everyone born within

the United States." *Id.* The 2025 Executive Order went on to provide that persons born in the United States are not "subject to the jurisdiction thereof":

> (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary … and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

*Id.* The Government justified that interpretation by interpreting the phrase "subject to the jurisdiction thereof" to incorporate the concept of common-law allegiance, Brief for Petitioners 40, *Barbara*, 146 S. Ct. 2438 (Apr. 1, 2026), and reasoning that "domicile"—making the United States one's permanent home—"is the key concept that creates allegiance," Tr. of Oral Arg. 26, *Barbara*, 146 S. Ct. 2438.

In June 2025, five named Plaintiffs sued Defendants the President of the United States, the Department of Homeland Security, the Department of State, the Department of Agriculture, the Centers for Medicare and Medicaid Services, and the heads of those agencies, seeking to enjoin enforcement of the Executive Order. The Complaint brought four claims for relief, each specifying the 2025 Executive Order, based on the Fourteenth Amendment, the INA, and the APA. *See* Compl. ¶ 76 ("The Executive Order violates the Fourteenth Amendment's Citizenship Clause."); *id.* ¶ 80 ("The Executive Order violates 8 U.S.C. § 1401 *et seq.*"); *id.* ¶ 82 ("The actions of Defendants that are required or permitted by the Executive Order, as set forth above, are . . . in violation of the Administrative Procedure Act[.]"); *id.* ¶ 84 (same). And the Complaint's prayer for relief, too, was limited to the 2025 Executive Order, asking the Court to "[d]eclare that the Executive Order is unconstitutional and unlawful in its entirety," and to "[p]reliminarily and permanently enjoin Defendants from enforcing the Executive Order." *Id.* at 16.

The named Plaintiffs consisted of three parents and two children. Each parent was seeking asylum or applying for lawful permanent resident status and was not married to a citizen or lawful

permanent resident. *Id.* ¶¶ 12–14. The named Plaintiffs proposed to represent a class of similarly situated persons under Rule 23(b)(2). *Id.* ¶ 41.

This Court granted classwide preliminary injunctive relief in July 2025. First, the Court provisionally certified a class that completely tracked the language of Executive Order 14,160:

> All current and future persons who are born on or after February 20, 2025, where (1) that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) that person's mother's presence in the United States was lawful but temporary, and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth.

Order Granting Pet'rs Mot. for Provisional Class Cert. and Appointment of Class Counsel ECF No. 63 at 1. The Court thus narrowed Plaintiffs' proposed class, which would have included parents and expectant parents as well. Order Granting Prelim. Inj. And Provisional Class Cert. ECF No. 65 at 9. Second, this Court entered a preliminary injunction in favor of the provisionally certified class, "order[ing] that [Defendants] are enjoined and restrained from enforcing the Executive Order 'Protecting the Meaning and Value of American Citizenship.'" Order Granting Pet'rs Mot. for Classwide Prelim. Inj. ECF No. 64 at 1. The Court rejected Defendants' argument that "the language 'subject to the jurisdiction thereof' in the Fourteenth Amendment interpretively turns on an individual's domicile, rather than place of birth," ECF No. 65 at 30, and noted that Defendants "do not identify additional arguments in favor of their interpretation of the Citizenship Clause," *id.* at 31.

Defendants appealed and filed an assented-to motion to stay proceedings in this Court. Assented-To Mot. to Stay Dist. Ct. Proceedings ECF No. 74. The motion explained that "Plaintiffs and the class they represent are currently protected by the class-wide preliminary injunction entered in this case." *Id.* ¶ 3. Accordingly, "there [was] no need at th[at] time for further district court proceedings," and "[a] stay would preserve the resources of both the parties and the Court" while the case was considered on appeal. *Id.* ¶¶ 3–4. This Court agreed and granted the motion on October 24, 2025.

On June 30, 2026, the Supreme Court decided *Trump v. Barbara*, holding that "children born of parents unlawfully or temporarily present in the United States" are "subject to the jurisdiction of the United States" and are thus "citizens at birth." 146 S. Ct. at 2450. All in that case agreed that "[t]he Citizenship Clause mirrored the common law's criteria for citizenship." *Id.* at 2453. And under the common law, birthright citizenship depended on "natural 'allegiance' (and thus 'obedience') to the Nation." *Id.* at 2449. Where the Supreme Court (like this Court) parted ways from Defendants was in its "definition of 'allegiance.'" *Id.* at 2453. Whereas Defendants argued that allegiance "turn[s] on domicile," *id.*, the Supreme Court viewed allegiance as depending on whether the child was "born under the protection of the United States," provided that "no extraterritorial fiction applied," *id.* at 2449. In reaching that holding, the Supreme Court approved of its earlier decision in *Wong Kim Ark*, which articulated a general rule of birthright citizenship, but excluded "children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory." 169 U.S. at 693. The Supreme Court accordingly upheld this Court's preliminary injunction against enforcing the 2025 Executive Order, which was untethered to any of those categories. *Barbara*, 146 S. Ct. at 2456, 2458.

In light of the Supreme Court's decision, on August 6, 2026, the President signed a new Executive Order, "Continuing to Protect the Meaning and Value of American Citizenship." 91 Fed. Reg. at 51991. The 2026 Executive Order did not depend on a domicile theory of citizenship. Rather, it applied the recent opinion in *Barbara*, explaining that under *Barbara* birthright citizenship extends to "children born to parents in the United States 'for whom no extraterritorial fiction applie[s].'" *Id.* In keeping with *Barbara*, the Executive Order "identifies … certain categories of children of aliens who do not fall within the rule of birthright citizenship as announced by the Supreme Court." *Id.*

Executive Order 14,418 lays out four categories. *First*, it excludes children whose parent "is an alien enemy," which is "defined to include any member of a designated Foreign Terrorist

Organization" or "Specially Designated Global Terrorist," among other things. *Id.* Second, it excludes children whose parent "is a foreign government employee," which includes ambassadors, embassy or consulate employees who are nationals of the foreign country, persons employed by a foreign government in an official capacity, and persons employed by an international organization that possess international-organization immunity. *Id.* Third, the Executive Order excludes children whose parent "engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." *Id.* And fourth, the Executive Order excludes children "born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." *Id.* at 51992.

The Executive Order directs agencies to "issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities." *Id.* Nonetheless, a mere five days after the Executive Order was signed, Plaintiffs moved this Court to lift its stay[1] and to clarify that its current preliminary injunction also enjoins the *new* Executive Order or, alternatively, to issue a new preliminary injunction to do the same.

**ARGUMENT**

This Court should deny Plaintiffs' motion. There is nothing to clarify about this Court's current injunction. It "enjoin[s] and restrain[s]" Defendants "from enforcing the Executive Order 'Protecting the Meaning and Value of American Citizenship,'" nothing more. ECF No. 64 at 1. Nor is there any reason to modify an injunction which has given Plaintiffs all the relief they asked for in their Complaint. And it is plainly beyond the scope of this Court's authority and this case to grant a new injunction against a new Executive Order when that order has never been challenged by Plaintiffs, has never been alleged to even affect Plaintiffs, has never been demonstrated to apply to anyone in

[1] Because the First Circuit has issued its mandate and remanded the matter to this Court, Defendants do not oppose lifting the stay, except for their obligation to file an Answer or otherwise respond to the Complaint. *See* ECF No. 86.

the provisionally certified class, and is consistent with the Constitution, the INA, and Supreme Court precedent in any event.

## I. This Court's Preliminary Injunction Says Nothing About the Recent Executive Order.

Plaintiffs' first accusation—that the 2026 Executive Order "violates the Court's existing preliminary injunction"—is an overreach. The Court enjoined only "the Executive Order 'Protecting the Meaning and Value of American Citizenship.'" *Id.* And that made sense. Courts may not grant injunctions "respecting a matter lying wholly outside the issues in the case." *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217 (1945). Here, every claim and request for relief in the Complaint was geared towards the 2025 Executive Order. *See* Compl. ¶¶ 73–84; *id.* at 16. Every named Plaintiff alleged only that they fell within the 2025 Executive Order's terms, not that of any other executive order, much less what would have been a hypothetical executive order that had not yet been issued. And Plaintiffs and Defendants litigated only whether the 2025 executive order could be justified under a domicile theory of citizenship—which is the only legal argument this Court and the Supreme Court considered. *See* ECF No. 65 at 30–31; *Barbara*, 146 S. Ct. at 2453–58.

It is little wonder, then, that Plaintiffs hardly attempt to explain how the 2026 Executive Order could somehow violate those terms. Instead, they pivot quickly to asking this Court to "clarify" its injunction. Mot. 8. But what Plaintiffs ask for is creation, not clarification. The Court never purported to completely guarantee class members birthright citizenship in every circumstance going forward, and Plaintiffs never asked for such an order. And for good reason: by its terms, the class *could* include children of ambassadors, who all would agree fall outside of the Citizenship Clause's guarantees. That is why the Court enjoined *only* enforcement of a specific executive order that would have excluded children from the Citizenship Clause on the basis of their parents' being unlawfully or temporarily present in the United States, without more. There is no good reason for this Court to stretch its order any further in the context of this case.

Plaintiffs would have this Court imagine that the recent Executive Order is an attempt to circumvent the current preliminary injunction, even though the order explicitly explains that it is operating *within* the framework set out in *Barbara*. *See* 91 Fed. Reg. at 51991; *see also Trump v. Hawaii*, 585 U.S. 667, 704–05 (2018) (disfavoring looking beyond the "stated objective" in assessing legality of government action). None of Plaintiffs' cited cases support their elastic view of this Court's injunction. No one disputes that Defendants may not enlist a third-party to somehow enforce the 2025 Executive Order against the class, *United States v. Robinson*, 83 F.4th 868, 884–85 (11th Cir. 2023) (explaining that injunctions also bind aiders-and-abettors), or that Defendants may not reissue and subsequently enforce a "slightly altered" version of the 2025 Executive Order, *Colors+ v. Colors+ Counseling, LLC*, 782 F. Supp. 3d 579, 639 (N.D. Ohio 2025), *clarified*, No. 1:25-cv-00078, 2025 WL 2322784 (N.D. Ohio Aug. 12, 2025). But those banalities do not mean that agencies are barred from implementing a *new* executive order affecting *different* parties based on a *different* legal theory that the parties have never argued and this Court has never considered.

Contrary to Plaintiffs' assertion, this case is *not* "about the President's effort to fashion new exceptions to birthright citizenship." Mot. 1. It has always been about Plaintiffs' challenge to a particular executive order, which set out the Government's *interpretation* of the Fourteenth Amendment. Everything in this case—from the Complaint, to the named Plaintiffs, to the class they purport to represent—has been tailored to the Executive Order signed on day one of this Administration. This Court enjoined that order, but did not purport to enjoin the President from ever again attempting to implement the guarantees and limitations of the Citizenship Clause going forward.

## II. This Court Should Deny Plaintiffs' Requested Injunction.

Plaintiffs' true wish is for this Court to enter a "new preliminary injunction," this time enjoining Defendants from implementing the 2026 Executive Order. Mot. 8. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Together Emps. v. Mass. Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022) (citation omitted and emphasis added); *see also Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984) ("When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place."); *accord* Mot. 6. Failure to meet any of those requirements is sufficient grounds for the Court to deny the preliminary injunction. *Together Emps.*, 32 F.4th at 85.

Plaintiffs do not meet these requirements. They insist that "this Court has already found that the class has satisfied the preliminary injunction factors," Mot. 8, but that is not true; this Court found that the class satisfied the preliminary injunction factors as to the 2025 Executive Order. Now that Plaintiffs seek this Court's judgment on a different executive order issued nineteen months later, this Court must assess the preliminary injunction factors anew.

Those factors militate against granting a preliminary injunction. For starters, Plaintiffs' motion does not identify evidence that the new executive order applies to them. More to the point, Plaintiffs are unlikely to succeed in a class-action challenge to the 2026 Executive Order. The only operative complaint in this case does not even purport to challenge the new Executive Order, and there is no indication that the provisionally certified class can satisfy Rule 23's requirements as to the 2026 Executive Order. And even if they could, the new Executive Order is consistent with the Constitution and the Supreme Court's precedents interpreting it, including *Barbara*. Contrary to Plaintiffs' suggestions, it is perfectly permissible for the President to take action to implement constitutional guarantees and their concomitant limits.

Furthermore, because Plaintiffs cannot show *any* injury from the new Executive Order, they necessarily cannot show *irreparable* injury. Nor can they demonstrate the *imminent* harm that movants must show to merit a preliminary injunction. The ink has not even dried on the 2026 Executive Order,

which can only have practical effect when the "heads of all executive departments and agencies" issue "public guidance" regarding the "order's implementation with respect to their operations and activities." 91 Fed. Reg. at 51992. In other words, the Executive Order does not have an imminent effect on *anyone*.

This Court should accordingly deny Plaintiffs' motion.

### A. Plaintiffs lack standing to seek an injunction of Executive Order 14,418.

"At the preliminary injunction stage, the plaintiff must make a clear showing that she is likely to establish each element of standing." *Woonasquatucket River Watershed Council v. USDA*, --- F.4th ---, No. 25-1428, 2026 WL 2279789, at *4 (1st Cir. 2026) (alteration and citation omitted). That requires "(1) an injury-in-fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citation modified). Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 371–72 (1st Cir. 2023) (citation omitted).

There is no exception to Article III's requirements for putative class actions. "[I]n a class action, . . . federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 586 U.S. 485, 492 (2019); *see also In re Asacol Antitrust Litig.*, 907 F.3d 42, 48 (1st Cir. 2018) ("In a class action suit with multiple claims, at least one named class representative must have standing with respect to each claim." (citation omitted)). To establish standing, "named plaintiffs who represent a class must allege and show a past or threatened injury to *them*, and not just to other, unidentified members of the class to which they belong and which they purport to represent." *Amrhein v. eClinicalWorks, LLC*, 954 F.3d 328, 331 (1st Cir. 2020) (citation modified). And standing for each unnamed class member must ultimately be established before he can receive relief, injunctive or otherwise; "Article III does not give federal courts to order relief to *any* uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted).

Plaintiffs do not even attempt to carry their burden of showing that they have standing to seek an injunction against the 2026 Executive Order. Absent from the Complaint and their Motion are allegations that the named Plaintiffs fall within the new Executive Order's categories—an omission that is not surprising because the new Executive Order didn't exist at the time Plaintiffs filed their complaint. Indeed, Plaintiffs implicitly concede that they cannot identify *any* class member, named or unnamed, who fits the bill; they can only say that "*to the extent* that [the new Executive Order] seeks [] to deny citizenship to class members, it does so illegally." Mot. 9 (emphasis added). And though Plaintiffs complain that the Executive Order is "open-ended," *Id.* 12, that would only go to show that Plaintiffs' request has the additional threshold flaw of being unripe—at least until the agencies issue guidance.

Setting aside Plaintiffs' failure to demonstrate standing (as is their burden), this Court cannot provide the *classwide* preliminary injunction Plaintiffs seek. As the Supreme Court has made clear, a court can only provide classwide relief if *every* member of the class has standing to receive it—whether that relief is "injunctive relief" or "damages." *TransUnion*, 594 U.S. at 431. And—as with the named Plaintiffs themselves—that class members' parents were illegal or temporarily present aliens tells this Court nothing about whether those parents were alien enemies, birth tourists, or foreign government employees.

In short, Plaintiffs fail to demonstrate standing to seek *any* injunction against the 2026 Executive Order at all, let alone a *classwide* injunction.

**B. Plaintiffs cannot satisfy Rule 23's requirements as to the new Executive Order.**

There is yet another problem with Plaintiffs' request for a classwide preliminary injunction. To bring a class action, Plaintiffs must satisfy the numerosity, commonality, typicality, and adequate representation requirements of Federal Rule of Civil Procedure 23(a). In this case, Plaintiffs have always sought class certification under Rule 23(b)(2), which permits class actions where "the party

opposing the class has acted or refused to act on grounds that apply generally to the class" such that "final injunctive relief" is "appropriate respecting the class as a whole." Here, the relevant "act" is (forthcoming) agency enforcement of the 2026 Executive Order.

Now that they attempt to insert a new government action into this case, Plaintiffs cannot rest on their laurels. "Even after a certification order is entered," this Court "remains free to modify it in light of subsequent developments in the litigation." *Voss v. Roland*, 592 F.3d 242, 251 n.17 (1st Cir. 2010). And, for much the same reasons that Plaintiffs fail to demonstrate standing to challenge the new Executive Order, they cannot satisfy Rule 23 either. A "very small class may not meet the numerosity requirement because joinder of all members is practicable." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131 (1st Cir. 1985); Fed. R. Civ. P. 23(a)(1) (class action appropriate only when "the class is so numerous that joinder of all members is impracticable"). Here, the class is not just "small"—Plaintiffs have not identified *anyone* who would be affected by the 2026 Executive Order. Nor can Plaintiffs satisfy the commonality requirement of Rule 23(a)(2). The "determination of" any dispute over the new Executive Order would *not* "resolve an issue that is central to the validity of each one of the claims in one stroke," because Plaintiffs have not identified *anyone* who has *any claim* against the new Executive Order. *Parent/Professional Advocacy League*, 934 F.3d 13, 28 (1st Cir. 2019). Even if Plaintiffs could identify a sliver of class members who are arguably affected by the new Executive Order, that would not produce the numerous or common claims that Rule 23 requires.

And the named Plaintiffs would not be the right representatives in any event. To repeat, Plaintiffs have provided no indication that the named Plaintiffs have anything to do with the 2026 Executive Order. Thus, if there are any class members who are able to challenge the new Executive Order, their claims and defenses would differ from the named Plaintiffs' (who appear to have none). Fed. R. Civ. P. 23(a)(3). Nor would named Plaintiffs who have no personal interest in challenging the 2026 Executive Order provide adequate representation for class members who do. Fed. R. Civ. P.

23(a)(4). Finally, without any demonstration from Plaintiffs that a significant number of class members would fall within the new Executive Order's terms, "final injunctive relief" would not be "appropriate" for "the class as a whole." Fed. R. Civ. P. 23(b)(2). Class members cannot receive injunctive relief against an executive order that does not even apply to them. *See TransUnion*, 594 U.S. at 431.

None of this should be surprising. It would have been a remarkable coincidence if Plaintiffs' proposed class—handpicked for a particular, nineteenth-month old Executive Order—managed to have standing and to satisfy Rule 23 as to an entirely new Executive Order that had not even been written yet. These threshold problems with Plaintiffs' newest request for injunctive relief only serve to confirm that this is not the correct time, case, or forum to challenge the 2026 Executive Order.

**C. Plaintiffs' request is unripe.**

Plaintiffs' request is also "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 592 U.S. 125, 131 (2020) (internal quotation marks omitted). That makes their request classically unripe.

For a case to be ripe for adjudication, it must not be "riddled with contingencies and speculation that impede judicial review." *Id.* at 131. For that reason, in *Trump v. New York*, the Supreme Court held that a Presidential directive announcing a policy to exclude illegal aliens from the census was unripe for judicial review because it directed only that the Secretary of Commerce gather information "to the extent practicable" and that aliens be excluded "to the extent feasible." *Id.* Likewise, recently, in *Trump v. California*, 609 U.S. ---, slip op. at 2 (2026), the Supreme Court stayed an injunction of a Presidential directive ordering various agencies to take "appropriate" action—including sending citizenship lists to states "to the extent feasible" and "initiat[ing] a proposed rulemaking"—to maintain election integrity. As the Supreme Court explained, the challenge to that directive was unripe because "[a]ny prediction how the Executive Branch might eventually

implement" it "is no more than conjecture." *Id.* at 4 (internal quotation marks omitted). In particular, the challenge to the directive to "initiate a proposed rulemaking" necessarily required "speculat[ion] about what the final rule would say" and "whether the text of a hypothetical final rule would harm" the plaintiffs. *Id.* at 7–8. "Article III demands more certainty" than that. *Id.* at 5.

Under these principles, Plaintiffs' challenge to the 2026 Executive Order is unripe too. The new Executive Order directs various agency heads to "take all appropriate measures to ensure" that their regulations and policies "are consistent with this order." 91 Fed. Reg. at 51992. And it further directs all agency heads to "issue public guidance . . . regarding" the Executive Order's "implementation with respect to their operations and activities." *Id.* Thus, "how the Executive Branch might eventually implement" the Executive Order "is no more than conjecture at this time." *New York*, 592 U.S. at 131. As in *Trump v. New York*, the "Government's eventual action will reflect both legal and practical constraints," and "any prediction about future injury [is] just that—a prediction." 592 U.S. at 133. And as in *Trump v. California*, slip op. at 8, federal courts do not review "antecedent internal directives to propose" guidance. Plaintiffs' challenge is thus nonjusticiable twice over.

**D. Plaintiffs cannot show any likelihood of success on the merits.**

To demonstrate likelihood of success on the merits, Plaintiffs "must establish a 'strong likelihood' that they will ultimately prevail"—a "merely possibility of success" will not do. *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (quoting *Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010)). They cannot do so.

To start, Plaintiffs' Complaint says nothing at all about the 2026 Executive Order, and their request for a preliminary injunction before even formally challenging the Executive Order has the order of operations exactly backwards. The point of a preliminary injunction is "to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's

merits, more effectively to remedy the discerned wrongs." *CMM Cable Rep., Inc. v. Ocean Coast Props.*, 48 F.3d 618, 620 (1st Cir. 1995). That necessarily presupposes that the court *will* "fully adjudicat[e] the merits," *id.*, which itself depends on whether the complaint raises the claim at all, *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (noting that the complaint "controls the case"). For that reason, courts routinely reject requests for preliminary injunctions when "based on new assertions" that are "entirely different from the claim raised and the relief requested" in the operative complaint. *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *see also id.* ("Although these new assertions might support additional claims . . ., they cannot provide the basis for a preliminary injunction in this lawsuit."); *Stewart v. U.S. INS*, 762 F.2d 193, 199 (2d Cir. 1985) (denying motion for preliminary injunctive relief because it "present[ed] issues which are entirely different from those which were alleged in [the] original complaint"); *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997) (noting that "a preliminary injunction may never issue to prevent an injury or harm" that was not "caused by the wrong claimed in the underlying action."). In other words, without an up-to-date complaint, Plaintiffs' injunctive request cannot even get off the ground.

Regardless, even assuming Plaintiffs have standing, that they have proposed an appropriate class, and that they have brought an amended complaint, they cannot succeed on their central merits claim that the 2026 Executive Order runs afoul of *Barbara* and *Wong Kim Ark*.

As explained, because there is no firm guidance yet issued by the agencies, and because the Executive Branch retains significant discretion in how to implement the new Executive Order, the dispute cannot possibly be ripe for adjudication even at a preliminary injunctive stage. Plaintiffs cannot show that any future implementation is foreclosed by *Barbara*, which did not purport to give an exhaustive definition of each exception to the default birthright citizenship rule. To give one example, while the Supreme Court has indicated some of the contours regarding which foreign representatives and family members are subject to the jurisdiction of the United States and which are

not*, see, e.g., Wong Kim Ark*, 169 U.S. at 678–79, it has never ruled on the issue comprehensively, and it did not do so in its recent decision in this case. Instead, it made a passing reference to varying concepts that it did not analyze in depth, including to "officials abroad" and "representatives of foreign sovereigns." *Barbara*, 146 S. Ct. at 2450–52.

In sum, these are the wrong Plaintiffs representing the wrong class at the wrong time to challenge the new Executive Order. Because Plaintiffs "cannot demonstrate that [they are] likely to succeed in [their] quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). Plaintiffs have no likelihood of success, and the Court should deny the requested injunction.

**E. The remaining preliminary injunction factors weigh against Plaintiffs.**

Plaintiffs cannot make the requisite showing on the remaining preliminary injunction factors, either. "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II, Ltd., P'ship v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). As explained, Plaintiffs have not demonstrated even injury-in-fact for purposes of standing; *a fortiori*, they cannot meet the higher bar of showing irreparable harm. Furthermore, Executive Order 14,418 will not even take practical effect until "[t]he heads of all executive departments and agencies" issue "public guidance" regarding the Executive Order's "implementation with respect to their operations and activities." 91 Fed. Reg. at 51992. In these circumstances—where guidance has not yet issued, and Plaintiffs cannot specifically identify anyone who will be impacted by the 2026 Executive Order—all that is before the Court are Plaintiffs' "unsubstantiated fears of what the future may have in store." *Charlesbank*, 370 F.3d at 162. That dooms Plaintiffs' request for injunctive relief as well.

Plaintiffs cannot show that they have *any* equities in a challenge to the 2026 Executive Order. By contrast, at stake for Defendants is the ability to effectuate the guarantees and limits of the

Citizenship Clause and the INA. *See Trump v. CASA, Inc.*, 606 U.S. 831, 860–61 (2025). And *any* injunction against Executive Order 14,418 in this case would be necessarily overbroad, in the absence of any allegations that any party is actually affected by it. *Id.* The balance of the equities tips in Defendants' favor.

### III. This Court Should Stay Any Preliminary Injunction Pending Appeal And A Bond Should Be Required.

To the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that is authorized. In evaluating a stay request, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). For the reasons explained above, Defendants are likely to prevail on the merits, and the remaining stay factors would favor relieving Defendants of an injunction falling far outside the scope of this case. *See CASA*, 606 U.S. at 860–61.

Additionally, if the Court enters a preliminary injunction, Defendants are entitled to a bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure. Under that rule, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiffs' requested preliminary injunction seeks to require Defendants to extend federal benefits to persons deemed by Defendants to lack an entitlement to those benefits. Assuming (as Plaintiffs must to ask for such relief in the first place) that such class members exist, the cost to the United States would be substantial, and this should be reflected in the bond accompanying a preliminary injunction.

## CONCLUSION

This Court should deny Plaintiffs' motion.

Dated: August 25, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSHUA HA
Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

*/s/ Brad P. Rosenberg*
BRAD P. ROSENBERG
(D.C. Bar No. 467513)
Chief Litigation Counsel
KATHLEEN C. JACOBS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-514-3374
Fax: 202-616-8460
Email: brad.rosenberg@usdoj.gov

*Attorneys for Defendants*