**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

"BARBARA," *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Case No. 1:25-cv-244-JL-AJ

**REPLY IN SUPPORT OF MOTION TO CLARIFY THE PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO MODIFY, OR TO ISSUE NEW PRELIMINARY INJUNCTION**

This case arose from Defendants' effort to rewrite longstanding constitutional and statutory rules governing birthright citizenship by executive action. Plaintiffs conclusively won that issue at the Supreme Court. But instead of acceding, Defendants have now doubled down and are engaging in a new effort to strip citizenship via executive fiat. It is now clear that Plaintiffs need clarified or additional protection from this continuing campaign against birthright citizenship.

In light of these circumstances, Plaintiffs ask this Court for an unmistakable statement that Defendants are enjoined from taking "any actions to deny or infringe on the citizenship of class members, except for those born to a foreign diplomatic officer identified in the State Department 'Blue List.'" Mot. 6. That is essentially a restatement of the injunction the Court already issued. Defendants claim this represents a "smorgasbord of new requests." Opp. 2. But regardless of how the Court chooses to characterize its order, the core of Plaintiffs' requested relief is the same—an order affirming Class Members' citizenship and preventing Defendants from creating new exceptions to the guarantees of the Fourteenth Amendment and the citizenship statute. And that request is one that the class has standing to seek, is amply supported by this Court's prior analysis along with the subsequent decisions of the Supreme Court and the First Circuit, and is well within the Court's discretion to grant.

Remarkably, Defendants' opposition addresses almost none of these points. It does not even mention the actual injunctive language Plaintiffs requested. It does not dispute either Plaintiffs' standing based on EO1, or their likelihood of success on their claims. Nor does it offer *any* argument or authority as to why Plaintiffs' requested injunction should not be granted—either at the beginning of this case or now. Instead, Defendants rely entirely on attacking a straw man—their assessment of "Plaintiffs' true wish." Opp. 9. They argue that a new preliminary injunction motion seeking relief only against EO2 would face various barriers including standing. But that

misses the mark—Plaintiffs want to stop Defendants from continuing to take executive actions to illegally strip birthright citizenship. And unlike other contexts, in which the failure of one executive action might leave space for a different one, here the Supreme Court reaffirmed that the exceptions to birthright citizenship—today, only those born to foreign ministers—arise only from the Citizenship Clause itself, leaving no space for these or any other executive efforts to strip away that citizenship. Defendants' utter inability to rebut Plaintiffs' actual requests and arguments speaks volumes. The Court should grant the motion.[1]

## ARGUMENT

### I. DEFENDANTS IGNORE THE ACTUAL RELIEF REQUESTED: PROTECTION AGAINST THE CONTINUING ATTACK ON THEIR CITIZENSHIP.

Plaintiffs' motion offers the Court a menu of pathways to provide essentially the same relief: an indisputable statement that Defendants may not take executive actions to strip away Plaintiffs' citizenship. In response, Defendants have little to say about the actual relief Plaintiffs requested. Instead, they seek to rewrite the motion, acting as though Plaintiffs had instead sought an injunction specifically about EO2, rather than an injunction that bars Defendants from continuing their effort to carve out novel and unlawful exceptions to the Fourteenth Amendment and the statute. As such, most of the opposition is irrelevant to this motion and may be set aside.

In one regard, Defendants do engage with Plaintiffs' actual motion. They argue that EO2 does not already violate the Court's existing injunction. Opp. 2, 7, 8. Plaintiffs disagree, but there is no need for the Court to resolve that question; Plaintiffs are not, for example, seeking sanctions or a contempt finding. Rather, they seek only an order indisputably protecting their citizenship

[1] Plaintiffs understand this motion to qualify as dispositive under LR 7.1(g), and accordingly have filed a reply of no more than ten pages. *See* LR 7.1(e)(1).

from the Executive Branch's interference. To the extent the existing injunction does not already provide such protection (as Defendants assert), that is all the more reason to clarify or modify it, or issue supplemental injunctive relief as Plaintiffs have requested.

In the same vein, Defendants posit that "[t]he Court never purported to completely guarantee class members birthright citizenship in every circumstance going forward" and instead simply enjoined EO1. Opp. 8. To be sure, the President's initial attack on birthright citizenship was entirely contained in EO1. But that is not an argument against clarification or modification *today*, as the Administration has demonstrated an intention to continue attacking birthright citizenship through EO2 and perhaps future orders and actions. That continued campaign militates for, not against, the requested relief. *See Brown v. Plata*, 563 U.S. 493, 542-43 (2011) (a court "must remain open to a showing or demonstration . . . that the injunction should be altered to ensure that the rights and interests of the parties are given all due and necessary protection").

## II. THE COURT SHOULD GRANT THE REQUESTED RELIEF.

### A. Plaintiffs Continue to Have Standing.

Defendants contest Plaintiffs' standing. But there can be no dispute that every Class Member suffers injury in fact, traceable to Defendants' efforts to strip birthright citizenship, and redressable by an injunction against Defendants' ongoing efforts. Indeed, the Court previously issued an injunction to this class on that basis. Nothing material has occurred to undermine standing. Indeed, the government recently agreed to summary judgment in another challenge—recognizing similarly situated plaintiffs' continued standing. *See* Joint Status Report, *OCA-Asian Pac. Am. Advocs. v. Rubio*, No. 25-287 (TJK) (D.D.C. Aug. 14, 2026), ECF No. 49; *OCA-Asian Pac. Am. Advocs. v. Rubio*, No. 25-287 (TJK) (D.D.C. Aug. 20, 2026), ECF No. 51.

Of course, plaintiffs must have standing as to the *relief* they seek. But Defendants offer no argument that this class lacks standing to seek an injunction against "any actions to deny or infringe on the citizenship of class members[.]" Mot. 6. Plaintiffs are currently subject to at least one such action—EO1—and Defendants have made clear that they will continue to issue Executive Orders or take other actions to unlawfully strip people of birthright citizenship. Plaintiffs' requested injunction here seeks to prevent Defendants from engaging in such efforts. Indeed, if Plaintiffs had known last year that Defendants would not cease their efforts, even after a definitive Supreme Court loss, they likely would have sought such an injunction at the outset. And certainly Plaintiffs would have had *standing* to seek such relief in 2025. The same remains true today.

In any event, Defendants are wrong to claim that "Plaintiffs implicitly concede that they cannot identify *any* class member, named or unnamed," who would have standing to challenge EO2 in a new, standalone suit. Opp. 12. As Plaintiffs already explained, Barbara herself "might be found" to fall within the terms of EO2 § 2(c)(i). Mot. 14 (citing declaration). Her child is therefore at least "arguably" subject to EO2 and has standing to challenge it. Opp. 13; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014). Defendants offer no response.[2]

**B. Plaintiffs Continue to Satisfy the Preliminary Injunction Factors.**

1. Defendants offer almost no arguments against the relief as requested. Defendants could hardly contest that Plaintiffs have shown irreparable injury or that the balance of equities strongly favors Plaintiffs; this Court already held this class was entitled to equivalent relief, and the First Circuit affirmed injunctions involving the same equities. Mot. 3, 8-9. The equities as relevant to

---

[2] Defendants recycle their reliance on *TransUnion LLC v. Ramirez*, Opp. 11, but Plaintiffs already explained that *TransUnion* speaks only to recovery of "damages," 594 U.S. 413, 431 (2021). *See* ECF No. 57, at 8 n.7; *see also Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81, 114-15 (D.C. Cir. 2026) (explaining that *TransUnion* does not apply to injunctive claims). In any event, as explained above, all members of the class have standing.

Plaintiffs' current motion—which requests little more than restating the prior injunction and confirming the Class Members' constitutional right to birthright citizenship—are no different.

As for likelihood of success on the merits, Plaintiffs' case has likewise only gotten stronger since the original preliminary injunction. Plaintiffs laid out in detail, Mot. 3-4, 7, the ways in which this Court, the First Circuit, and the Supreme Court reiterated the rule—recognized for well over a century—that apart from the exceptions recognized in *Wong Kim Ark*, "all others" born in the United States are "citizens at birth." *Trump v. Barbara*, 146 S. Ct. 2438, 2452 (2026). As Justice Kavanaugh recognized, the rule established in *Wong Kim Ark* and reaffirmed in *Barbara* is that those exceptions are "a closed set." *Id.* at 2470 (Kavanaugh, J., concurring in the judgment in part and dissenting in part). Because the only exception relevant today is for children of foreign ministers, Plaintiffs are as likely to succeed on the merits in seeking an injunction with the language requested in this motion as they were in seeking the original injunction.

Defendants mostly ignore all this. They do not contest that the *Wong Kim Ark* exceptions are a closed set; indeed, it would be hard to do so, given that this was a central point of dispute in the Supreme Court proceedings, as reflected in Justice Kavanaugh's dissent from the majority's view on precisely this point. And, of course, the First Circuit has likewise held that the *Wong Kim Ark* exceptions are "exclusive." *Doe v. Trump*, 157 F.4th 36, 61 (1st Cir. 2025).

Nor do Defendants contest that today the only relevant exception set forth in *Wong Kim Ark* is for the children of foreign ministers (though as discussed below they do seek to expand that exception). Mot. 6. That being the case, Plaintiffs have demonstrated an entitlement to the requested injunctive relief (whether through clarification, modification, or supplemental injunction). If, as the Court has confirmed, the Citizenship Clause guarantees citizenship "to nearly all children born in the United States," *Barbara*, 146 S. Ct. at 2453, save only the exceptions

articulated in *Wong Kim Ark*; and if the only relevant *Wong Kim Ark* exception today is for children of foreign ministers; then an order barring actions to deny birthright citizenship to class members, with a carveout for children of foreign ministers, is appropriate and justified. That is precisely what Plaintiffs seek.

Defendants' related class arguments thus fail. The class here is already certified, and satisfies all the requirements of Rule 23. In particular, the determination of their declaratory and injunctive claims indeed can be resolved "in one stroke"—namely the clarified, modified, or supplemental injunction requested in this motion. And the legal issue has *already* been resolved by the Supreme Court's reaffirmation of *Wong Kim Ark*'s closed set. There is no class action barrier to the requested relief.[3]

2. Nothing in EO2, or the new "theory" it advances, Opp. 9, undermines that conclusion.[4]

As a general matter, Defendants suggest that under *Barbara* a U.S.-born child may be excluded from birthright citizenship if an "extraterritorial fiction" applies to her parents. Opp. 3, 6 (quoting 146 S. Ct. at 2449). But *Barbara* does not say that. Rather, the Court was clear: The essence of the Citizenship Clause's requirement that a child be "subject to the jurisdiction" of the United States is "the power of the United States to govern those within its territory." 146 S. Ct. at 2450 ("The Citizenship Clause uses jurisdiction in its ordinary sense"); *id.* at 2453 (The Clause "guarantee[s] citizenship to all children born in the United States and subject to its power"). An

[3] To be clear, Plaintiffs seek relief only for the certified class—which is the children subject to EO1. Defendants' opposition indicates that EO2 is not an amendment of EO1, Opp. 2, raising further concerns that EO2—far from being "narrower," *id.* at 1—impacts children of lawful permanent residents and could even be applied retroactively, *see* Mot. 5 (noting absence of limiting language from EO1 in EO2). Those implications are troubling, but the Court need not resolve them to grant the requested relief for the class.

[4] Defendants urge the Court to accept EO2's statement that it "is operating *within* the framework set out in *Barbara*." Opp. 9. EO2's inconsistency with the Supreme Court's conclusion is clear, however, on the document's face. The Court does not need to make findings about the President's intent to conclude that EO2 provides no basis to deny the requested relief.

extraterritorial fiction *explained* why U.S. law did not apply to the U.S.-born children of ambassadors, for example; that fiction clothed them in full diplomatic immunity, thereby removing them from the power of the United States. Mot. 9-10. In any event, Defendants do not even try to explain how their invocation of extraterritorial fictions bars relief here.

Defendants also do not even attempt to argue that two sections of EO2—§ 2(a) (which applies to "alien enemies") or § 2(c) (which applies to persons engaged in "commercial transactions" or "fraudulent activity" to gain citizenship)—would justify denying Plaintiffs relief. With good reason. As previously explained, as to § 2(a), the only possibly relevant *Wong Kim Ark* exception is for children born in certain *occupied territory*. *See* Mot. 11-12; Opp. 6 (noting that *Barbara* "approved of [the] earlier decision in *Wong Kim Ark*, which articulated a general rule of birthright citizenship, but excluded," *inter alia*, "'enemies within and during a hostile occupation of part of our territory'") (quoting 169 U.S. at 693). There is no such occupied territory. And § 2(c) has no relation to any of the *Wong Kim Ark* exceptions. Mot. 13-14. It is simply a policy preference. Defendants offer no response on either point.

The only portion of EO2 Defendants even try to invoke is § 2(b), which purports to strip citizenship from a wide swath of children born to employees of foreign governments and international organizations. *See* Mot. 10. As Plaintiffs set forth, the rule established in *Wong Kim Ark*, reiterated in *Barbara*, and reflected in the Executive's own longstanding regulations, is that *only* the children of officials with full diplomatic immunity—and who are themselves clothed in such immunity—are outside the jurisdiction of the United States. *Id*. at 9-10. That narrow exception is no reason to deny the requested relief. While Defendants argue that "the class *could* include children of ambassadors, who all would agree fall outside of the Citizenship Clause's guarantees," Opp. 8, Plaintiffs' requested relief accounts for that possibility by carving out such

children from the injunction, Mot. 6 (referring to the State Department's "Blue List" of such officials).

Defendants attempt to inject ambiguity into this issue where none exists. They argue that the Court has only "indicated some of the contours regarding which foreign representatives and family members are subject to the jurisdiction of the United States," leaving it up to the President to exclude any other foreign government employees. Opp. 16. But, recall, *Barbara* reaffirmed *Wong Kim Ark*'s closed set of exceptions. The relevant exception here is for "children of foreign sovereigns or their ministers[.]" *Wong Kim Ark*, 169 U.S. at 693. The Court expressly distinguished such ministers—who, along with their children, are immune and thus outside the jurisdiction of the United States—from lower foreign-government officials and employees (like consuls) who "are not . . . entitled by the law of nations to the privileges and immunities of ambassadors or public ministers, but are subject to the jurisdiction, civil and criminal, of the courts of the country in which they reside." *Id.* at 678-79. Again, as *Barbara* reiterated, the point is whether the United States has "power" over those individuals, not whether they are employed by a foreign government. 146 S. Ct. at 2450. Defendants offer no response to any of this.

**C. The Court Should Exercise Its Discretion to Grant the Requested Relief.**

Given that the Court *can* grant the requested relief—as Plaintiffs have clear standing to seek it and prevail on all the preliminary injunction factors—there is no reason for the Court to decline to do so. To the contrary, the circumstances cry out for this Court's prompt intervention.

Class Members and their families have lived under the shadow of lawless executive action stripping their constitutionally guaranteed citizenship for 18 months. They joined issue with the Executive and fought this case to decision at the U.S. Supreme Court. And they won. The result

should be the benefit of the legal rule reiterated in *Barbara*—not a requirement that they relitigate in a new "time, case, or forum," Opp. 14, simply to land in the same place.

To be sure, as Defendants argue, the terms of the injunction and other aspects of this litigation to date focused on EO1. But that cannot limit the relief to which Plaintiffs are otherwise entitled. As explained above, Plaintiffs could have sought, and the Court could have granted, precisely the requested injunction—a bar against Defendants' efforts to strip birthright citizenship—at the outset of this case. And Plaintiffs likely would have done so had they known that EO1 was only the start of Defendants' campaign. That the President has subsequently chosen to expand his attack on class members' citizenship in yet another Executive Order cannot *reduce* the relief for which Plaintiffs are eligible and which they should be granted.

Defendants demand "an up-to-date complaint" before the requested relief can be considered. Opp. 16. But the Complaint put them on clear notice of Plaintiffs' central argument:

> The term "subject to the jurisdiction" excludes only a few inapplicable categories—today, just the children of foreign diplomats. All other children born in the United States are citizens, no matter the immigration status of their parents.

ECF No. 1 ¶ 75 (First Claim for Relief). That, of course, is precisely the clarified or modified relief Plaintiffs now seek. That Defendants subsequently chose to issue a new Executive Order and advance a new legal theory is beside the point.[5]

Defendants also argue that Plaintiffs did not specifically set forth the relief they now seek in the Prayer for Relief. Opp. 4. But they sought "any other and further relief that this Court may deem just and proper[,]" which is plenty. ECF No. 1, at 16. Such nitpicking is no reason to permit children's citizenship to be stripped in the teeth of the Supreme Court's definitive ruling just

[5] To the extent the Court deems further allegations necessary, Plaintiffs are prepared to amend their complaint. Plaintiffs do not oppose Defendants' request, Opp. 7 n.1, to defer their Answer.

months ago. *See Lynch v. Dukakis*, 719 F.2d 504, 508-09 (1st Cir. 1983) (affirming preliminary injunction as to "issues that were not raised in the complaint").[6]

Finally, Defendants suggest that it is too soon to reach the issue, as the agencies have not yet issued their guidance. Opp. 3, 14-15. But for all the reasons explained above, Plaintiffs are already entitled to the relief they seek here—indeed, that relief would have been warranted even before EO2 was issued, and the President's ongoing attack on birthright citizenship makes the relief more, not less, appropriate. And regardless of what the guidance says about EO2, that guidance cannot expand the closed set of exceptions recognized in *Wong Kim Ark*—so nothing about this motion turns on what it may contain. Defendants cite *Trump v. New York*, but there the injunction barred the Secretary of Commerce from "informing the President" about census numbers of undocumented individuals, for fear of "action that the Secretary or President *might* take in the future." *Trump v. New York*, 592 U.S. 125, 133 (2020); *see also Trump v. California*, 609 U.S. __, __ (2026) (slip op. at 2) (similar). Here, as explained, Plaintiffs are already harmed, and the requested relief is entirely appropriate and warranted.

**CONCLUSION**

The Court should GRANT the motion to clarify the preliminary injunction or, in the alternative, modify or issue a new preliminary injunction. For the foregoing reasons, the Court should also deny a stay. It should again require nominal bond of $1. *See* ECF No. 65, at 35-36.

---

[6] Defendants' cited cases are far afield. In *Devose v. Herrington*, a pro se plaintiff asserting Eighth Amendment claims concerning denial of medical treatment sought a preliminary injunction about the "entirely different" issue of disciplinary charges. 42 F.3d 470, 471 (8th Cir. 1994). *See also Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997) (preliminary injunction motion contradicted theory of complaint). And in *De Beers Consol. Mines v. United States*, a preliminary injunction granted relief that would have been unavailable at final judgment under the relevant statute. 325 U.S. 212, 220 (1945); *see Stewart v. U.S. INS*, 762 F.2d 193, 199 (2d Cir. 1985) (addressing jurisdictional issue involving overlap between EEOC and MSPB proceedings).

Dated: August 28, 2026

/s/ SangYeob Kim
SangYeob Kim (N.H. Bar No. 266657)
Gilles R. Bissonnette (N.H. Bar No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
Chelsea Eddy (N.H. Bar No. 276248)
Caroline Meade (N.H. Bar No. 281341)
Maria Savarese (N.H. Bar No. 273285)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
T: (603) 333-2081
sangyeob@aclu-nh.org
gilles@aclu-nh.org
henry@aclu-nh.org
chelsea@aclu-nh.org
caroline@aclu-nh.org
maria@aclu-nh.org

Elizabeth Caldwell*
Brittany Carter*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector St., FL 5, New York, NY 10006
T: (212) 217-1690
bcaldwell@naacpldf.org
bcarter@naacpldf.org

Morgan Humphrey*
Mide Odunsi*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
T: (202) 249-2193
mhumphrey@naacpldf.org
modunsi@naacpldf.org

Carol Garvan (N.H. Bar No. 21304)
Zachary L. Heiden*
Max Brooks*
AMERICAN CIVIL LIBERTIES UNION OF MAINE

Respectfully submitted,

/s/ Cody Wofsy
Cody Wofsy*
Hannah Steinberg*
Stephen Kang*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
hsteinberg@aclu.org
skang@aclu.org

Grace Choi*
Noor Zafar*
Lee Gelernt*
Omar Jadwat*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
gchoi@aclu.org
nzafar@aclu.org
lgelernt@aclu.org
ojadwat@aclu.org

Lucia Goin**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
915 15th Street NW
Washington, DC 20005
T: (332) 529-3732
lgoin@aclu.org

Norm Eisen*
Tianna Mays*
Taryn Wilgus Null*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, #15180
Washington, DC 20003
T: (202) 594-9958
norman@democracydefenders.org
tianna@democracydefenders.org

FOUNDATION
P.O. Box 7860
Portland, ME 04112
T: (207) 619-8687
cgarvan@aclumaine.org
heiden@aclumaine.org
mbrooks@aclumaine.org

Adriana Lafaille*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza Suite 850
Boston, MA 02108
T: (617) 482-3170
alafaille@aclum.org

taryn@democracydefenders.org

Kimberly Wei Leung*
Winifred Kao*
ASIAN LAW CAUCUS
55 Columbus Ave
San Francisco, CA 94111
T: (415) 896-1701
kimberlyl@asianlawcaucus.org
winifredk@asianlawcaucus.org

*Counsel for Plaintiffs*
**Admitted pro hac vice*
***Pro hac vice pending*