**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| "BARBARA," *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-244-JL-AJ |

**MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION;**
**REQUEST FOR EXPEDITED TREATMENT, LR 7.1(f)**

This Court previously certified a nationwide class and enjoined the President's first effort to strip children born in the United States of their citizenship. *See* Exec. Order No. 14,160, *Protecting the Meaning and Value of American Citizenship*, 91 Fed. Reg. 8,449 (2025) ("EO1"). The Supreme Court affirmed that injunction, confirming that the only exceptions to universal birthright citizenship are those set forth in *United States v. Wong Kim Ark*, 169 U.S. 649 (1898). *See Trump v. Barbara*, 146 S. Ct. 2438 (2026).

Despite that clear ruling, the President has now tried again, identifying a new (though significantly overlapping) set of people whose citizenship he seeks to deny in violation of the Fourteenth Amendment and 8 U.S.C. § 1401. *See* Exec. Order No. 14,418, *Continuing to Protect the Meaning and Value of American Citizenship*, 91 Fed. Reg. 51,991 (2026) ("EO2"). Plaintiffs therefore respectfully move this Court to certify a class of those subject to EO2, and to issue a classwide preliminary injunction providing that Defendants are "enjoined and restrained from enforcing [EO2], and from taking any other actions to deny or infringe on the citizenship of class members."

Time is of the essence. Despite their loss at the Supreme Court, **Defendants are poised to begin denying citizenship now**; nothing in their Interim Final Rule or the guidance documents they issued this past Friday indicates otherwise. *See Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States* *7, DHS Doc. No. USCIS-2026-0496 (Sept. 9, 2026) (to be codified at 8 C.F.R. pts. 101, 264), https://public-inspection.federalregister.gov/2026-18345.pdf ("IFR"); Proposed Supplemental Complaint (collecting other guidance documents).[1] Pursuant to LR 7.1(f), Plaintiffs therefore respectfully

[1] Plaintiffs previously sought clarification or modification of the existing injunction, or issuance of a new injunction, protecting members of the existing EO1 class from EO1, EO2, and any other efforts to deny their birthright citizenship. ECF No. 80. That motion remains pending. In the meantime, in the parallel *CASA v. Trump* litigation, the court issued a preliminary injunction

request that Defendants be directed to respond to this motion, Plaintiffs' motion for class certification, and Plaintiffs' motion to supplement their Complaint by September 15th, Plaintiffs be directed to reply by September 17th, and the Court issue its ruling by September 21st. Defendants have indicated that they oppose the relief sought and object to expedited treatment of Plaintiffs' motion for preliminary injunction in light of the injunction currently in place in *CASA* and believe a normal briefing schedule is appropriate.

**BACKGROUND**

The Court is familiar with the general background of this case. On July 10, 2025, the Court provisionally certified a class of the children subject to EO1, defined as:

> All current and future persons who are born on or after February 20, 2025, where (1) that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) that person's mother's presence in the United States was lawful but temporary, and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth.

*Barbara v. Trump*, 790 F. Supp. 3d 80, 105 (D.N.H. 2025). The Court also issued an order providing that Defendants "are enjoined and restrained from enforcing" EO1. ECF No. 64. The Supreme Court affirmed that injunction. *Trump v. Barbara*, 146 S. Ct. 2438 (2026).

On August 6, 2026, after the Court's mandate, the President issued the new Order, EO2. Purporting to exercise "authority vested in me as President by the Constitution and the laws of the United States of America," the Order "identifies, non-exhaustively, and prescribes action

---

against the application of EO2 to the class certified of those subject to EO1 in that case. No. 25-cv-201, 2026 WL 2592706 (D. Md. Sept. 2, 2026). The IFR indicates (at *7) that "DHS will not take actions to implement the rule specifically to any member of the certified class [in *CASA v. Trump*], or otherwise conflict with the preliminary injunction, unless and until the government obtains relief from the injunction." IFR at *7. Because EO2 applies to people outside that class (and the class in this case), including the children of lawful permanent residents, that statement does not indicate any intention to forbear enforcement of the IFR (much less EO2) overall. And the government may seek to stay or dissolve the *CASA* injunction at any time.

concerning certain categories of children of aliens who," the President opined, "do not fall within the rule of birthright citizenship as announced by the Supreme Court." EO2. It directs executive agencies not to recognize the citizenship of individuals "when neither parent of that person is a citizen" and who fall into one of the following categories:

> a) "either parent of that person is an alien enemy, defined to include" a member of certain designated terrorist organizations;
> b) "either parent of that person is a foreign government employee," including not only ambassadors but various other employees of foreign governments or international organizations;
> c) "either parent of that person engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship";
> d) "the person is born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute."

*Id*. § 2. Agency heads were directed to "take all appropriate measures" to implement the Order, and were directed to issue public guidance. *Id*. § 3.

On August 11, Plaintiffs moved to lift the stay of proceedings in this Court; the First Circuit subsequently issued its judgment and mandate, and Defendants have not opposed lifting the stay. ECF Nos. 79, 87-1 at 7 n.1. Also on August 11, Plaintiffs moved the Court to clarify the existing preliminary injunction, to modify it, or to issue a new injunction making clear that, as to the existing class of children subject to EO1, Defendants are "enjoined and restrained from taking any actions to deny or infringe on the citizenship of class members, except for those born to a foreign diplomatic officer identified in the State Department 'Blue List.' See 8 C.F.R. § 101.3 (2025)." ECF No. 80 at 6. That motion remains pending.

On September 4, DHS issued the IFR, and other agencies issued guidance regarding EO2. The guidance documents assert that EO2 applies only prospectively; they do not attempt to explain that conclusion, nor why EO2 lacks any chronologically limiting language like that included in

EO1. *See CASA*, 2026 WL 2592706, at *9 (explaining that while EO1 limited its restrictions on citizenship to babies "'born within the United States after 30 days from the date of this order,'" EO2 "says nothing like that," and so "[t]he only fair reading of the plain language of the 2026 Executive Order is that it applies to any child who falls within any category in Section 2 of the order").

Contemporaneously with this motion, Plaintiffs have filed a motion for leave to file a Supplemental Complaint, with new plaintiffs joining this lawsuit; a motion for the new plaintiffs to proceed under pseudonym; and a motion to certify a class of individuals subject to EO2. The proposed class definition is:

> All persons, and the parents (including expectant parents) of those persons, who:
> (1) are born in the United States as defined in 8 U.S.C. § 1101(a)(38);
> (2) are not born to a foreign diplomatic officer accredited to the United States;
> (3) for whom neither parent is a U.S. Citizen; and
> (4) for whom either parent is or will be categorized by the government as falling within §§ 2(a)-(c) of Exec. Order No. 14,418, *Continuing to Protect the Meaning and Value of American Citizenship*, 91 Fed. Reg. 51,991 (2026).

**LEGAL STANDARD**

"To be granted a preliminary injunction, a plaintiff 'must establish' that: (1) it is 'likely to succeed on the merits'; (2) it is 'likely to suffer irreparable harm in the absence of preliminary relief'; (3) 'the balance of equities tips in [its] favor'; and (4) 'an injunction is in the public interest.'" *Doe v. Trump*, 157 F.4th 36, 46 (1st Cir. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (alteration in original).

**ARGUMENT**

**I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.**

A. Plaintiffs have previously briefed the constitutional and statutory merits at length, and incorporate that briefing by reference. *See* ECF Nos. 6, 57, 80, 89. In short, Plaintiffs are

extremely likely to succeed on the merits; indeed, the Supreme Court has already reiterated in this very litigation that the Fourteenth Amendment guarantees citizenship to "all children born in the United States and subject to its power," representing "nearly all children born" in this country. *Barbara*, 146 S. Ct. at 2453.

As *Barbara* explained, the Citizenship Clause constitutionalized the earlier common law of citizenship. In England, all persons born in the King's territory and under his protection were natural-born subjects. *Id*. at 2445. "Because the sovereign's power (and thus his duty) was limited in various respects, so too was the scope of this rule. He could not demand allegiance from—for he could not protect—those born in lands that he did not control." *Id*. "And the same held true for ambassadors (and their families), who were considered—by a fiction of extraterritoriality—to remain on foreign soil and thus 'under the ligeance' of their home country." *Id*. "[A]ll others born in Britain" were subjects—regardless of whether their parents had been present in the kingdom for just one day, or even had been ordered to leave those dominions on pain of "death." *Id*. at 2446.

The same rule "crossed the Atlantic" and became the law in the American colonies and then the young United States. *Id*. "[T]he antebellum era's foremost case on the topic" of citizenship by birth thus explained that such citizenship "extends to 'all persons born within the jurisdiction of the United States.'" *Id.* at 2447 (quoting *Lynch v. Clarke*, 1 Sand.Ch. 583, 668 (N. Y. Ch. 1844)). After the Supreme Court "overruled the common law" in *Dred Scott v. Sandford*, 60 U.S. 393 (1857), the people "overrule[d] the Court" by adopting the Fourteenth Amendment's Citizenship Clause. *Barbara*, 146 S. Ct. at 2448.

The Court reiterated that the meaning of that Clause is clear and simple: "A child born on American soil and subject to American law was made an American citizen." *Id*. at 2449. By requiring that a child born in this country be "subject to the jurisdiction" of the United States, the

Clause "uses jurisdiction in its ordinary sense—referring to the power of the United States to govern those within its territory." *Id.* at 2450. "The scope of that power was well settled in 1868, largely by 'the celebrated case' of [*The Schooner Exchange v. McFaddon*, 11 U.S. 116 (1812)]," which addressed the term "jurisdiction" in the context of immunity. *Id.*

*Barbara* thus reaffirmed the Court's prior holding in *Wong Kim Ark*:

> What the Court held in *Wong Kim Ark* was simple: the Citizenship Clause incorporated the common law and granted citizenship to nearly all children born in the United States. Not surprisingly, then, in the 128 years since, we have repeatedly understood the rule of *Wong Kim Ark* to guarantee citizenship to all children born in the United States and subject to its power. . . We see no reason to depart from that view today.

*Id.* at 2453.

*Wong Kim Ark* had explained that the Clause "affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country." *Wong Kim Ark*, 169 U.S. at 693. That rule was absolute "with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes." *Id.* The citizenship of "the children born within the territory of the United States of *all other persons*" is constitutionally guaranteed. *Id.* (emphasis added). That is the holding of *Wong Kim Ark*, and it is the holding of *Barbara.*

The First Circuit reached the same conclusion, holding that both *Wong Kim Ark*, and the subsequent enactment of § 1401, enshrined the rule that "the words in the Fourteenth Amendment to the Constitution, 'and subject to the jurisdiction thereof,' were meant to except three exclusive groups: the 'children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and the single additional

exception of children of members of the Indian tribes owing direct allegiance to their several tribes.'" *Doe*, 157 F.4th at 61 (citation modified).

Thus, as this Court, the First Circuit, and the Supreme Court have now all made clear, "*Wong Kim Ark* enumerated specific exceptions to the constitutional grant of birthright citizenship" and the President cannot add to or expand those exceptions. *N.H. Indonesian Cmty. Support v. Trump*, 765 F. Supp. 3d 102, 109 (D.N.H. 2025) ("*NHICS*"). As Justice Kavanaugh put it, both *Wong Kim Ark* and the *Barbara* majority were clear that these "exceptions were a closed set." *Barbara*, 146 S. Ct. at 2471 (Kavanaugh, J., concurring in the judgment and dissenting in part).

Neither the hostile occupation nor the Native American Tribes exception is relevant today. *See id.* at 2466 n.52 (Jackson, J. concurring). The Clause incorporated the common-law exception for children born to "enemies within and during a hostile occupation of part of our territory." *Wong Kim Ark*, 169 U.S. at 693; *see Barbara*, 146 S. Ct. at 2445. There is no such occupation today. Likewise, the citizenship of all children of Native Americans was recognized by statute in 1924, obviating any practical impact of that exception articulated in *Wong Kim Ark*. Indian Citizenship Act, ch. 233, 43 Stat. 253.

Thus, the only relevant exception is for the children of foreign ministers. Those children, like their parents, enjoy full diplomatic immunity. *See Moncada v. Rubio*, 153 F.4th 733, 739 (9th Cir. 2025); *Carrera v. Carrera*, 174 F.2d 496, 498 (D.C. Cir. 1949); *In re Look Tin Sing*, 21 F. 905, 906 (C.C.D. Cal. 1884) (Field, J.). Because such children are exempted from "the power of the United States to govern those within its territory" in order "to preserve its relationship with a foreign sovereign," they are not "subject to the jurisdiction" of the United States. *Barbara*, 146 S. Ct. at 2450. Those children are excluded from the class definition (because they are born "to a

foreign diplomatic officer accredited to the United States," *see* 8 C.F.R. § 101.3(a) (2025)), and are thus not at issue in this motion.

"All others [are] citizens at birth[.]" *Barbara*, 146 S. Ct. at 2452. This rule is guaranteed by both the Citizenship Clause, *see id*., and § 1401, *see Doe*, 157 F.4th at 58-64 (statute enshrined "the same broad understanding of birthright citizenship" as was reflected in *Wong Kim Ark* and longstanding administrative practice). Accordingly, Plaintiffs are entitled to an injunction precluding the application of EO2—or any other Executive Order, guidance, or action—to strip away their citizenship.

B. Nothing in EO2 warrants any contrary conclusion. It purports to "identif[y], non-exhaustively . . . categories of children of aliens who do not fall within the rule of birthright citizenship." EO2 § 1. As to each of the three categories at issue in this motion, EO2 is illegal in the same fundamental way: It tries to exclude people from birthright citizenship beyond the specific exceptions set forth in *Wong Kim Ark*. But the *Wong Kim Ark* exceptions are enshrined in the constitutional and statutory phrase, "subject to the jurisdiction," and, per *Barbara*, there is no space for the President to either expand them or fashion new ones.

*First*, § 2(a) purports to strip citizenship from the children of supposed "alien enem[ies]." That is not an exception in *Wong Kim Ark*. Rather, the common-law exception applied only to "an alien enemy *in hostile occupation* of the place where the child was born." *Wong Kim Ark*, 169 U.S. at 658 (emphasis added); *see id*. at 693 ("enemies within and during a hostile occupation of part of our territory"); *id*. at 655 ("hostile occupation"); 657-58 (same); *id*. at 665 (same); *id.* at 682 (same); *id*. at 688 (same). That "hostile occupation" condition is the reason this exception exists at all. *See Barbara*, 146 S. Ct. at 2445 (discussing exception in *Calvin's Case* for territory "temporarily outside [king's] control"). In the case of "conquest and military occupation," "[t]he

sovereignty of the [nation] over the [occupied] territory was, of course, suspended, and the laws of the [nation] could no longer be rightfully enforced" in it. *United States v. Rice*, 17 U.S. 246, 254 (1819). As such, the occupied town would be "deemed a foreign port," and "the inhabitants" "passed under a temporary allegiance to the [occupying] government, and were bound by such laws, and such only, as it chose to recognize and impose." *Id.*; *see Wong Kim Ark*, 169 U.S. at 683 (extensively discussing *Rice*). Thus, a child born to enemies in occupied territory was not "born 'under the protection of' the United States," and so not subject to its jurisdiction. *Barbara*, 146 S. Ct. at 2449. There is no occupied territory today, nor any realistic prospect for such territory; the British occupation of U.S. cities in the War of 1812 (as described in *Rice*) is a distant memory. EO2 cannot create this new exception to birthright citizenship. *See* ECF No. 80 at 12-13 (explaining that children of interned "enemy aliens" during World War II were citizens).[2]

*Second*, §§ 2(b)(ii)-(iv) purport to exclude the children of various employees of foreign governments and "international organization[s] that possess international-organization immunity," but who are not themselves entitled to full diplomatic immunity. EO2 cannot create this new exception to birthright citizenship either.[3]

Only children with full diplomatic immunity are outside the "power" and therefore "jurisdiction" of the United States. *Barbara*, 146 S. Ct. at 2450. That is not the case for the vast

---

[2] EO2 defines the term "alien enemy" to include certain groups on the Administration's list of designated terrorist organizations. However, this also lacks any constitutional anchor: As used in *Wong Kim Ark*, "alien enemy" is a legal term of art meaning the national of a nation at war with the United States. *See, e.g., Johnson v. Eisentrager*, 339 U.S. 763, 769 n.2 (1950) (explaining that "an alien enemy is the subject of a *foreign state at war* with the United States" and collecting sources) (emphasis added); *see* ECF No. 80 at 12.

[3] Individuals under subsection (2)(b)(i), which addresses the children of "ambassadors," are outside the proposed class (and are not birthright citizens independently of EO2 under longstanding law, *see* 8 C.F.R. § 101.3(a) (2025)). The "narrow set of diplomatic officials" entitled to full diplomatic immunity, *Barbara*, 146 S. Ct. at 2507 (Thomas, J., dissenting) (internal quotation marks omitted), has long been enumerated in the State Department's "Blue List," *see* 8 C.F.R. § 101.3 (2025); *Moncada*, 153 F.4th at 740 (discussing list from 1950); Restatement (Third)

majority of employees of foreign governments and international organizations. Thus, as *Wong Kim Ark* specifically explained, "consuls, as such, and unless expressly invested with a diplomatic character in addition to their ordinary powers, are not . . . entitled by the law of nations to the privileges and immunities of ambassadors or public ministers, but are subject to the jurisdiction, civil and criminal, of the courts of the country in which they reside." 169 U.S. at 678-79; *Moncada*, 153 F.4th at 739 (other officials, like consuls, "are subject to the local law in the same manner with other foreign residents owing a temporary allegiance to the state") (*quoting Coppell v. Hall*, 74 U.S. 542, 553 (1869)).

While some other foreign-government officials enjoy limited immunity for certain official acts, *Moncada*, 153 F.4th at 739, neither they nor their families enjoy "full diplomatic immunity." *Id*. at 737; *see Barbara*, 146 S. Ct. at 2507 (Thomas, J., dissenting) ("diplomatic immunity extends to only a narrow set of diplomatic officials, not to all foreign representatives") (citation altered). Indeed, even in the IFR Defendants continue to recognize that only "[f]oreign diplomatic officers accredited to the United States" are outside the "jurisdiction of the United States" in the sense of enjoying full diplomatic immunity. *See* IFR at *9 & n.2 (explaining that even after their regulatory changes, the State Department will continue to determine "whether any particular person enjoys diplomatic agent-level immunity and *is therefore not subject to the jurisdiction of the United*

---

of Foreign Relations Law § 464 (1987). The IFR indicates that Defendants no longer "publish[]" the Blue List and have removed references to it from their regulations. IFR at *10. It does not indicate whether the government still maintains such a list, but suggests that the State Department is in a position to provide "confirmation" of whether individuals are "foreign diplomatic officers." *Id*. at *9 n.2, 10.

*States*, or whether they enjoy lesser status-based immunity, on any particular date . . . in accordance with relevant international and domestic law") (emphasis added) (citing 22 C.F.R. § 150.2).

That concession makes sense; even if Defendants could do so, expanding full diplomatic immunity to the "more than 124,000 foreign mission members and dependents" in the United States, IFR at *18, "would be obviously inconvenient and dangerous to society, and would subject the laws to continual infraction, and the government to degradation," *Wong Kim Ark*, 169 U.S. at 685 (quoting *The Schooner Exchange*, 11 U.S. at 144). But that leaves Defendants with a fatal contradiction. They want a broad meaning for "subject to the jurisdiction of the United States" when it comes to who is subject to our laws, IFR at *9 n.2, but a narrow meaning when it comes to who is "subject to the jurisdiction of the United States *for purposes of birthright citizenship*," *id*. at 11 (emphasis added). However, *Barbara* and *Wong Kim Ark* are clear that the Fourteenth Amendment uses that phrase "in the same sense in which the like words had been used" in *The Schooner Exchange*. *Barbara*, 146 S. Ct. at 2452 (quoting *Wong Kim Ark*, 169 U.S. at 687). *The Schooner Exchange* is a case *about immunity*; thus, lesser foreign officials cannot be both "subject to the jurisdiction of the United States" under *The Schooner Exchange*'s principles (as Defendants concede they are), and also *not* subject to that jurisdiction for purposes of the Fourteenth Amendment. *See id*. at 2456 (relying again on *The Schooner Exchange*).

The relevant *Wong Kim Ark* exception here is for "foreign ministers," *Barbara*, 146 S. Ct. at 2450 (*quoting The Schooner Exchange*, 11 U.S. at 139), because they and their children are immune from U.S. jurisdiction—not for any foreign national employed by a foreign government

or international organization. EO2 cannot craft a new, broader exception for all foreign government employees.

*Third*, § 2(c) purports to exclude children whose parent "engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." There is no such exception in *Wong Kim Ark*. The government sought to push alarmist ideas about so-called birth tourism in its briefing and argument at the Supreme Court. *See* Br. for the Pet'rs, *Trump v. Barbara*, No. 25-365 (U.S. Jan. 20, 2026), at 9. The Court was unpersuaded, and instead reaffirmed *Wong Kim Ark*'s analysis: The children of those "recognized as exempt 'from the jurisdiction of this country'" were carved out of the Clause, and "[a]ll others were citizens at birth." 146 S. Ct. at 2452 (quoting *Wong Kim Ark*, 169 U.S. at 683). That leaves no space for the new purported exception. After all, even if an individual "engaged in a commercial transaction" or committed "fraud[]," EO2 § 2(c), they remain "subject to [the] power" of the government, including any criminal or civil enforcement, as of course do their children, *Barbara*, 146 S. Ct. at 2453. That is why, for example, even the children of Roma people, who were required to leave England on pain of imprisonment or death, were nevertheless natural-born subjects. *Id*. at 2446. Once again, EO2 cannot create this new exception to birthright citizenship.[4]

In sum, the merits are straightforward. The Supreme Court has twice confirmed that all children born in this country are U.S. citizens, save only the specific exceptions articulated in *Wong*

[4] EO2 § 2(d) purports to strip citizenship from a person born "in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." That provision is irrelevant to the proposed class and the relief sought. Plaintiffs seek to represent the class of children born "in the United States as defined in 8 U.S.C. § 1101(a)(38)." That statutory definition is "the continental United States, Alaska, Hawaii, Puerto Rico, Guam, the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands." Under 8 U.S.C. § 1401(a), all persons born in the United States—as defined in § 1101(a)(38)— "and subject to the jurisdiction thereof," are citizens. Because EO2 § 2(d) applies to territories only "where

*Kim Ark*. The only relevant exception today is for children of foreign ministers with full diplomatic immunity. EO2 seeks to strip citizenship from class members in violation of the Citizenship Clause, § 1401, *Barbara, Wong Kim Ark*, and First Circuit precedent. Plaintiffs are thus likely to succeed on the merits.

## II. THE EQUITIES STRONGLY FAVOR AN INJUNCTION.

The equities are likewise straightforward, and "tip decisively toward the" Plaintiffs. *Doe*, 157 F.4th at 79 (citation modified).

"The putative class would suffer irreparable harm without a preliminary injunction enjoining the Executive Order." *Barbara v. Trump*, 790 F. Supp. 3d 80, 103 (D.N.H. 2025). This Court previously had "little difficulty concluding that the denial of citizenship status to newborns, even temporarily, constitutes irreparable harm." *NHICS*, 765 F. Supp. 3d at 111. That alone is enough to establish irreparable injury: "[T]he rapid adoption by executive order, without legislation and the attending national debate, of a new government policy of highly questionable constitutionality that would deny citizenship to many thousands of individuals previously granted citizenship under an indisputably longstanding policy, constitutes irreparable harm[.]" *Barbara*, 790 F. Supp. 3d at 103.

In addition, "[t]he loss of birthright citizenship—even if temporary, and later restored at the conclusion of litigation—has cascading effects that would cut across a young child's life (and the life of that child's family), very likely leaving permanent scars." *Id.* at 103 (citation modified). Plaintiffs and putative class members will be denied passports and other documents and programs

---

citizenship is not conferred by Federal statute," it has no application to the territories enumerated in § 1101(a)(38). There is an existing legal dispute about whether American Samoa, which is not covered by such a statute, is "within the United States for purposes of the Fourteenth Amendment." *Compare Fitisemanu v. United States*, 1 F.4th 862, 872 (10th Cir. 2021), *with id*. at 883-98 (Bacharach, J., dissenting). Given the class definition, that distinct question concerning the territorial scope of the Citizenship Clause is beyond the scope of this case.

to which they are entitled as U.S. citizens. Decl. of Clara ¶ 9, ECF No. 91-1 ("Clara Decl."); Decl. of Edward ¶¶ 22-23, 26, 39, ECF No. 91-2 ("Edward Decl."); Decl. of Patricia ¶ 11, ECF No. 91-3 ("Patricia Decl."). And the federal government's denial of their citizenship exposes babies to "deportation to countries they have never visited." *NHICS*, 765 F. Supp. 3d at 111; *see* Clara Decl. ¶ 8; Edward Decl. ¶ 29. Indeed, Defendants concede as much. *See* IFR at *14 (explaining that children stripped of citizenship under EO2 may be "subject to removal from the United States," and providing for a system to obtain status only for children falling into EO § 2(b) (foreign government parents) born on or after September 9, 2026, not other individuals covered by EO2).

The parent class members experience these harms on behalf of their children, and their own harms as well. For example, under 8 U.S.C. § 1302(b), "[i]t shall be the duty of every parent or legal guardian of any alien now or hereafter in the United States, who [] is less than fourteen years of age . . . to apply for the registration of such alien before the expiration of [] thirty days." Willful failure to do so is a misdemeanor. *Id.* § 1306(a). Defendants have made clear that they believe children stripped of their citizenship under EO2 are subject to this registration requirement. *See* IFR at *11 (person stripped of citizenship under EO2 "must register as an alien when required to do so by" § 1302 *et seq.*). That means their parents must either effectively concede the denial of their child's citizenship (and expose their child to the threatened immigration enforcement) by registering, or themselves face criminal prosecution.

All this is irreparable injury. *NHICS*, 765 F. Supp. 3d at 111.

By contrast, any interest the government might have in enforcing "an unlawful executive order" is outweighed by the harm to Plaintiffs and the public, which "has a substantial interest in ensuring that those entitled to be recognized as United States citizens are not unlawfully deprived of that recognition." *Doe*, 157 F.4th at 79. "A continuation of the status quo during the pendency

of this litigation will only shortly prolong the longstanding practice and policy of the United States government, while imposition of the Executive Order would impact the plaintiffs and similarly situated individuals and families in numerous ways, some of which—in the context of balancing equities and the public interest—are unnecessarily destabilizing and disruptive." *NHICS*, 765 F. Supp. 3d at 111-12.

Indeed, the public interest in favor of an injunction extends even beyond the class of those denied citizenship by EO2 and their families. For example, "[i]f neither parent of a minor [passport] applicant is a U.S. citizen, an attestation *from each parent*, under penalty of perjury, must be submitted as part of the determination whether either parent meets any of the EO conditions." U.S. Dep't of State, *Executive Order 14418: Continuing to Protect the Meaning and Value of American Citizenship* *1 (2026), https://perma.cc/8JJJ-XD94 (emphasis added). "Any misrepresentations made under penalty of perjury could subject the individual(s) to legal liability, including potential federal criminal prosecution." *Id*. at *3.

This attestation requirement now applies to *any* minor seeking a passport, if neither parent is a U.S. citizen. But being forced to make such an attestation is itself harmful, particularly where the EO2 categories are so malleable; as previously noted, for example, "[m]any a mother might be found to have 'engage[d] in a commercial transaction to ensure that' she 'is present in the United States . . . to give birth.'" ECF No. 80 at 14 (quoting EO2 § 2(c)(i) and discussing Plaintiff Barbara's payment for a bus ticket in fleeing to the United States). Parents should not be forced to parse this vague and threatening language, and make high-stakes attestations about it under penalty of perjury, just to obtain recognition of their children's constitutionally guaranteed citizenship.

Moreover, this new attestation requirement will likely lead to denial of passports even for children who fall outside of EO2's categories. For example, "[t]here are many U.S. Citizen children who do not know who their biological father is." Br. of Project Rousseau as Amicus Curiae in Support of Respondents 4, *Trump v. Barbara*, No. 25-365 (Sup. Ct. Feb. 26, 2025) (citing study indicating that "11.7% of all births nationwide were registered with an unknown father"). In such cases, an attestation from that father would be unobtainable. In other situations, the father may be known but abusive. *See, e.g.*, *id.* at 5-6, 12-13. Again, attestation from such an abuser may be unavailable, or obtaining it may impose grave harms in its own right. EO2's new efforts to strip citizenship will inevitably spill over in this way to deprive even more members of the public of their constitutional birthright.

## III. THE REQUESTED CLASSWIDE RELIEF IS APPROPRIATE.

In the motion for provisional class certification filed contemporaneously with this motion, Plaintiffs explain why the putative class should be certified. The court previously granted provisional class certification in tandem with the prior preliminary injunction, explaining that "this situation warrants emergency injunctive relief and class certification" and that it did "not hesitate to certify a class that may include members in all fifty states." *Barbara*, 790 F. Supp. 3d at 98, 100. It should do the same now.

The terms of the proposed preliminary injunction are also appropriate. This is now the second Executive Order the President has issued purporting to strip away birthright citizenship guaranteed by the Citizenship Clause and § 1401. But the Supreme Court just reiterated that the Clause "guarantee[s] citizenship to all children born in the United States and subject to its power," with only those exceptions set forth in *Wong Kim Ark*. *Barbara*, 146 S. Ct. at 2453. And the First Circuit held the same is true of § 1401. *Doe*, 157 F.4th at 61-64. Because the only exception

relevant today is for children of foreign ministers with full diplomatic immunity, and because those children are expressly carved out of the putative class, all members of the class are guaranteed birthright citizenship. And given the ongoing campaign to strip away that citizenship, the Court should afford a clear and indisputable statement that Defendants are barred from "taking any actions to deny or infringe on the citizenship of class members." That would protect the class from EO2 and from any future variations on the President's campaign to unilaterally rewrite our fundamental national commitment to birthright citizenship, eliminating the need for class members to repeatedly relitigate the citizenship that the Supreme Court has already explained is their constitutional birthright.

Consistent with the First Circuit's decision in *NHICS*, Plaintiffs respectfully request that the injunction run against the agency official defendants, but not the President or "the agencies themselves." *N.H. Indonesian Cmty. Support v. Trump*, 157 F.4th 29, 35 (1st Cir. 2025).

## IV. THE COURT SHOULD REQUIRE ONLY NOMINAL BOND.

Finally, the Court should again require nominal bond of $1. *See Barbara*, 790 F. Supp. 3d at 104. "[T]he provisions of Rule 65(c) are not mandatory and a district court retains substantial discretion to dictate the terms of an injunction bond." *Int'l Assoc. of Machinists & Aerospace Workers v. E. Airlines*, 925 F.2d 6, 9 (1st Cir. 1991). "[N]o bond is required in suits to enforce important federal rights or public interests." *Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 1000 (1st Cir. 1982) (collecting cases) (citation modified), *rev'd on other grounds*, 467 U.S. 526 (1984). "Here, where it is the government's sudden action, rapidly changing a longstanding policy, and not any conduct by the petitioners, that has created the litigation conditions that require petitioners to seek injunctive relief to preserve the long-established

citizenship rights of children born in this country . . . a nominal bond of $1 is appropriate." *Barbara*, 790 F. Supp. 3d at 104 (collecting cases).

## CONCLUSION

The Court should grant a preliminary injunction.

Dated: September 9, 2026

Respectfully submitted,

/s/ SangYeob Kim
SangYeob Kim (N.H. Bar No. 266657)
Gilles R. Bissonnette (N.H. Bar No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
Chelsea Eddy (N.H. Bar No. 276248)
Caroline Meade (N.H. Bar No. 281341)
Maria Savarese (N.H. Bar No. 273285)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
T: (603) 333-2081
sangyeob@aclu-nh.org
gilles@aclu-nh.org
henry@aclu-nh.org
chelsea@aclu-nh.org
caroline@aclu-nh.org
maria@aclu-nh.org

Elizabeth Caldwell*
Brittany Carter*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector St., FL 5, New York, NY 10006
T: (212) 217-1690
bcaldwell@naacpldf.org
bcarter@naacpldf.org

Morgan Humphrey*
Mide Odunsi*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600

/s/ Cody Wofsy
Cody Wofsy*
Hannah Steinberg*
Stephen Kang*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
hsteinberg@aclu.org
skang@aclu.org

Grace Choi*
Noor Zafar*
Lee Gelernt*
Omar Jadwat*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
gchoi@aclu.org
nzafar@aclu.org
lgelernt@aclu.org
ojadwat@aclu.org

Lucia Goin**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
915 15th Street NW
Washington, DC 20005
T: (332) 529-3732
lgoin@aclu.org

Washington, DC 20005
T: (202) 249-2193
mhumphrey@naacpldf.org
modunsi@naacpldf.org

Carol Garvan (N.H. Bar No. 21304)
Zachary L. Heiden*
Max Brooks*
AMERICAN CIVIL LIBERTIES UNION OF
MAINE FOUNDATION
P.O. Box 7860
Portland, ME 04112
T: (207) 619-8687
cgarvan@aclumaine.org
heiden@aclumaine.org
mbrooks@aclumaine.org

Adriana Lafaille*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza Suite 850
Boston, MA 02108
T: (617) 482-3170
alafaille@aclum.org

Norm Eisen*
Tianna Mays*
Taryn Wilgus Null*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, #15180
Washington, DC 20003
T: (202) 594-9958
norman@democracydefenders.org
tianna@democracydefenders.org
taryn@democracydefenders.org

Kimberly Wei Leung*
Winifred Kao*
ASIAN LAW CAUCUS
55 Columbus Ave
San Francisco, CA 94111
T: (415) 896-1701
kimberlyl@asianlawcaucus.org
winifredk@asianlawcaucus.org

*Counsel for Plaintiffs*
**Admitted pro hac vice*
***Pro hac vice pending*